# Exhibit 11



U.S. Department of Homeland Security
Washington, DC 20472

**FEMA**

April 12, 2025

MEMORANDUM FOR:      Brian Cavanaugh
                     Associate Director for Homeland Security
                     Office of Management and Budget

FROM:                Cameron Hamilton
                     Senior Official Performing the Duties of the Administrator
                     Federal Emergency Management Agency

SUBJECT:             Actions to Rebalance FEMA's Role in Disasters

---

**Purpose**
The primary purpose of this memorandum is to identify short-term actions to rebalance FEMA's role in disasters before the start of the 2025 hurricane season, including highlighting those actions that require White House support and engagement. This memo also describes how these short-term actions can lay the groundwork for medium-term and long-term reform concepts to reduce Federal costs, concentrate FEMA's efforts on large-scale disasters, and focus on areas that improve services to survivors.

**Summary of Short-Term Actions**
The following short-term actions can be accomplished, through executive action or FEMA policymaking, before June 1, 2025. Some of these short-term actions are interdependent. For example, increasing thresholds for major disaster declarations would eliminate small disaster declarations and render small-disaster-related recommendations unnecessary.

***Short-Term Actions Requiring Executive Engagement***
The following actions require White House concurrence and action to implement:

1. Increase the Public Assistance (PA) declaration threshold by only considering major disaster declaration requests authorizing PA that are greater than four times the per capita indicator (PCI), which is currently set at $1.89. This is an action the President can take immediately and would serve as a precursor to regulations that permanently adjust declaration thresholds to better reflect economic conditions. See *Attachment 1: PA Declaration Thresholds*.

    **Action Needed:** Presidential concurrence to only consider major declaration requests authorizing PA that exceed a $7.56 PCI (four times the current PCI). The President could take this action while options are considered to permanently reduce the number and costs of disaster declarations.

2. Do not automatically approve the Hazard Mitigation Grant Program (HMGP) when declarations authorize Individual Assistance (IA) or PA. This is an action the President has already taken on previous disasters and can continue to reduce Federal disaster costs. This will serve as a precursor to further evaluating and redesigning mitigation grant programs.

    **Action Needed:** Presidential concurrence to continue to not approve HMGP.

3. Generally, do not approve federal cost share increases above 75%. This is an action the President has already taken and can continue to take to reduce disaster costs. This will serve as a precursor to consider other cost share arrangements, such as reducing the Federal cost share and/or requiring states to cover all disaster costs up to an established threshold. The President would retain authority to grant cost share exceptions.

   **Action Needed:** Presidential concurrence to continue to not approve Federal cost share increases. The President could take this action while regulatory options are considered to permanently reduce the costs of disaster declarations.

4. Limit the types of recreational facilities eligible for PA funding under Category G to those critical for life and property preservation or protection (e.g., ports, harbors, and mass transit facilities). Over the last 10 years, FEMA provided $2.5 billion for recreational facilities under Category G. This action lays the groundwork for potentially eliminating or limiting additional categories of work that would further reduce costs. See *Attachment 2: PA Category G (Recreational Facilities) Funding.*

   **Action Needed:** Presidential concurrence to expressly exclude recreational facilities eligible under Category G when issuing a major disaster declaration. The President could take this action while regulatory options are considered to permanently reduce the costs of disaster declarations.

5. Deny major disaster declarations for snowstorms. This is an action the President can take immediately. This will help reduce the number and costs of disasters as we enter winter 2025. In the last 10 years, Presidents have approved 18 major disaster declarations for snowstorms and FEMA has obligated $272 million for snow-related activities.

   **Action Needed:** Presidential concurrence to deny major disaster declarations for snowstorms.

*Additional Short-Term Actions Underway*
FEMA is implementing the following short-term actions to rebalance the Agency's role in disaster response and recovery via FEMA policy:
6. Modify IA declaration criteria to refine secondary factors, including greater emphasis on concentrated damage. This will serve as a precursor to permanently adjust IA thresholds.
7. Encourage survivors to register for IA only if they have uninsured losses instead of the current strategy to encourage all disaster survivors, regardless of insurance status, to register for IA.
8. Adjust FEMA door-to-door canvassing to limited, state-led activities and outreach.
9. Reduce Federal presence for small, PA disasters (e.g., not require field offices, could be state-led).
10. Rescind the policy that increases the Federal cost share for states that conduct mitigation projects.

