**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF WASHINGTON, et al.,

        Plaintiffs,

v.

FEDERAL EMERGENCY
MANAGEMENT AGENCY, et al.,

        Defendants.

NO. 1:25-cv-12006-RGS

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II.  ARGUMENT............................................................................................................. 1

   A.  Defendants Have Taken Final Agency Action to Terminate the BRIC Program
      and This Case Is Justiciable.................................................................................. 1

     1.  Defendants decided to terminate the BRIC Program......................................... 1

     2.  The BRIC termination is final agency action .................................................. 4

     3.  Plaintiffs' claims are justiciable .................................................................... 5

   B.  Plaintiffs Are Likely to Succeed on the Merits.................................................... 8

     1.  Defendants' jurisdictional arguments lack merit ............................................. 8

       a.  The Stafford Act's discretionary immunity does not apply ......................... 8

       b.  The Tucker Act does not apply ............................................................... 10

     2.  Defendants cannot repurpose BRIC funds..................................................... 11

     3.  Defendants' Appointments Clause defenses are unpersuasive ...................... 12

   C.  Plaintiffs Are Facing Imminent Irreparable Harm............................................. 13

   D.  The Balance of the Equities and Public Interest Weigh in Favor of
      Injunctive Relief ............................................................................................... 14

III.  CONCLUSION........................................................................................................ 15

## I.    INTRODUCTION

Rather than defending the BRIC termination on the merits, Defendants spend most of their brief trying to convince the Court it never happened. This is not the first time Defendants have tried to walk back illegal conduct when forced to defend it in court, but it may be the most audacious. In April, Defendants announced they were "ending" the BRIC program, and they set forth the steps they were taking to implement the BRIC termination: they would "cancel" the Fiscal Year 2024 notice of funding opportunity, "cancel all of the BRIC projects selected but not obligated across fiscal years 2020-2023," "end" fully obligated projects that have not started construction, and "immediately return[]" nearly all of the BRIC funds "either to the Disaster Relief Fund or the U.S. Treasury." Even now, as Defendants actively defend their efforts to spend BRIC funds on other programs, they claim there is no final agency action that injures Plaintiffs. Nonsense.

Defendants decided to terminate BRIC and are carrying out that termination. That they are now equivocating in the face of a lawsuit does not un-ring that bell. If Defendants are not enjoined, they will proceed with their efforts to spend BRIC funds on other programs, and Plaintiffs will be left without a meaningful remedy. That will result in scaling back, delaying, or cancelling countless projects that Plaintiffs and Defendants alike have determined are critical for protecting people and property. Plaintiffs thus respectfully request a narrow injunction barring Defendants from spending these funds on non-BRIC programs during the pendency of this litigation.

## II.    ARGUMENT

### A.    Defendants Have Taken Final Agency Action to Terminate the BRIC Program and This Case Is Justiciable

#### 1.    Defendants decided to terminate the BRIC Program

In April, Cameron Hamilton announced that FEMA "*will cancel*" the pending Notice of Funding Opportunity (NOFO), "*will not award* the BRIC projects selected but not yet awarded

across all fiscal years," and "*will not* grant any additional period of performance extensions on any BRIC projects without [Hamilton's] approval." ECF No. 9-6 at 2. (emphasis added). Two days later, Defendants announced that "FEMA *is ending*" the BRIC program "and *cancelling all BRIC applications* from Fiscal Years 2020-2023" and "immediately return[ing]" certain funds "to the Disaster Relief Fund or the U.S. Treasury." ECF No. 9-7 (emphasis added). Two weeks later, Defendants confirmed they were "ending" BRIC and would "cancel all of the BRIC projects selected but not obligated across fiscal years 2020-2023," and that BRIC "funds will be returned" to the Disaster Relief Fund or the Treasury. ECF No. 9-8.

Defendants have since worked to implement this termination. They cancelled the FY2024 NOFO and awarded no funds. ECF No. 59 ¶11(A). They are installing a process to channel all period of performance extensions through Hamilton's successor. *Id.* ¶11(C). They have largely stopped administering the program. *See, e.g.*, Roberts Decl., Ex. 1 ¶¶3-13 (describing FEMA's atypical failure to advance BRIC projects through review process since April); ECF No. 9-44 ¶¶8-9 (projects FEMA stated were "on track . . . to be obligated by the summer of 2025" remain unobligated). And they have moved $4.071 billion set aside for BRIC to the DRF Major Declarations subaccount and are poised to spend these funds on other programs within a few short weeks. *See* ECF No. 8 at 12; Roberts Decl., Ex. 2 at 3. Defendants have consistently maintained they are ending the BRIC program and done nothing to disabuse the public—or Congress—of this fact. *See, e.g.*, Roberts Decl., Exs. 3-4 (media coverage of BRIC termination); *id.*, Ex. 5 at 2 (bipartisan letter from over 80 members of Congress "urg[ing]" Defendants "to reinstate [BRIC]"); *id.*, Ex. 6 (floor speech by U.S. Senator Bill Cassidy (R-LA) decrying the end of BRIC); *id.*, Ex. 7 at 4 ("[T]he [House Appropriations] Committee is disappointed that FEMA unilaterally decided to cancel [BRIC] instead of implementing appropriate reforms to improve it."). As recently as

