# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

STATE OF WASHINGTON, *et al.*,

     Plaintiffs,

v.                                                                Case No. 1:25-CV-12006-RGS

FEDERAL EMERGENCY
MANAGEMENT AGENCY, *et al.*,

     Defendants.

**BRIEF OF *AMICI CURIAE* NATURAL RESOURCES DEFENSE COUNCIL
AND CONSERVATION LAW FOUNDATION
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

RULE 7.1 CORPORATE DISCLOSURE STATEMENT ............................................. iii

INTRODUCTION AND INTERESTS OF *AMICI CURIAE* ........................................ 1

ARGUMENT ........................................................................................................ 3

I.      BRIC saves taxpayers money ......................................................................... 3

      A.      Disaster mitigation investments save money and lives ........................... 3

      B.      BRIC projects' benefits far outstrip their costs ..................................... 4

II.     BRIC provides unique programmatic assistance to low-income and
underserved communities who are hardest hit by climate change ...................... 6

      A.      Direct, non-financial assistance ........................................................ 7

      B.      Grants for underserved communities .................................................. 10

            1.      "Small impoverished communities" ........................................ 10

            2.      Community Disaster Resilience Zones .................................... 12

III.    No other federal disaster mitigation program can fill BRIC's role ................. 14

CONCLUSION ................................................................................................... 16

CERTIFICATE OF SERVICE ............................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*New York v. Trump*,
    769 F. Supp. 3d 119 (D.R.I. 2025).................................................................. 15

## Statutes

42 U.S.C. § 5133 ........................................................................................ 4, 10, 11

42 U.S.C. § 5136 ............................................................................................ 12, 13

42 U.S.C. § 5170 ................................................................................................. 15

Disaster Recovery Reform Act of 2018, Pub. L. 115–254, 132 Stat. 3438 (2018) ....................... 3

Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021)...................... 3

## Regulations

44 C.F.R. § 201.2 ................................................................................................ 11

44 C.F.R. Pt. 206, Subpart B .................................................................................. 15

**RULE 7.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to <u>Federal Rule of Civil Procedure 7.1</u>, the undersigned counsel of record for

*Amici Curiae* Natural Resources Defense Council and Conservation Law Foundation certify that

neither of the *Amici* (both private, nonprofit, non-governmental organizations) has a corporate

parent, subsidiary, or affiliate, and that neither issues stock to the public.

## INTRODUCTION AND INTERESTS OF *AMICI CURIAE*

*Amici* Natural Resources Defense Council (NRDC) and Conservation Law Foundation (CLF) are nonprofit organizations dedicated to advancing policies that protect communities, the environment, and public health. As part of their work, *Amici* encourage governments to develop plans and policies that will increase resiliency and reduce suffering from extreme weather events. *Amici* support federal programs that invest in disaster preparedness while prioritizing high-risk communities that have been too often left to fend for themselves.[1]

The Building Resilient Infrastructure and Communities (BRIC) program is one such effort. The BRIC program provides essential funding and non-financial technical assistance to underserved communities nationwide to reduce long-term risks from natural hazards before a disaster hits. By canceling BRIC, the Federal Emergency Management Agency (FEMA) not only acted unlawfully. *See* Pls.' Memo. 17-27, ECF No. 102. It shifted financial and human costs back onto communities already at risk. *Amici* submit this brief to underscore how the balance of the equities and public interest support plaintiff States' request that the Court set aside the unlawful cancellation of BRIC and prevent further actions to block this congressionally mandated program from supporting communities in need.[2]

The BRIC program provides broad support for disaster mitigation. BRIC projects help Gulf Coast communities prepare for hurricanes;[3] aid Tribal Nations with developing new

---

[1] *See* NRDC, *Climate Adaptation*, https://www.nrdc.org/issues/climate-adaptation; CLF, *Getting Ready for Climate Impacts*, https://www.clf.org/strategies/climate-impacts/.

[2] *Amici* affirm that no counsel for a party authored this brief in whole or in part, and no person other than *Amici* made any monetary contributions intended to fund the preparation or submission of the brief. *Cf.* Fed. R. App. P. 29(a)(4)(E).

