UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF WASHINGTON et al.<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY; DAVID RICHARDSON, in his official capacity as the Duties of the Administrator of the Federal Emergency Management Agency; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as the Secretary of the Department of Homeland Security; and the UNITED STATES OF AMERICA,<br><br>　　　　　　　Defendants. | Civil Action No. 1:25-cv-12006-RGS |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

　　Plaintiffs' Opposition to Defendants' Motion for Summary Judgment can be distilled to one main argument: that the Building Resilient Infrastructure and Communities ("BRIC") program must have been terminated because their projects have not yet received additional funding. This logic is flawed for two reasons. *First*, it assumes that Plaintiffs will not receive funding in the future—a speculative harm contradicted by the record which reflects that not a single grant awarded to any Plaintiff State has been terminated, and not a single project selected for further review belonging to any Plaintiff State has been cancelled. And, *second*, it assumes that Plaintiffs are *entitled* to additional funding under BRIC—regardless of whether their projects align with the Department of Homeland Security's ("DHS") view of how best to protect American

citizens against natural disasters. Plaintiffs' assumptions are unsupported by the record, which reflects that Plaintiffs' projects remain under review.

**I.      Plaintiffs Are Not Entitled To Additional Funding.**

To date, Plaintiffs have received all funding to which they are legally entitled, *i.e.*, funding that has been awarded to them.[1] Doc. 117, ¶¶ 109, 145-46. Despite this, Plaintiffs claim they will be harmed without judicial intervention because their projects that have been "selected" but not yet obligated are "frozen". Doc. 118 at p. 5. Plaintiffs make a similar argument concerning phased projects that are ready for construction. Doc. 118 at p. 3. But "selected" projects are not *entitled* to funding. Doc. 117-1, ¶ 9. Nor are phased projects that are ready for construction. Doc. 117-1, ¶ 11. Perhaps realizing as much, Plaintiffs go on to argue that they have been "unable to obtain any *new* BRIC funding", Doc. 118 at p. 5 (emphasis in original). This argument is based, at least in part, on DHS's withdrawal of its 2024 Notice of Funding Opportunity ("NOFO").[2] But the funding for the 2024 NOFO remains available, does not expire, and is not constrained by a temporal limitation imposed by Congress—in other words, Plaintiffs are not *entitled* to the issuance of the 2024 NOFO on their preferred timeline. And should DHS re-issue the 2024 NOFO, Plaintiffs are free to compete for it.

---

[1] As explained in David Richardson's updated Declaration, FEMA GO was offline during the government shutdown. However, now that appropriations have been restored, FEMA GO is back online. *See* Doc. 117-1, p. 5, ¶ 13.

[2] Defendants recognize that in 2021 Congress appropriated $800 million for BRIC through the Infrastructure Investment and Jobs Act ("IIJA"), with $200 million being made available per fiscal year, through 2026. Doc. 96, p. 107, ¶ 6. These IIJA funds remain available and cannot be used for non-BRIC purposes. Doc. 96, p. 111, ¶ 12.

This Court cannot order DHS to re-issue the 2024 NOFO for the same reason it cannot order DHS to award funding for "selected" projects or phased projects that are ready for construction: these are not discrete agency actions that are required by law. *See* 5 U.S.C. § 706(1). Judicial supervision of these discretionary funding decisions would be contrary to Supreme Court precedent. *See Norton v. Southern Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 62 (2004). Even more practically, this kind of challenge is impossible to litigate under the mechanics of judicial review that the Administrative Procedure Act contemplates. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "APA review typically takes place on the basis of a record compiled by the agency" consisting of the materials considered "in making the challenged decision." *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 610 (1st Cir. 1989). Challenges to programmatic decision-making make it impossible for the agency to "compil[e] and organiz[e] the complete administrative record" for the agency action, *see Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 n.2 (11th Cir. 1996), because there is no discrete agency action as necessary for the parties to proceed to summary judgment. Such is the case here.

To be sure, Plaintiffs claim they are not asking the Court to supervise the day-to-day operations of BRIC. Doc. 118, p. 22 ("Defendants conjure an imaginary injunction asking this Court to "supervis[e]…the day-to-day operations of BRIC…But Plaintiffs do not seek anything of the sort"). Instead, according to Plaintiffs, "all" they seek is for the Court to "vacate the BRIC Termination…." *Id.* But an order vacating the BRIC termination—which, again, Defendants dispute has even occurred—would do nothing to remedy the purported harms Plaintiffs describe

3

in their Amended Complaint (Doc. 85) or Motion for Summary Judgment (Doc. 101). There can be no serious question that what Plaintiffs seek is an end to the "freeze" or, in other words, continued funding for their particular projects.[3] But they have not identified any statutory language *requiring* DHS to fund their projects, much less that DHS must fund their projects on a particular timeline. And to the extent Plaintiffs argue they simply want the opportunity to be *considered* for additional funding, they already have it: their projects are being evaluated to determine whether they are in line with the Administration's priorities.

## II.   Delays Or Temporary Pauses In Funding Do Not Establish That BRIC Has Been Terminated Or That DHS Has Reduced Its Overall Mitigation Functions.