**Summary of Medium-Term and Long-Term Reform Concepts**
This section includes concepts to reform FEMA's role in response and recovery in the medium-term (6-12 months) or long-term (1-3 years). These concepts are organized around three key outcomes:
- Reduce the number and costs of disaster declarations
- Concentrate Federal response and recovery efforts on large-scale disasters
- Focus on areas that improve services to disaster survivors and communities

The type of change required for each reform is noted in parentheses (i.e. statutory, regulatory, or policy).

### *Reduce the Number and Cost of Disaster Declarations*

FEMA is considering approaches to permanently reduce the number and costs of major disaster declarations to build upon short-term actions described above.

- FEMA is evaluating options to permanently adjust the thresholds for declarations authorizing PA and IA, including thresholds that better reflect current and future economic conditions. These changes would significantly reduce the number of major disaster declarations and save hundreds of millions in Federal costs annually. **(Regulatory)**

Longer term, FEMA is assessing options to rebalance accountability for disaster costs across all levels of government. For example, FEMA is examining options to:

- Require states to cover more costs up to new disaster declaration thresholds; **(Regulatory)**
- Rebalance cost shares for disaster assistance programs; **(Statutory)**
- Limit or eliminate additional facilities eligible for Federal funding, particularly when those facilities are readily insurable. **(Statutory)**

Together, these changes could significantly reduce Federal disaster expenditures and rebalance costs.

### *Concentrate Federal Response & Recovery Efforts on Large-Scale Disasters*

FEMA is assessing options to reimagine Federal disaster coordination and redesign recovery grant programs to rebalance responsibilities across all levels of government, including focusing Federal efforts on the most significant disasters. These reforms could include:

- Rebalance responsibilities for direct housing across state and Federal partners; **(Regulatory)**
- Integrate Federal disaster funds to streamline Federal recovery programs; **(Statutory)** and
- Enhance delivery of mentorship/technical assistance for community assistance to support state, local, tribal, and territorial governments (SLTTs) with increased disaster roles. **(Policy)**

These options could streamline Federal disaster assistance delivery and increase SLTT capacity.

### *Focus on Areas That Improve Services to Disaster Survivors and Communities*

FEMA is identifying opportunities to refine program delivery to better meet the needs of survivors and communities through simpler, more timely assistance. For example, FEMA is considering changes that:

- Streamline recovery programs to provide greater flexibility to states to implement; **(Statutory/Regulatory)**
- Simplify processes to accelerate funding reaching impacted communities; **(Regulatory/Policy)** and
- Change the way FEMA evaluates IA add-on counties to ensure neighboring counties within a state or territory are treated fairly. **(Policy)**

FEMA is also exploring options to modernize its technology to better serve survivors and communities through investments in technology upgrades, including the use of AI and automation. **(Policy)**

### Other Opportunities for Reform

While this memo focuses on FEMA's role in disaster response and recovery, several other areas of FEMA's mission space are ripe for reform. FEMA welcomes the opportunity to discuss reforms around the National Flood Insurance Program, state and local capacity building, training and education, and grant programs to significantly rebalance Federal and state roles in emergency management.

### Attachments

- Attachment 1: Public Assistance Declaration Thresholds
- Attachment 2: Public Assistance Category G (Recreational Facilities) Funding

DRAFT | PRE-DECISIONAL | DO NOT CITE OR QUOTE                    April 2025 | 3

Attachment 1: Public Assistance (PA) Thresholds

**Raising the Public Assistance threshold will significantly reduce the number of Federal disaster declarations and increase FEMA's capacity for the nation's most significant events.**

The Federal government currently supplants disaster assistance within states' capacity because the thresholds to obtain Federal disaster assistance have not kept pace with economic conditions. By increasing the threshold for declarations authorizing PA as described below, the President could significantly reduce the number of Federal disaster declarations and reduce Federal costs by hundreds of millions annually.