June 16, a FEMA spokesperson told CBS: "the BRIC program was 'wasteful and ineffective'" and "*we are ending* non-mission critical programs." *Id.*, Ex. 3 (emphasis added).

Against all this, Defendants submit an unsworn declaration from David Richardson, who was not at FEMA at the time this decision was made, insisting that, actually, there is no termination.[1] Richardson claims Hamilton's directives were not orders, but rather "proposed next steps," and that "[d]espite FEMA's public announcements . . . FEMA/DHS had not ended BRIC," and that "the Secretary of Homeland Security has not made a final decision to end the BRIC program." ECF No. 59 ¶¶7, 10-11. Defendants argue that the Richardson declaration proves there is no final agency action to review, and Plaintiffs' claims are not ripe. Defendants are incorrect. At a preliminary injunction hearing, the Court acts as factfinder, can weigh the competing evidence, and need not accept the Richardson declaration as conclusive. Nor is the Court required to accept "a merely 'convenient litigating position' or '*post hoc* rationalization advanced' to defend past agency action against attack.'" *Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) (quoting *Christopher v. SmithKline Becham Corp.*, 567 U.S. 142, 155-56 (2012)).

Richardson's assertions are plainly inconsistent with the Memo and with Defendants' actions over the past few months. If Richardson's declaration proves anything, it is that after facing this lawsuit, Defendants may be having second thoughts. But "subsequent events can't un-finalize a final agency action" for APA purposes, *Texas v. Biden*, 20 F.4th 928, 955 (5th Cir. 2021), *rev'd on other grounds* 597 U.S. 785, as the "possibility" that an agency "may revise" a decision "is a common characteristic of agency action"—it "does not make an otherwise definitive decision nonfinal." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 598 (2016); *see also*

---

[1] Richardson's declaration is not signed under penalty of perjury in compliance with 28 U.S.C. § 1746 and thus should not be considered. *See, e.g.*, *FTC v. CCC Holdings, Inc.*, No. 08-2043, 2009 WL 10631282, *1 (D.D.C. 2009) (refusing to consider "declarations that are not sworn under the penalty of perjury" at PI hearing "because these statements . . . lack sufficient indicia of reliability").

*Sackett v. EPA.*, 566 U.S. 120, 127 (2012). Defendants' post-litigation change of heart also does not affect the Court's jurisdiction. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.").

## 2. The BRIC termination is final agency action

The BRIC termination and the steps taken to implement it—including diverting BRIC funds to other programs—are final agency actions that mark the "consummation of the agency's decisionmaking process" and from which "rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation modified).

The Hamilton memo and Defendants' announcements all plainly announce a final decision: "FEMA … *is ending*" BRIC. ECF Nos. 9-7, 9-8. And they set forth steps Defendants *are* taking—not might take—to wind down the program. *See supra* §II.A.1. Indeed, Defendants have *already* taken several of the promised measures to end the program. *See id*. There is nothing "tentative or interlocutory" about these decisions. *Bennett*, 520 U.S. at 178. Even if other actions may follow, and even if the termination spares some projects, that does not render the termination non-final.

It is equally clear that the BRIC termination has legal consequences and determines rights and obligations because the termination decision bound agency staff to carry out the termination. *See Biden v. Texas*, 597 U.S. 785, 807-8 (2022) (holding that program termination decision that "bound DHS staff" was final agency action); *see also Gen. Elec. Co. v. EPA.*, 290 F.3d 377, 383 (D.C. Cir. 2002) ("[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding . . . or is applied by the agency in a way that indicates that it is binding . . . ."). Defendants themselves have laid out additional legal consequences: the 2024 NOFO is cancelled, projects that have not started construction "will end," some phased projects will be cancelled early, unobligated projects from 2020-2023 are cancelled, over $4 billion

is being diverted away from BRIC, and no period of performance extensions will be granted without David Richardson's approval. *See, e.g.*, ECF No. 9-8.