[3] Jeffrey Schweers, *FEMA slashes $300 million in flooding, hurricane relief projects in Florida*, Orlando Sentinel (Apr. 11, 2025), 2025 WLNR 8674657 (reporting that BRIC's cancellation caused Florida to lose nearly $300 million in federal funding for flooding and hurricane relief projects, and Louisiana had projects worth more than $720 million cancelled or put on hold).

infrastructure;[4] and support efforts to make Californian counties more resilient to wildfires.[5] They do so efficiently, with benefits outweighing costs by an average of six-to-one. Given its value to communities across the country, it is no surprise that BRIC—like other disaster prevention and response programs—has for years garnered bipartisan support in Congress. Pls.' Mem. at 3-5.

In the face of intensifying weather events, FEMA's reneging on billions of dollars in promised BRIC grants puts infrastructure and lives at risk. Communities are already experiencing the consequences. In Massachusetts alone, FEMA revoked $90 million in appropriated funds for cities, towns, and state agencies.[6] These state and local governments had been collaborating with FEMA for several years to advance hazard mitigation projects for at-risk communities, often fronting costly permitting applications and design plans.[7] Without BRIC, many of these critical projects will not move forward.[8] In Vermont, the abrupt cancellation of BRIC funds hindered flood recovery and resilience efforts after major flood years.[9] Local leaders have stated that without the BRIC program, they will have to stop some planned resilience projects altogether and may lack capacity to create longer-term flood mitigation strategies.[10]

FEMA's short-sighted actions harm both communities and the public fisc. Canceling BRIC will increase local suffering wherever an extreme storm strikes. And it will increase

---

[4] FEMA, *BRIC Direct Technical Assistance Communities*, at 15-17, https://perma.cc/VCC4-GFYD.

[5] Permit Sonoma, *Wildfire Resilient Communities*, https://perma.cc/8UP7-3J7Z.

[6] Press Release, Governor Maura Healey & Lt. Governor Kim Driscoll, *Trump Administration Cancels $90 Million in Disaster Prevention Aid for Massachusetts Communities* (Apr. 16, 2025), https://perma.cc/5N8S-MLN6.

[7] *Id.*

[8] van Leeuwan Decl. ¶ 40, ECF No. 104-21.

[9] Emma Green, *The Loss of FEMA Dollars Leaves Towns Scrambling*, Seven Days VT (July 9, 2025), https://perma.cc/8NFE-W6J6.

[10] *Id.*; *see also* Smith Decl. ¶¶ 8-9, ECF No. 104-42.

disaster recovery costs for all federal taxpayers. In bipartisan-supported statutes and appropriations, Congress has prioritized the BRIC program to mitigate disaster hazards and break the needlessly expensive cycle of destruction and rebuilding.[11] FEMA cannot defy Congress's direction. The Court should vacate FEMA's unlawful cancellation of BRIC and issue permanent injunctive relief in favor of the plaintiff States.

## ARGUMENT

### I.    BRIC saves taxpayers money

#### A.    Disaster mitigation investments save money and lives

Natural disasters are extremely costly. From 1980 to 2024, the United States experienced more than 400 disasters costing at least $1 billion each, totaling nearly $3 trillion in damages and claiming nearly 17,000 lives.[12] And these costly disasters are occurring more frequently. In 2023, the country saw a record of 28 extreme-weather disasters with at least $1 billion in damages.[13] In 2024, there were 27, with a total cost of more than $180 billion.[14]

Disaster mitigation projects reduce disaster costs and suffering. Investments in disaster mitigation create more resilient infrastructure, minimize rebuilding needs, and ensure the efficient deployment of public resources. A 2019 study from the National Institute of Building Scientists found that federal mitigation grants made between 1993 and 2016 resulted in an