Contrary to Plaintiffs' allegations, just because timelines may appear slower than in previous years while DHS assesses whether selected projects align with the Administration's policies does not mean DHS has reduced its pre-disaster mitigation functions overall. Delays and even temporary pauses in funding to assess alignment with agency priorities are common and permissible.

Courts and other entities have likewise acknowledged that delays and even temporary pauses in obligations or payments of appropriations are quite common. *See City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987) (explaining how Congress has previously "acknowledged that 'the executive branch necessarily withholds funds on hundreds of occasions during the course of a fiscal year' and such delays may result from the 'normal and orderly

---

[3] *See, e.g.*, Doc. 104-38, ¶¶ 35-36 ("The City has five projects that were selected for further review but not yet obligated…All five of these projects are unlikely to move forward due to the BRIC termination"); Doc. 104-39, ¶ 15 ("Many of the BRIC projects in Oregon cannot move forward without BRIC funding"); Doc. 104-40, ¶ 18 ("Many of the BRIC projects in Pennsylvania cannot move forward without BRIC funding"); Doc. 104-4, ¶ 12 ("The open BRIC projects in Rhode Island cannot move forward without BRIC funding"); Doc. 104-42, ¶ 9 ("Many of the BRIC projects in Vermont cannot move forward without BRIC funding").

4

operation of the government'" (quoting H.R. Rep. No. 658, 93d Cong., 1st Sess. 41 (1971)). The GAO, itself an entity within the Legislative Branch, has also approved of agencies "taking the steps it reasonably believes are necessary to implement a program efficiently and equitably, even if the result is that funds temporarily go unobligated." In re James R. Jones, House of Representatives, B-203057 L/M, 1981 WL 23385 (Comp. Gen. Sept. 15, 1981); *see also* GAO, Principles of Federal Appropriations Law, § 2-50 (4th ed. 2016).

To that end, any delay or pause in BRIC funding is not indicative of its termination, as Plaintiffs ask this Court to presume. Rather, any delay or pause in funding is consistent with David Richardson's explanation that BRIC is currently being evaluated so that the Administration can ensure it is being implemented in a manner that best protects American citizens against natural disasters. Doc. 96, p. 108, ¶ 9. That is particularly true where, as here, all funds set aside and appropriated for BRIC remain available for BRIC projects. Doc. 96, p. 111, ¶ 12; Doc. 117-1, ¶ 4.

## II. Plaintiffs' Claims That BRIC Funding Has Been Repurposed Or Withheld Are Not Supported By The Record.

Lastly, because Plaintiffs have not received additional funding for their projects, Plaintiffs speculate that DHS is necessarily withholding or repurposing funds. This is not true. To start, DHS has discretion to delay or pause these funding determinations while it evaluates the BRIC program, as described above. And there is no evidence that DHS has repurposed funds. Plaintiffs argue that BRIC funds have been "divert[ed]…to non-BRIC programs" simply because BRIC set-asides are housed in the Major Disasters portion of the Disaster Relief Fund. Doc. 118, p. 14. As made clear in David Richardson's updated declaration, "[a]ll funds that have been set aside for BRIC from the DRF remain in the DRF. These funds remain available for BRIC expenses, including BRIC grants." Doc. 117-1, ¶ 4. And, tellingly, Plaintiffs have not identified a single

5

"non-BRIC program" that has received BRIC funding. Plaintiffs also point to an earlier recommendation that Congress should rescind and return IIJA funds to the treasury. Despite that recommendation, however, DHS has not sought, let alone implemented, a recission of any IIJA funds by Congress, Doc. 96, p. 111, ¶ 12; Doc. 96 p. 102. There has been no withholding or repurposing of BRIC funds.

## CONCLUSION

"Plaintiffs have the burden of identifying specific federal conduct and explaining how it is 'final agency action.'" *Colo. Farm Bureau Fed'n v. United States Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) (quoted approvingly in *Glob. Tower Assets, LLC v. Town of Rome*, 810 F.3d 77, 88 (1st Cir. 2016)). Plaintiffs have not satisfied their burden here. BRIC has not been terminated simply because Plaintiffs' projects have not received additional funding while DHS evaluates the program overall. And no matter how they frame their request for relief, at bottom, Plaintiffs ask this Court to supervise DHS's management of its pre-disaster mitigation relief program by way of mandatory injunctive relief. This relief is not available under the APA and violates separation of power principles. For these reasons, and for those described in Defendants' Cross-Motion for Summary Judgment, this Court should deny Plaintiff's Motion for Summary Judgment and allow Defendants' Cross-Motion for Summary Judgment.

Respectfully submitted:

LEAH B. FOLEY
U.S. ATTORNEY

Dated: November 18, 2025    By:    /s/ *Nicole M. O'Connor*
                                    Nicole M. O'Connor
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    1 Courthouse Way, Suite 9200

                                            Boston, MA 02210
                                            Tel.: 617-748-3112
                                            Email: Nicole.O'Connor@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I, Nicole M. O'Connor, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: November 18, 2025                By:    */s/ Nicole M. O'Connor*
                                                                 Nicole M. O'Connor
                                                                 Assistant United States Attorney