**Background**

For declarations authorizing PA, FEMA considers the estimated cost of assistance, a minimum threshold of damage, and additional factors such as localized impacts, insurance coverage, and recent disasters. In 1986, to estimate the cost of assistance, FEMA initially set a per capita indicator (PCI) of $1 (or .008% of the national per capita personal income of $12,577). FEMA assumed $1 per person was a reasonable amount a state could contribute. FEMA did not increase the PCI until 1999 when the Agency began adjusting the indicator for inflation. For FY25, the PCI is $1.89. FEMA multiplies the PCI by the state's population to determine the assistance a state should be able to manage without Federal assistance. Also in 1999, FEMA established a minimum threshold of $1 million. This minimum has become unnecessary because every state's PCI now results in a threshold over $1 million.

**Short-Term Reform Option – Only Consider Declaration Requests Four Times Current PCI**

The President could increase the threshold for declarations authorizing PA by only considering requests that are greater than four times the current PCI. Four times the current PCI of $1.89 is $7.56. The President could take this action immediately as a precursor to regulatory changes to establish state-specific PCIs based on the total taxable resources available to each state.[1] This approach assumes states should be able to cover disaster costs up to .01% of their total taxable resources. For the most recent year of data available, states' average total taxable resources was $578.3 billion – .01% of this average is $57.8 million. When divided by the average state population of 6.5 million people, this results in a per capita indicator of $8.90, which is close to four times the current indicator.[2]

**Long-Term Reform Option - Create State-Specific PCIs**

The President, through regulation, could establish state-specific PCIs based on each state's most recent total taxable resources. To establish state-specific PCIs, FEMA would multiply the state's total taxable resources by .01% and divide the resulting number by the state's population. For example, Ohio's FY2022 total taxable resources were $923 billion, and Ohio's 2020 population was 11.8 million. Under this approach, Ohio's PCI would be $7.82.[3] Ohio would need to demonstrate costs exceeding $92.3 million before becoming eligible for Federal public assistance. Overall, this option would create **an average $57.8 million threshold for declarations authorizing PA** (ranging from $4.9 million for Vermont to $403 million for California). The percent increase from current practice is significant (i.e. 358% on average), but still a small percent of state budgets (i.e. 0.11% on average).

**Impact and Considerations**

If the PCI had been adjusted for total taxable resources, about 62 percent of disasters declared between 2012 and 2023 would not have met the indicator, representing about $11 billion or 6.3 percent of the total Federal share awarded. Annually, this would have equated to about 32 fewer major disaster declarations and more than $930 million less in funding. This reform would better reflect current economic conditions and states' fiscal capacity and would create a predictable threshold against which states can plan and increase their own investments. This reform would also reduce the number of small disasters the Federal government is required to support, permitting increased Federal attention on the nation's most significant risks. Under this approach, FEMA would need to work with the Office of Management and Budget (OMB) on how to best account for the impact of repetitive disaster costs on the ability of states to respond to new incidents.

---

[1] Source: U.S. Treasury Department
[2] Calculation: ($578.3 billion x .0001) / 6.5 million people = $8.90
[3] Calculation: ($922.8 billion x .0001) / 11.8 million people = $7.82

DRAFT | PRE-DECISIONAL | DO NOT CITE OR QUOTE                    April 2025 | 1

## Attachment 2: PA Category G

FEMA could limit Public Assistance (PA) funding for recreational facilities to those that are critical for life and property preservation or protection (e.g., ports, harbors, and mass transit facilities). **Limiting PA funding for recreational facilities will reduce costs and transfer responsibility to states to insure and repair facilities that are not critical for life and property.**