Defendants argue there has been no final agency action because they have not sent out termination notices or updated FEMA's website, and because the BRIC dismantling is not yet complete. ECF No. 58 at 8-9, 17-18. But the fact that Defendants have only taken some, but not all, the steps they laid out in their termination announcements does not mean the decision is not final. Defendants' position seems to be that they can take whatever measures they want to shut down the BRIC program—including by spending down *all* of the BRIC funds on other programs— and completely insulate themselves from judicial review simply by not sending out formal termination notices or updating FEMA's website. There is no support for that proposition.

In sum, the BRIC termination is final agency action, and the fact that Defendants may be reconsidering aspects of the termination does not immunize it from judicial review.[2]

### 3.    Plaintiffs' claims are justiciable

Plaintiffs' claims are also justiciable. To have standing, Plaintiffs must establish that they face actual or imminent injury that is fairly traceable to the Defendants' challenged conduct, and that the Court can likely redress the injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs facing future injuries need not "await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (citation modified). Defendants contest only the injury element here, but it is easily satisfied, as Plaintiffs face imminent harm from Defendants' efforts to spend most of the BRIC funds on other programs.

---

[2] Even if there were no final agency action, Plaintiffs are still entitled to relief. *See Rhode Island Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 40-42 (1st Cir. 2002) (reviewing *ultra vires* agency action where APA not available).

As detailed above, Defendants have made clear they are redirecting the funds set aside for BRIC to other programs and have since diverted $4.071 billion in BRIC funds towards those other programs. Their own financial projections say they will start spending down those funds in just a few weeks, they have refused to stipulate to *not* spending those funds on other programs during this litigation, and they are actively defending their ability to do so. *See supra* § II.A.1; Roberts Decl., Ex. 8 at 2-3. If Defendants get their way, the funds will likely be lost forever, and this Court will be unavailable to afford Plaintiffs a remedy. Plaintiffs will also be unable to compete for any of the diverted funds in future years, as they are entitled to under the law. Plaintiffs therefore face imminent, irreparable harm. In addition, Plaintiffs are *already* suffering harm due to the uncertainty and delay resulting from the BRIC termination. *See* ECF No. 8 at 23-27 (impending risk of projects being driven out of business, expiring permits, increasing costs, loss of stakeholder trust, reputational harm, lost economic benefits, and increased risk of harm from natural disasters).

Defendants nevertheless argue that Plaintiffs' claims are not ripe because "BRIC has not been terminated," "not a single grant has been terminated," "FEMA continues to pay all partially and fully obligated projects," and "FEMA has not transferred or reprogrammed any BRIC funding for other purposes." ECF No. 58 at 5, 7-10. But regardless of what Defendants have not *yet* done, the undisputed evidence shows that what they have *already* done has injured Plaintiffs and is nearly certain to cause further irreparable injury. Even if, as Richardson asserts, FEMA's reprogramming of funds is not yet complete, that is exactly the point: Plaintiffs need relief *before* Defendants spend the money; afterward is too late.

Similarly, the fact that Defendants claim to be *currently* reimbursing Plaintiffs for a subset of the projects is no guarantee that Defendants will continue to do so in the future, especially if they spend most of the BRIC funds on other, non-BRIC programs. Notably, Richardson provides

no assurance that Defendants will continue paying out the full balance for every partially or fully obligated project even if Defendants spend the $4.071 billion in BRIC funds on other programs. Indeed, Defendants appear to have diverted the entirety of the BRIC set-aside to the DRF Major Declarations subaccount—not just the unobligated portion of the set-aside. *See* ECF No. 9-9 at 23.

Further, Defendants' focus on "partially or fully obligated projects" ignores a significant aspect of the problem. The process for securing a BRIC project is lengthy: Plaintiffs apply, Defendants select projects and allocate funds, and then Plaintiffs and Defendants go through a long period of planning, permitting, and environmental review before construction can begin. *See* ECF No. 8 at 8-9. As a result, there are many *un*obligated projects Defendants selected for BRIC grants but that do not yet have formally obligated contracts. *See* ECF No. 9-32 ¶10, 9-44 ¶¶8-9. Congress provided that once projects are selected, Defendants cannot withdraw the funds for these projects unless the funds "remain unobligated by the end of the third fiscal year after the fiscal year for which the amounts were allocated[.]" 42 U.S.C. § 5133(f)(3)(A). And even if the funds are withdrawn at that time, they must be returned to the National Public Infrastructure Predisaster Mitigation Fund and made "available to be awarded on a competitive basis" during the next fiscal year. *Id.* § 5133(f)(3)(B). So if Defendants spend these funds on other programs, Plaintiffs will be harmed in two ways: (1) the funds they need for their projects will be gone, and those projects will have to be delayed, scaled back, or cancelled, and (2) Plaintiffs will lose out on the right to compete for any dissipated funds in future years.[3] *See* ECF No. 8 at 23-27; *W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984) ("[A]ppellants have standing to seek relief that would allow them to compete for additional funding.").