---

[11] *See* Disaster Recovery Reform Act of 2018, Pub. L. 115-254, div. D, § 1234(a), 132 Stat. 3438, 3461-63 (2018) (creating a disaster mitigation funding option more consistent than ordinary appropriations, later called the BRIC fund); Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429, 1387 (2021) (allocating an additional $1 billion to BRIC).
[12] Nat'l Ctrs. for Envtl. Info., Nat'l Oceanic & Atmospheric Admin., *Billion-Dollar Weather and Climate Disasters, Summary Stats* (2025), https://perma.cc/T3XV-2PXA?type=image.
[13] Nat'l Ctrs. for Envtl. Info., Nat'l Oceanic & Atmospheric Admin., *Billion-Dollar Weather and Climate Disasters, Time Series* (2025), https://perma.cc/BF9S-U9AY?type=image.
[14] *Id.*

average benefit of $6 for every $1 invested, and were expected to prevent 600 deaths.[15] Although this ratio of $6 of savings in damage costs per $1 spent is widely accepted, a 2024 study by the U.S. Chamber of Commerce found that mitigation investments provide additional economic benefits for a community, including "jobs, workforce participation, production (GDP), and earned income for residents."[16] That study concluded that investments in resilience and disaster preparedness also reduce a community's secondary economic costs after a disaster. All told, the study found $13 in community benefits per $1 of mitigation costs.[17]

###    B.    BRIC projects' benefits far outstrip their costs

Like many other federal investments in disaster mitigation, the BRIC program is an effective use of taxpayer dollars. This is by design: cost-effectiveness is a central consideration in BRIC project selection. *See* 42 U.S.C. § 5133(e)(1)(A), (g)(6). Most BRIC funding applicants must perform a rigorous quantitative analysis to compare the long-term risk reduction benefits of their proposed project to its costs.[18] FEMA considers a project cost-effective when the benefits-cost ratio is 1.0 or higher.[19]

---

[15] Nat'l Inst. of Bldg. Scis., *Natural Hazard Mitigation Saves: 2019 Report* 1, 39, 127 (2019), https://perma.cc/7N76-L9RZ.
[16] U.S. Chamber of Com. et al., *The Preparedness Payoff: The Economic Benefits of Investing in Climate Resilience* 4 (2024), https://perma.cc/V6AH-U4MT.
[17] *Id.*
[18] *See* FEMA, *Policy Aid - Streamlined Approaches to the Benefit-Cost Analysis of Hazard Mitigation Assistance (HMA) Projects* 1 (Aug. 2024), https://perma.cc/L4QA-VGG3.
[19] *Id.*

In aggregate, BRIC projects' benefits far outweigh their costs. FEMA's own data show this:[20]

|  | Total projected benefits (in millions) | Total projected costs (in millions) | Federal cost share (in millions) | Cumulative Benefits-Cost Ratio |
|---|---|---|---|---|
| FY 2020 | $4,272 | $987 | $488 | 4.3 |
| FY 2021 | $5,951 | $1,440 | $987 | 4.1 |
| FY 2022 | $29,501 | $2,896 | $2,157 | 10.2 |
| FY 2023 | $4,217 | $1,071 | $990 | 3.9 |

These benefits-cost ratios are even greater when considering just the federal cost share.

In addition to the cost savings at the aggregate level, individual BRIC projects often have benefits-cost ratios far higher than the $6 to $1 benchmark. Two projects from Massachusetts illustrate the public benefits of BRIC investments. First, the Resilient Moakley Park improvement project aims to address flooding from rising sea levels in Boston's Moakley Park. Flooding there threatens an estimated 35,000 people, including more than 1,700 low-income families in public housing.[21] The Resilient Moakley Park project received a BRIC grant of $1.17 million, with a benefits-cost ratio of over **16:1**.[22] Second, the Island End River Flood Resilience Project aims to prevent projected coastal storm surge flooding that will threaten more than 5,000

---

[20] Data summarized from FEMA, *OpenFEMA Dataset: HMA Subapplications – v2* (Sept. 22, 2025), https://perma.cc/HUK4-3GZD (summing projected benefits (column CC), projected costs (CD), and federal cost share (CI), and calculating cumulative benefits-cost ratio by dividing the total projected benefits by the total projected costs, by fiscal year, for all selected BRIC projects).
[21] City of Boston, *Resilient Moakley Park Connectors: Executive Summary* 1 (Mar. 2025), https://tinyurl.com/3m6kca3j.
[22] OpenFEMA dataset, *supra* note 20 ("Resilient Moakley Park," subapplication EMB-2021-BR-072-0006); *see also* van Leeuwan Decl. ¶ 36 (describing project's anticipated benefits of over $615 million in impact reduction).