### Background

PA funding for permanent repair and replacement is divided into five categories.[1] One of those categories—Category G—is for parks, recreational, and other facilities such as beaches, transit systems, ports, harbors, and piers. In the past ten years, FEMA has obligated $3.2 billion under Category G, or 2 percent of total PA funding. Of this amount, $1.4 billion (44 percent) was obligated in Puerto Rico following Hurricane Maria. While a very small portion of PA funding goes towards recreational facilities, FEMA has previously provided funding for the restoration of facilities like public golf courses, playgrounds, and tennis courts. Below is a table that summarizes obligations broken down by project type under Category G for the 10-year period of 2015–2025.[2]

| Project Type | Projects | Fed Share Obligated |
|---|---|---|
| **Recreational** | **9,013** | **$2,497,153,140** |
| Athletic Facility Related Project | 2,354 | $836,383,584 |
| Bath Houses Related Project | 18 | $1,679,655 |
| Beach Related Project | 727 | $541,792,230 |
| Boat Ramp Related Project | 123 | $14,049,408 |
| Dock Related Project | 287 | $63,770,386 |
| Golf Related Project | 365 | $60,016,373 |
| Marinas Related Project | 89 | $53,685,000 |
| Parks Related Project | 3,169 | $457,947,866 |
| Piers Related Project | 324 | $209,947,593 |
| Playground Related Project | 344 | $31,104,072 |
| Recreational - Other Facility | 513 | $118,650,878 |
| Swimming Pool Related Project | 79 | $17,843,038 |
| Trail Related Project | 621 | $90,283,057 |
| **Mass Transit** | **343** | **$206,752,281** |
| Airport Related Project | 129 | $106,567,939 |
| Mass Transit - Other | 42 | $16,048,629 |
| Ports and Harbors Related Project | 62 | $19,178,856 |
| Railway Related Project | 110 | $64,956,856 |
| **Other CAT G** | **2,933** | **$679,148,747** |
| Cemetery Related Project | 193 | $46,779,993 |
| Other Cat G Project | 2,555 | $552,968,817 |
| Parking Lot/Garage Related Project | 185 | $79,399,936 |
| **Grand Total** | **12,289** | **$3,383,054,167** |

### Proposed Change

FEMA could limit the types of recreational facilities eligible for funding under Category G to those critical for the preservation or protection of life and property. FEMA would no longer fund non-critical facilities, including:

- Ball fields/athletic facilities/stadiums (not associated with an eligible educational facility/applicant)
- Beaches (sand replenishment)
- Boat docks/ramps/fishing piers
- Fish hatcheries
- Golf courses

---

[1] PA has five categories of permanent work: roads and bridges; water control facilities; buildings and equipment; utilities; and parks, recreational, other.
[2] Please note that projects are grouped based on key words in the project title and/or the first listed damaged facility on the project and that projects could be written for multiple facilities. For example, a project related to an athletic facility could include the park, playground, baseball field, tennis court and bathrooms. 'Other' includes other projects that did not fit into one of those categories.

DRAFT | PRE-DECISIONAL | DO NOT CITE OR QUOTE    April 2025 | 1

FEMA

- Parks/Bath houses/Swimming pools/Playground equipment (not associated with an eligible educational facility/applicant)

FEMA would, however, continue to fund the following critical facilities:
- Mass transit facilities such as railways
- Ports and harbors
- Facilities critical to Tribal Nation's economies and food sovereignty
- Other critical facilities that do not fit in Categories C-F

**Impacts and Risks**

If other funding could not be secured, SLTTs would risk not being able to repair these facilities, leading to closures of facilities with adverse negative impacts to local economies, including tourism. Public recreational facilities are often free or low cost and closures could have greater impact on low-income residents and anyone else using the facilities within the community. Prolonging repair could also lead to negative impacts to stormwater management, vandalism, and decreased property values. Alternatively, by transferring full responsibility for repair costs of recreational facilities to SLTTs, FEMA may incentivize additional insurance.

**Implementation Requirements**

The President could limit the types of recreational facilities eligible under Category G when issuing a major disaster declaration. FEMA would update its policy, job aids, systems, and training outlining the types of critical recreational facilities that remain eligible.