---

[3] Defendants suggest Plaintiffs are eligible to compete for only $750 million because that was the amount of the 2024 NOFO. ECF No. 58 at 26. But Plaintiffs are entitled to compete for funds in future years, too, as well as any withdrawn funds, which Defendants must redistribute on a competitive basis during the next fiscal year. 42 U.S.C. § 5133(f)(3).

In sum, Plaintiffs are facing imminent and irreparable harm and Plaintiffs need not wait for it to occur "to obtain preventative relief." *Babbitt*, 442 U.S. at 298.

## B.    Plaintiffs Are Likely to Succeed on the Merits

Having spent most of their brief trying to convince the Court that the BRIC termination never happened, Defendants scarcely even try to defend it. They do not dispute that terminating BRIC substantially reduces FEMA's mitigation functions and capabilities in defiance of federal law. *See* ECF No. 8 at 13-17. They do not dispute that Congress has barred them from withdrawing funds from selected projects except in narrow circumstances, which they did not rely on here, and that they must use any withdrawn funds for next year's BRIC offering. *Id.* at 18. And they do not dispute that refusing to spend Congressionally appropriated funds is unlawful. *Id.* at 19-20. As a result, the court can treat these points as conceded. *See Johnson v. Ocwen Loan Servicing, LLC*, No. 17-cv-11944-ADB, 2020 WL 1063083, at *10 (D. Mass. Mar. 5, 2020).

The only defenses Defendants offer are that (1) their unlawful conduct is not reviewable by any court, (2) even if it is reviewable, it is not reviewable by *this* court, (3) Defendants have taken the position in the past that they can spend BRIC funds on non-BRIC programs so they should be able to do so now, and (4) Hamilton and Richardson were lawfully appointed. None of these arguments are persuasive.

### 1.    Defendants' jurisdictional arguments lack merit

#### a.    The Stafford Act's discretionary immunity does not apply

Defendants first argue that no court can evaluate the lawfulness of the BRIC termination because the Stafford Act's discretionary immunity provision applies. *See* 42 U.S.C. § 5148; ECF No. 58 at 10-12. But that statute provides immunity only for certain *discretionary* decisions; it does not allow Defendants to flout Congress's directives or the Constitution. *See* 42 U.S.C. § 5148 (providing immunity for "claim[s] based upon the exercise or performance of or the failure to

exercise or perform a *discretionary* function or duty") (emphasis added); *see also Graham v. FEMA*, 149 F.3d 997, 1006 (9th Cir. 1998) (holding that Section 5148 does not bar suit where "the duty of FEMA is clearly prescribed by the Stafford Act's applicable regulations"); *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (under Federal Tort Claims Act, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow"); *McWaters v. Fed. Em. Mgmt. Agency*, 436 F. Supp. 2d 802, 813 (E.D. La. 2006) (concluding Section 5148 did not confer immunity for constitutional claims). This provision does not apply to Plaintiffs' claims that the BRIC termination and repurposing and withholding of BRIC funds are unlawful.

Defendants try to shoehorn Plaintiffs' claims into the Stafford Act by arguing that FEMA has discretion to shut down BRIC because the statute says that Defendants "may establish" the program and it affords them some discretion in selecting projects to fund. *See* ECF No. 58 at 11-12, 18-20. Discretion to "establish" a program and to select projects is not the same as discretion to shut down the program after it has been established. And even if the statute could be read that way, Congress later provided that Defendants "may not substantially or significantly reduce" FEMA's mitigation capabilities unless "specifically" authorized in a law passed after October 4, 2006. 6 U.S.C. § 316(c)(1). Defendants cite no law "specifically" providing them the authority to shut down BRIC or substantially reduce FEMA's mitigation functions, and certainly none enacted after October 4, 2006. So Defendants lack discretion to terminate BRIC, and Section 5148 does not apply here.[4]

---

[4] For the same reason, Defendants' decision to terminate BRIC is not committed to agency discretion by law. *Contra* ECF No. 58 at 18-19. Defendants cite *Lincoln v. Vigil*, but the Court there held that "an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." 508 U.S. 182, 193 (1993). That is what Congress did here, restricting Defendants' ability to substantially reduce FEMA's mitigation functions and reprogram and withhold funds. *See* ECF No. 8 at 13-14, 18-20. These statutes provide "judicially manageable standards" against which to evaluate Defendants' conduct. *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