people, 800 buildings, and 11,000 jobs in Everett and Chelsea, Massachusetts.[23] Modeling shows that, without the project, flooding will occur as frequently as twice a day by 2050.[24] The cities estimate every major flood would cause more than $200 million in direct damage, adding up to $3.7 billion over 50 years—in addition to secondary costs such as lost wages, lost sales, and health care costs from food insecurity.[25] FEMA selected the project for a $49.99 million BRIC grant, with a benefits-cost ratio of over **38:1**.[26]

By terminating BRIC, FEMA wipes out these projected benefits and risks leaving behind a swath of incomplete projects. FEMA cancelled all BRIC projects that had not yet received promised funds and announced that any partially completed projects would receive nothing more. Corrected Admin. R. (AR) 71, ECF No. 96 ("The unobligated funds will remain in the Disaster Relief Fund or will be returned to the U.S. Treasury."). As a result, FEMA has obligated only $1 billion of the **$4.6 billion** promised to selected BRIC projects.[27] These canceled or incomplete mitigation projects will not save taxpayers money. Instead, taxpayers will pay even more in repair and recovery costs when extreme weather strikes.

## II.    BRIC provides unique assistance to under-resourced communities who are hardest hit by climate change

Climate-driven hazards like wildfires, severe storms, floods, tornados, and droughts disproportionately affect low-income and underserved communities. At the same time, many of

---

[23] Island End River Flood Resilience Project, https://perma.cc/2E7T-CSGM.

[24] *See* van Leeuwan Decl. ¶¶ 14-15.

[25] Island End River Flood Resilience Project, *supra* note 23.

[26] OpenFEMA dataset, *supra* note 20 ("Island End River Coastal Flood Resilience Project," subapplication EMB-2022-BR-012-0013).

[27] FEMA, *Building Resilient Infrastructure and Communities and Flood Mitigation Assistance Obligations Dashboard*, https://fema.maps.arcgis.com/apps/dashboards/8812b5926abd408cbb340b2159b98732 [https://perma.cc/V25F-5YM2] (selecting "Building Resilient Infrastructure and Communities" option from "Program" dropdown at the top of the dashboard).

these same frontline communities lack sufficient resources or capacity to invest in climate adaptation and risk reduction before a disaster hits.[28] They also face barriers in securing FEMA mitigation funding. While FEMA's required benefits-cost analysis prioritizes cost efficiencies for taxpayers, it can unintentionally leave these underserved communities behind. The benefits-cost formula has a built-in bias towards larger population centers and higher-income communities, and—by relying on costs and benefits that are expressed in monetary terms—can undervalue the potential for improving public health, expanding recreational opportunities, or increasing economic development potential, all of which are important benefits for lower-income communities.[29]

The BRIC program addresses the gap in mitigation funding access in two ways. First, BRIC offers unique, non-financial assistance through its Direct Technical Assistance initiative. And second, BRIC expands federal funding opportunities for economically disadvantaged, rural, and high-risk communities. Together, these offerings lower the barriers for frontline communities to access mitigation grants and increase the efficacy of those grants by raising the federal cost share. Canceling BRIC widens the gap in disaster mitigation access for the most vulnerable communities.

### A.     Direct, non-financial assistance

A significant and unique aspect of BRIC is its non-financial assistance program. BRIC Direct Technical Assistance (DTA) "provides tailored support to communities and Tribal Nations that may not have the resources to begin climate resilience planning and project design

---

[28] *See* Noreen Clancy et al., *The Building Resilient Infrastructure and Communities Mitigation Grant Program: Incorporating Hazard Risk and Social Equity into Decisionmaking Processes*, Homeland Security Operational Analysis Center (HSOAC), at v (2022), https://perma.cc/C9U3-56T6.