### b. The Tucker Act does not apply

Defendants contend that this Court lacks jurisdiction under the Tucker Act because Plaintiffs supposedly seek to enforce contractual rights that can only be heard in the Court of Federal Claims. *See* ECF No. 58 at 13. They suggest that *Department of Education v. California*, 145 S.Ct. 966 (2025), created a new *per se* rule barring district courts from hearing *any* case addressing a federal grant program. ECF No. 58 at 14. But as the First Circuit recently confirmed, each case must be reviewed on its own facts. *See Am. Pub. Health Ass'n v. Nat'l Inst. of Health*, No. 25-1611, No. 25-1612, 2025 WL 2017106, at *4-8, --- F.4th -- (1st Cir. July 18, 2025). Here, Plaintiffs challenge Defendants' constitutional and statutory authority to terminate the BRIC program. This is not a dispute over the termination of any individual grant, does not require the construction of any grant terms or conditions, and does not involve any issue that calls this Court's jurisdiction into question.

To determine whether a claim is "essentially a contract dispute" under the Tucker Act, courts examine whether the plaintiff seeks (1) a "core determination" of "whether a breach of contract had occurred" and (2) contract-based remedies. *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978); *see* ECF No. 58 at 14 (citing *Am. Sci.*). Neither factor is met here.

This case is not a contract dispute. Plaintiffs' claims are based on the Constitution and on statutes barring Defendants from substantially reducing FEMA's mitigation functions and from repurposing or withholding funds for the BRIC program. *See* ECF No. 1 ¶¶178-269. Plaintiffs do not rely on the grant agreements for their claims. Multiple statutes and the Constitution bar Defendants from slashing FEMA's mitigation functions, repurposing BRIC funds, and acting through unlawfully appointed officials—not contracts. Indeed, because many BRIC projects have been selected but not yet obligated, in many cases the parties do not yet even have an agreement, let alone one upon which Plaintiffs could base their claims. *See, e.g.*, ECF No. 9-32 ¶¶19-21;

Roberts Decl., Ex. 1 ¶¶5-8. As such, *California*, which the Supreme Court described as an "order… to pay out past-due grant obligations," was very different.[5] 145 S. Ct. at 968.

Defendants' "specific performance" argument similarly fails because Plaintiffs seek declaratory relief, injunctive relief, and APA remedies to vacate the termination decision, and bar Defendants from terminating the BRIC program and spending BRIC funds on other programs— not money damages, and not specific performance under a contract. *See* ECF No. 1 at 63-64; *see also NIH*, 2025 WL 2017106, at *11 (explaining why *Coggeshall* does not apply). Plaintiffs are not asking this Court to order Defendants to pay Plaintiffs any money. Instead, Plaintiffs ask this Court to fashion "prospective relief" in the context of "the rather complex ongoing relationship" between a federal agency and a state grant recipient—relief that the Court of Federal Claims "has no power to grant." *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988). Vacating Defendants' termination of the BRIC program or barring defendants from spending BRIC funds on non-BRIC programs will not require Defendants to pay any money—it will simply restore the BRIC program to the status quo. The fact that Plaintiffs then may be able to receive future grants or funding through the normal operation of the BRIC program is "a mere by-product" of this Court's "primary function of reviewing the Secretary's interpretation of federal law" and does not make Plaintiffs' claims contract claims. *Id.* at 910.

### 2. Defendants cannot repurpose BRIC funds

Defendants do not contest that "[a]bsent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals." *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018). Yet they

---

[5] For the same reason, this case is also different from this Court's earlier case where the plaintiffs were "seeking to enforce a contractual obligation to pay money." *Mass. Fair Hous. Ctr. v. Dep't of Hous. & Urban Dev.*, No. 25-30041-RGS, 2025 WL 1225481 (D. Mass. Apr. 14, 2025) (cited by ECF No. 58 at 14 n.3).

suggest that they can spend BRIC funds on non-BRIC programs. *See* ECF No. 58 at 28-29. But the only purported authority they cite for that proposition is a footnote in one of their own budget reports from 2021. *See id.* at 28 n.4. Defendants have never cited any *legal* authority for that proposition, it is inconsistent with the restrictions Congress has imposed on these funds (including in the currently operative Appropriations Acts passed after 2021), Defendants did not develop any legal argument supporting this assertion in their brief, and they have *never* before used BRIC funds for non-BRIC purposes. Roberts Decl., Ex. 9 at 38 ("Although FEMA indicates that [BRIC] funding . . . is available for responding to events if its other funds are depleted, this is not the stated congressional intent for those funds, and FEMA has never accessed those resources.").[6]

### 3.    Defendants' Appointments Clause defenses are unpersuasive

Defendants have also failed to establish that either Hamilton or Richardson were lawfully appointed. Defendants argue that *United States v. Eaton*, 169 U.S. 331 (1898) allows them to "temporarily" appoint an acting FEMA Administrator without complying with the Appointments Clause or the Federal Vacancies Reform Act of 1998 (FVRA). But *Eaton* only underscores the unlawfulness of these appointments.