[29] *Id.* at 26-27.

on their own."[30] DTA "enhances communities' capacity to develop holistic, equitable climate adaptation solutions that advance community-driven objectives," "[t]hrough process-oriented, hands-on support."[31] DTA is not a monetary grant. Rather, it provides direct expert support to help communities evaluate disaster risks, engage residents, scope projects, evaluate projects' benefits and costs, and ultimately apply for and manage grants to implement those projects.[32]

Until it cancelled BRIC in 2025, FEMA had increased its DTA offerings each year since BRIC's inception in 2020. FEMA selected 93 communities for assistance in 2024, bringing the total to 167 DTA communities across the country:[33]



---

[30] FEMA, *Place-Based Technical Assistance Task Force* (Mar. 14, 2025), https://perma.cc/FW4F-8KLE.
[31] *Id.*
[32] FEMA, *Fiscal Year 2024 Program Support Material: Building Resilient Infrastructure and Communities Direct Technical Assistance* 1 (Jan. 2025), https://perma.cc/D75X-M3YQ.
[33] FEMA, *BRIC Direct Technical Assistance Communities*, *supra* note 4, at 1; *see also* FEMA, Building Resilient Communities Direct Technical Assistance Recipient Locations (July 25, 2025), https://www.arcgis.com/home/item.html?id=0beff10ed73c4ca68a791e560141a134 [https://perma.cc/3PDS-AJPP].

DTA plays a significant role for these communities. For example, in 2021 BRIC provided DTA to Robertson County, "a rural, sparsely populated county in northern Kentucky."[34] The county requested help with project scoping to address challenges with landslides.[35] Another 2021 DTA recipient was the Red Lake Nation, a federally recognized Indian Tribe in northern Minnesota.[36] The Nation requested help with "grants management training to develop" mitigation projects, after two tornados struck in 2021.[37]

FEMA's cancellation of the BRIC program ended DTA, AR 42, 46, leaving frontline communities and tribes across the country without access to this unique, non-financial support to reduce disaster damage, build resilience, and sustain successful mitigation programs. The cancellation also puts DTA communities with planned or partially completed projects at risk. For instance, Bridgeport, Connecticut received DTA support[38] to develop a coastal flood defense project in the city's South End, a diverse, lower-income neighborhood.[39] Bridgeport anticipated a $47 million BRIC grant to address recurrent flooding and storm surges and to safeguard two critical power-generating facilities.[40] BRIC's termination means not only the loss of the anticipated $47 million for the Resilient Bridgeport project, but also that the community remains exposed to future flooding.[41]

---

[34] FEMA, *BRIC Direct Technical Assistance Communities*, *supra* note 4, at 15.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *See* FEMA, *BRIC Direct Technical Assistance Communities*, *supra* note 4, at 2; *see also* Sasha Allen, *Where have FEMA grant programs in CT been cancelled?*, CT Mirror (Aug. 1, 2025), https://perma.cc/8AZ3-VKVZ (hover cursor over yellow marker third from left on interactive map).
[39] Brian Lockhart, *Trump cuts millions in FEMA funding for Bridgeport flood-protection project*, Conn. Post (Apr. 10, 2025), 2025 WLNR 8579268.
[40] Higgins Decl. ¶ 16, ECF No. 104-25.
[41] *See id.*

BRIC's cancellation also leaves rural communities that rely on DTA to fend for themselves. Kamiah, Idaho, a low-income town of around 1,100 people, is one example.[42] Many Kamiah residents cannot afford to gird their homes against the wildfires that city officials fear are on the horizon.[43] FEMA was working with Kamiah to create defensible space and promote ignition-resistant construction, as well as to provide the town's residents with expert advice on how to make their homes and properties safer.[44] BRIC's cancellation puts residents, homes, and businesses in Kamiah, and the many towns like it that want to prepare for natural disasters but lack the capacity to do so alone, at greater risk from natural disasters.

### B. Grants for low-income and high-risk communities

Congress has also created multiple pathways to ensure BRIC funds reach the communities with the greatest need. BRIC expands funding access for economically disadvantaged and marginalized communities by prioritizing grants for both small, rural communities and communities that are identified as "high risk" for climate hazards, and by increasing federal cost share for BRIC grants to these communities. Canceling BRIC contravenes this congressional purpose and puts vulnerable communities at even greater risk.