The issue in *Eaton* was whether Congress could authorize the President to appoint someone to temporarily perform the duties of a principal officer without Senate confirmation. *See id.* at 343. The Court held that Congress could because one serving in an office "for a limited time, and under special and temporary conditions," is an *inferior* officer, so the Appointments Clause allowed Congress to select the means for their appointment. *See id.* at 343. Since the appointment there

---

[6] Even if Defendants' own *ipse dixit* could somehow establish the scope of their authority, Defendants are not even adhering to their own position. They claim they can use BRIC funds "for other purposes" should the "DRF Majors balance drop too low to cover immediate response or recovery needs," ECF No. 58 at n.4, but they moved these BRIC funds over *in April*, when the Major Declarations Fund contained nearly $15 billion. *See* ECF No. 9-19 at 9. Defendants moved these funds because they terminated BRIC, not to cover immediate response needs.

complied with Congress's statutory instructions, they were permissible. *See id.* at 339, 343. *Eaton* is no help to Defendants because Hamilton and Richardson were *not* appointed in compliance with the FVRA; they do not fall within the categories of people Congress authorized to serve as acting officers.[7] *See* ECF No. 8 at 21-22. While Defendants are correct that temporary acting officers are generally inferior officers, that does not give Defendants *carte blanche* to install whoever they want. Any appointment of an inferior officer must still comply with the Constitution.[8]

## C.  Plaintiffs Are Facing Imminent Irreparable Harm

The injuries that support Plaintiffs' standing, and the imminent risk of mootness, also demonstrate Plaintiffs' imminent irreparable harm. *See supra* § II.A.3; ECF No. 8 at 23-27. Defendants' claim that these harms "are speculative" ignores the extensive evidence Plaintiffs have provided documenting these harms. ECF No. 58 at 26; *see* ECF No. 8 at 23-27. In addition, Defendants' assertion that money damages would remedy any injury ignores that monetary damages are unlikely to be available for many of the harms Plaintiffs are suffering and will not account for the non-monetary harms Plaintiffs are suffering and will suffer, such as the termination of projects, loss of goodwill, and potential loss of lives and increased injuries from disasters that could—and should—have been mitigated. ECF No. 58 at 27-28; ECF No. 8 at 23-27.

---

[7] If anything, Defendants' evidence compounds the problem, as it suggests that both Hamilton and Richardson were installed by Secretary Noem, even though the FVRA provides that "the President (and only the President) may direct" an agency official "to perform the functions and duties of the vacant office temporarily in an acting capacity" and specifically bars agency heads from doing so. 5 U.S.C. § 3345(a)(2)-(3); *id.* § 3347(b) (providing that agency heads may not rely on their "general authority . . . to delegate . . . or to reassign duties" to install an acting officer).

[8] Defendants spend several pages arguing the FVRA's remedial provisions do not apply. *See* ECF No. 58 at 21–25. The Court need not wade into that morass at this stage because Plaintiffs ask the Court to address Defendants' Appointments Clause violation under the APA. *See* ECF No. 1, at 59-61; ECF No. 8 at 21-22; *L.M.-M. v. Cuccinelli*, 442 F.Supp.3d 1, 37 (D.D.C. 2020) (setting aside agency action taken by unlawfully appointed officer "under both the FVRA . . . and the APA") (emphasis added).

**D.      The Balance of the Equities and Public Interest Weigh in Favor of Injunctive Relief**

Defendants argue the Court should deny an injunction because it could "potentially limit[] the agency's ability to respond to major disasters in real time." ECF No. 58 at 29. Defendants provide no support for this hypothetical, and their own financial documents undermine it.

Those documents confirm the Major Declarations Fund will have more than enough money for disaster response after any injunction. Defendants have represented "a reserve of $2 billion" is sufficient "to ensure that FEMA maintains the ability to fund initial response operations for new significant events." *See, e.g.*, ECF No. 9-18 at 9; Roberts Decl., Ex. 10 at 9. At the beginning of July, the Major Declarations Fund contained $13.413 billion and Defendants project that at the beginning of August it will contain $7.642 billion. *See* ECF No. 9-19 at 9. So Defendants will still have well over the $2 billion that is necessary for disaster response after any injunction.