#### 1. "Small impoverished communities"

Congress prioritized small, rural communities for BRIC grants in two reinforcing ways. First, Congress has required FEMA, when making grant decisions, to consider a project's benefits to "small impoverished communities." 42 U.S.C. § 5133(g)(9). A "small impoverished

---

[42] U.S. Census Bureau, *Kamiah city, Idaho*, https://perma.cc/8G48-TF8T.
[43] Lauren Sommer & Rebecca Hersher, *Rural communities were promised millions in disaster funds. Trump is ending it*, OPB (May 2, 2025), https://perma.cc/7M6H-PKBV.
[44] Norma Staaf, *Grant funds to reduce fire risk to Kamiah houses*, The Clearwater Progress (July 6, 2023), https://perma.cc/3U6L-TV9G.

community" is one with "3,000 or fewer individuals that is economically disadvantaged," *id.* § 5133(a), and excludes areas within the boundaries of a larger city, 44 C.F.R. § 201.2.

In addition to putting a thumb on the scale in favor of grants that benefit small, rural communities, Congress also made those grants more substantial by permitting FEMA to cover up to 90% of project costs, rather than the 75% limit applicable to other grants. 42 U.S.C. § 5133(h). This statutory enhancement reflects Congress's recognition that small, rural communities may lack sufficient resources to implement mitigation projects, even with the typical federal cost share. Although rural communities still receive less BRIC funding than urban communities,[45] BRIC provides an important pathway to mitigation assistance that does not otherwise exist for rural, under-resourced communities.

Wolcott, Vermont, is one such rural and under-resourced community, with only about 1,600 residents.[46] Following heavy flooding in 2023, Wolcott planned the Flat Iron Bridge Project to reduce flooding on a residential road near the town.[47] Wolcott applied for and won a BRIC grant in 2023 that would have provided $71,000 for the project at the 90% cost share ratio for "small impoverished communities."[48] But FEMA cancelled the grant. The town is now stuck seeking alternative funding.[49]

---

[45] Claire Carlson, *Study: Rural Communities Still at Disadvantage When Competing for Govt. Grants,* The Daily Yonder (Oct. 16, 2023), https://perma.cc/VG85-THKA.

[46] U.S. Census Bureau, *Wolcott town, Vermont*, https://perma.cc/9J9J-BTHT.

[47] *See* Olivia Gieger, *FEMA ended a grant program designed to help communities prevent disaster damages. Here's where that leaves Vermont*, VT Digger (Apr. 23, 2025) https://perma.cc/SE52-TD7R; Smith Decl. ¶ 6.

[48] *See* OpenFEMA dataset, *supra* note 20 ("Flat Iron Road Project Scoping," subapplication EMB-2023-BR-003-0007).

[49] Green, *supra* note 9.

2.    **Community Disaster Resilience Zones**

Congress has also prioritized assistance for communities facing the greatest risks from climate disasters. In the Community Disaster Resilience Zones (CDRZ) Act of 2022, Congress instructed the executive branch to identify and prioritize assistance to census tracts at high risk from climate hazards. 42 U.S.C. § 5136. When designating high-risk census tracts, the CDRZ Act requires the consideration of various factors, including economic and agricultural values, social vulnerability and community resilience data, and the achievement of geographic balance among coastal, inland, urban, suburban, and rural areas. *Id.* § 5136(d)(2)-(3). Prioritizing funding for projects in these zones builds disaster resilience nationwide by funneling resources to the communities most at risk from natural disasters and climate impacts.[50] FEMA designated 483 census tracts as CDRZs in 2023, representing more than two million people in at-risk communities across every state.[51]

CDRZ designation provides several benefits within the BRIC program. As with projects benefiting "small impoverished communities," mitigation and resilience projects in CDRZs can receive a preferential 90% federal cost share, instead of the standard 75%. 42 U.S.C. § 5136(g). Communities in these designated zones are also prioritized to receive DTA to help them apply for BRIC grants. *See id.* § 5136(h).

---

[50] *See* Krishna Kunapareddy, *FEMA Community Disaster Resilience Zones (CDRZ) - Expanded opportunities for federal infrastructure and hazard mitigation funding*, Rural Transportation.org (Dec. 20, 2023), https://perma.cc/EV97-7G4E.
[51] Andrew Rumbach et al., *Who Lives in the Community Disaster Resilience Zones?*, Urban Institute (Nov. 10, 2023), https://perma.cc/2VUB-FM3C.