Further, enjoining Defendants from spending BRIC funds on non-BRIC programs is unlikely to materially impact disaster response even beyond the $2 billion reserve. Despite its name, the DRF's Major Declarations subaccount covers much more than immediate disaster response. Most of these funds go toward reimbursements for costs *already* incurred on long-term rebuilding projects, such as funding for public infrastructure projects through the Public Assistance Program and the Hazard Mitigation Grant Program.[9] For example, in August and September 2025, Defendants plan to spend roughly $5.205 billion on COVID-19 recovery expenses, $898 million on expenses associated with Hurricane Maria (2017), $536 million for Hurricane Ian (2022), and $119 million for Hurricane Sandy (2012). ECF No. 19 at 9-10. Thus, Defendants' reprogramming of BRIC funds to Major Declarations programs largely serves to redirect pre-disaster mitigation funding toward long-term post-disaster grants—exactly the opposite of what Congress intended.

---

[9] *See, e.g.*, Press Release, Fed. Em. Mgmt. Agency, FEMA Public Assistance Grants Help Communities, (June 18, 2025), https://www.fema.gov/fact-sheet/fema-public-assistance-grants-help-communities.

*See* S. Rep. No. 115-446, at 3 (2018). These planned reimbursements alone exceed $4.071 billion in diverted BRIC funds, and they can be delayed until Defendants receive additional appropriations without any impact on emergency response. *See* Robert Decl., Ex. 11. Indeed, Defendants routinely take this step, known as "Immediate Needs Funding," when the Major Declaration Fund runs low, and then resume the reimbursements when they receive more funds. *Id.*

Finally, to the extent an injunction might have *any* impact on disaster response, that is only because Defendants have unlawfully diverted BRIC funds to the DRF's Major Declarations subaccount. If Defendants had not illegally diverted the funds and had continued allocating and obligating them for BRIC projects, they also would not be available to spend on disaster response, but that is not an affront to the public interest; that is Congress's design. The fact that the other programs to which Defendants have illegally diverted the funds may be compelling does not immunize Defendants from an injunction stopping the illegal conduct. *See, e.g.*, *Washington v. Trump*, 441 F. Supp.3d 1101, 1126-27 (W.D. Wash. 2020) (enjoining defendants from unlawfully diverting funds to border wall because "the public's interest in ensuring that the government abides by its laws outweighs the government's proffered interest" in border security). Accepting Defendants' argument would essentially give them free rein to divert *any* funds into the Major Declarations Fund, raise the specter of impaired disaster response, and evade an injunction.

### III.   CONCLUSION

For the reasons stated above, the Court should issue a narrow injunction barring Defendants from spending these funds on non-BRIC programs during the pendency of this litigation.[10]

---

[10] The Court should not require a bond under Fed. R. Civ. P. 65. *See Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir. 1991). To the extent a bond is ordered, Plaintiffs request that it be nominal. *See Maine v. United States Dep't of Agric.*, No. 1:25-cv-00131-JAW, 2025 WL 1088946, at *29–30 (D. Me. Apr. 11, 2025) (collecting cases). For the reasons explained herein, the Court should also deny Defendants' cursory request to stay the preliminary injunction.

DATED this 29th day of July 2025.

**ANDREA JOY CAMPBELL**
Attorney General
Commonwealth of Massachusetts

*/s/ Hannah C. Vail*
HANNAH C. VAIL, BBO No. 698577
JAK KUNDL, BBO No. 713951
Assistant Attorneys General
AMY LAURA CAHN (admitted pro hac vice)
Special Assistant Attorney General
Massachusetts Office of the Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2512
hannah.vail@mass.gov
jak.kundl@mass.gov
amy.laura.cahn@mass.gov
*Attorneys for Plaintiff Commonwealth of Massachusetts*

**NICHOLAS W. BROWN**
Attorney General
State of Washington

*/s/ Tyler Roberts*
TYLER ROBERTS (admitted pro hac vice)
JENNIFER K. CHUNG (admitted pro hac vice)
NIYA TAWACHI (admitted pro hac vice)
ANDREW R.W. HUGHES (admitted pro hac vice)
Assistant Attorneys General
CRISTINA SEPE (admitted pro hac vice)
Deputy Solicitor General
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
tyler.roberts@atg.wa.gov
jennifer.chung@atg.wa.gov
niya.tawachi@atg.wa.gov
andrew.hughes@atg.wa.gov
cristina.sepe@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