Although the design of the CDRZ designation process excludes some of the most vulnerable communities in the United States,[52] the CDRZ Act mandates FEMA to consider equity in its distribution of BRIC funding across areas where climate adaptation is needed. *See* 42 U.S.C. § 5136(d)(2)-(3). As a result, CRDZ designation lowers the barriers for many frontline communities to access federal mitigation grants and increases the benefits of those grants by raising the federal cost share.

Crisfield, Maryland is one such CDRZ community that has benefitted from the BRIC program.[53] A rural town of about 2,500 inhabitants, Crisfield sits just a few feet above sea level on the Chesapeake Bay.[54] After working with FEMA for several years as a DTA recipient,[55] Crisfield applied for and expected to receive a $36 million BRIC grant for a mitigation project to protect the southern part of town from tidal flooding, storm surge, and rising seas.[56] Crisfield's mayor has stated that the area has experienced a drastic increase in flooding over the last few decades, deteriorating the community and devastating the local economy.[57] The expected $36 million grant would total nine times the town's annual budget and initially provided an economic jolt in the form of many new potential businesses and investors.[58] Now that FEMA has cancelled

---

[52] Manann Donoghoe & Atyia Martin, *A new federal disaster resilience policy is overlooking many Black and Latino or Hispanic communities*, Brookings (Apr. 2, 2025), https://perma.cc/S5YA-FVUD.

[53] *See* Direct Technical Assistance Recipient Locations, *supra* note 4 (interactive map displaying Crisfield as a CDRZ with DTA support).

[54] Strickland Decl. ¶ 13, ECF No. 104-30.

[55] *Id.* ¶¶ 10-11.

[56] Astrid Caldas, *City of Crisfield to Trump Administration: Return Promised BRIC Funds to Fight Sea Level Rise*, The Equation (Sep. 17, 2025), https://perma.cc/Y649-M2SB; *see also* Strickland Decl. ¶¶ 14-15.

[57] Caldas, *supra* note 56.

[58] Tracee Wilkins & Katie Leslie, *Floods threaten Maryland seafood town's survival after Trump officials cancel $36M grant*, NBC Washington (Aug. 14, 2025), https://perma.cc/3JJQ-343Z?type=image.

BRIC funds, hope for the town's revitalization has dimmed.[59] Crisfield has been left without resources to solve the community's flood threat and remains at risk of ruinous harm.

Canceling the BRIC program eliminates the non-financial assistance and unique pathways to mitigation funding for many economically disadvantaged and high-risk communities. Support for pre-disaster mitigation is not just needed for dense population centers on the coasts—it is essential everywhere, especially in the low-income, rural, and underserved communities that may not have their own resources or capacity to invest in risk reduction. The BRIC program offers avenues to address that gap, without which these frontline communities will experience increased costs and suffering from the next disaster.

**III.    No other federal disaster mitigation program can fill BRIC's role**

BRIC is not alone in FEMA's portfolio of hazard mitigation assistance programs. FEMA has several programs that support mitigation activities to reduce or eliminate potential losses to state, local, tribal and territorial governments and foster resilience against disasters. In addition to BRIC, these include the Hazard Mitigation Grant Program (HMGP), the Hazard Mitigation Grant Program Post Fire (HMGP Post Fire), and Flood Mitigation Assistance (FMA).[60]

The BRIC program, however, serves a unique role in the federal mitigation assistance scheme that cannot be filled by those other programs: it is available and specifically targeted to address hazards *before* a disaster hits. For instance, while HMGP reimburses states for forward-looking projects that help disaster-impacted places rebuild in ways that reduce or mitigate future disaster losses, those grants are only available *after* a disaster has already happened.[61] Once a

---

[59] *Id.*

[60] FEMA, *Hazard Mitigation Assistance Program and Policy Guide 2.1*, at 5 (Jan. 20, 2025), https://perma.cc/R2KR-W8JA.