**ROB BONTA**
Attorney General
State of California

*/s/ David Green*
R. MATTHEW WISE
Supervising Deputy Attorney General
DAVID GREEN (admitted pro hac vice)
CHRISTOPHER KISSEL (admitted pro hac vice)
HARALD H. KIRN (admitted pro hac vice)
Deputy Attorneys General
California Office of the Attorney General
1300 I Street
Sacramento, CA 95814
916-445-9555
matthew.wise@doj.ca.gov
david.green@doj.ca.gov
christopher.kissel@doj.ca.gov

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Finnuala Tessier*
FINNUALA TESSIER (admitted pro hac vice)
SAMUEL WOLTER (admitted pro hac vice)
Assistant Attorneys General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
finnuala.tessier@coag.gov
samuel.wolter@coag.gov
*Attorneys for Plaintiff State of Colorado*

harold.kirn@doj.ca.gov
*Attorneys for Plaintiff State of California*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Ashley Meskill*
ASHLEY MESKILL (admitted pro hac vice)
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5270
ashley.meskill@ct.gov
*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Vanessa L. Kassab*
IAN R. LISTON (admitted pro hac vice)
Director of Impact Litigation
VANESSA L. KASSAB (admitted pro hac vice)
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
vanessa.kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Aleeza M. Strubel*
ALEEZA M. STRUBEL (admitted pro hac vice)
Complex Litigation Counsel
SARAH J. GALLO (admitted pro hac vice)
Assistant Attorney General
Illinois Office of the Attorney General
115 S. LaSalle Street
Chicago, IL 60604
773-914-3046
aleeza.strubel@ilag.gov
sarah.gallo@ilag.gov
*Attorneys for Plaintiff State of Illinois*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Reid Hayton-Hull*
REID HAYTON-HULL (admitted pro hac vice)
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
reid.hayton-hull@maine.gov
*Attorneys for the State of Maine*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Robert N. Brewer*
ROBERT N. BREWER (admitted pro hac vice)
Assistant Attorney General

**DANA NESSEL**
Attorney General
State of Michigan

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
ADAM DE BEAR*
Assistant Attorneys General

Maryland Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6924
rbrewer@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*


**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Cat Rios-Keating*
CAT RIOS-KEATING (admitted pro hac vice)
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-7302
catherine.rios-keating@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*


**LETITIA JAMES**
Attorney General
State of New York

*/s/ Colleen K. Faherty*
COLLEEN K. FAHERTY (admitted pro hac vice)
Special Trial Counsel
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
212-416-6046
Colleen.Faherty@ag.ny.gov
*Attorneys for Plaintiff State of New York*


**DAN RAYFIELD**
Attorney General
State of Oregon

*/s/ Scott P. Kennedy*
SCOTT P. KENNEDY*
BRIAN S. MARSHALL*

Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
giovanattin@michigan.gov
deaeara@michigan.gov
*Attorneys for Plaintiff State of Michigan*


**MATTHEW J. PLATKIN**
Attorney General
State of New Jersey

*/s/ Phoenix N. Meyers*
PHOENIX N. MEYERS*
Deputy Attorney General
New Jersey Office of the Attorney General
25 Market Street
Trenton, NJ 08625
609-696-5289
phoenix.meyers@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*


**JEFF JACKSON**
Attorney General

LAURA HOWARD
Chief Deputy Attorney General
State of North Carolina

*/s/ Daniel T. Wilkes*
DANIEL T. WILKES (admitted pro hac vice)
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncodoj.gov
*Attorneys for Plaintiff State of North Carolina*


**JOSH SHAPIRO**
in his official capacity as Governor of the
Commonwealth of Pennsylvania

JENNIFER SELBER
General Counsel

Senior Assistants Attorney General
Oregon Office of the Attorney General
1162 Court Street NE
Salem, OR 97301
971-453-9050
scott.kennedy@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*


**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Randelle L. Boots*
RANDELLE L. BOOTS (admitted pro hac
vice)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
rboots@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*


**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Lynn K. Lodahl*
LYNN K. LODAHL (admitted pro hac vice)
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
608-264-6219
lynn.lodahl@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*


*pro hac vice application forthcoming or
pending


*/s/ Jacob B. Boyer*
JACOB B. BOYER (admitted pro hac vice)
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
717-460-6786
jacobboyer@pa.gov
*Attorneys for Governor Josh Shapiro*


**CHARITY R. CLARK**
Attorney General
State of Vermont

*/s/ Ryan P. Kane*
RYAN P. KANE (admitted pro hac vice)
Deputy Solicitor General
Vermont Office of the Attorney General
109 State Street
Montpelier, VT 05609
802-828-2153
ryan.kane@vermont.gov
*Attorneys for Plaintiff State of Vermont*

**CERTIFICATE OF SERVICE**

       I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*/s/ Tyler Roberts*_____

TYLER ROBERTS

Assistant Attorney General