[61] *See id.* at 5-6.

disaster occurs, a governor or tribal chief executive must then request a major disaster

declaration through the Presidential Disaster Declaration Process to initiate any request for

HMGP funding. *See* 42 U.S.C. § 5170; 44 C.F.R. Pt. 206, Subpart B. The BRIC program, on the

other hand, requires only that the state or territory have had a major disaster declaration in the

past seven years.[62] Between 2011 and 2024, every state and 99.5% of congressional districts

experienced at least one federally declared major disaster.[63]

The other programs are also too limited to serve BRIC's broad prophylactic goals. While

HMGP Post Fire is not contingent on a major disaster declaration, it is only available in areas

affected by a fire for which the federal government first provided assistance pursuant to a Fire

Management Assistance Grant declaration.[64] And FMA grants can be used only for projects that

reduce or eliminate the risk of flood damage to structures insured by the National Flood

Insurance Program.[65] The BRIC program is irreplaceable in that it provides proactive, pre-

disaster investment in community resilience across several natural hazards and serves as a

catalyst for communities across the country, of all shapes and sizes, to invest in hazard

mitigation policies.[66]

But even if other federal disaster mitigation grants could fill the vacuum FEMA created

when it canceled BRIC, those other programs are not currently functioning. The Trump

administration issued an Office of Management and Budget (OMB) directive in January 2025

that attempted to freeze all HMGP and FMA funding. *See New York v. Trump*, 769 F. Supp. 3d

---

[62] *Id.* at 9.
[63] Amy Chester, *Press Release: Atlas of Accountability* 1, Rebuild by Design (Feb. 19, 2025),
https://perma.cc/XRW5-8KZJ.
[64] FEMA, *Hazard Mitigation Assistance Program and Policy Guide 2.1, supra* note 60, at 7.
[65] *Id.* at 10.
[66] *See id.* at 8.

119, 129-30 (D.R.I. 2025). Although that Directive was preliminarily enjoined, *id.* at 146-47,[67] President Trump has nonetheless ignored governors' requests for HMGP grants.[68] Indeed, between March and September this year, Governors made 42 HMGP requests. None had been approved.[69]

The Trump administration's message is clear: states and localities are on their own to future-proof against extreme weather. Having ceased other disaster mitigation funding options, FEMA's cancelation of BRIC further exposes communities to preventable harm from disasters, all in the face of intensifying weather events. The balance of the equities and public interest demand restoration of the BRIC program. BRIC is not only essential to carrying out Congress's clear commands, but also to ensuring our nation's chances of adapting to our new climate reality.

## CONCLUSION

The Court should grant the plaintiff States' motion for summary judgment and require FEMA to restore the BRIC program as Congress directed.

Dated: October 17, 2025

Jennifer A. Friedmann*
Natural Resources Defense Council
20 N. Wacker Drive, Suite 1600
Chicago, IL 60606
Phone: (312) 847-6827
Email: jfriedmann@nrdc.org

Jared E. Knicley*
Natural Resources Defense Council

Respectfully submitted,

By: */s/ Breanne Frank*
Breanne Frank (BBO # 715153)
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
Phone: (617) 850-1771
Email: bfrank@clf.org

Philip Papiasvili*
Conservation Law Foundation

---

[67] The preliminary injunction is currently on appeal before the First Circuit. *New York v. Trump*, Nos. 25-1236, -1413.
[68] Jennifer DeCesaro & Sarah Labowitz, *The Trump Administration Is Quietly Curbing the Flow of Disaster Funding*, Carnegie Endowment (Sept. 19, 2025), https://perma.cc/HUA6-3A47.
[69] *Id.*

1152 15th Street NW, Suite 300
Washington, DC 20005
Phone: (202) 513-6242
Email: jknicley@nrdc.org

*Counsel for Amicus Curiae Natural
Resources Defense Council*

62 Summer Street
Boston, MA 02110
Phone: (617) 850-1739
Email: ppapiasvili@clf.org

*Counsel for Amici Curiae Conservation Law
Foundation and Natural Resources Defense
Council*

 * Certification for admission pro hac vice to follow

17

**CERTIFICATE OF SERVICE**

I, Breanne Frank, certify that this document was filed through the CM/ECF system on October 17, 2025, and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

*/s/ Breanne Frank*
Breanne Frank