UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-12006-RGS

STATE OF WASHINGTON, *et al.*

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY, *et al.*

MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

December 11, 2025

STEARNS, D.J.

Plaintiffs State of Washington; Commonwealth of Massachusetts; State of Arizona; State of California; State of Colorado; State of Connecticut; State of Delaware; District of Columbia; State of Illinois; Office of the Governor, *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; State of Maine; State of Maryland; State of Michigan; State of Minnesota; State of New Jersey; State of New Mexico; State of New York; State of North Carolina; State of Oregon; Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; State of Rhode Island; State of Vermont; and State of Wisconsin (collectively, the States) bring this action against the Federal Emergency Management Agency (FEMA); David Richardson, in his official capacity as Senior Official

Performing the Duties of the Administrator of FEMA; the United States Department of Homeland Security (DHS); Kristi Noem, in her official capacity as Secretary of DHS; and the United States of America (collectively, the Government) based on the alleged termination of FEMA's Building Resilient Infrastructure and Communities (BRIC) pre-disaster mitigation program.  In the ten-count Amended Complaint, the States accuse the Government of violating the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(A)-(C), and several clauses of the U.S. Constitution.  Before the court are the parties' cross-motions for summary judgment.  Having reviewed the briefing and hearing oral argument, the court will allow the States' motion and deny the Government's motion.

## BACKGROUND

The BRIC program provides "technical and financial assistance to States and local governments for cost-effective pre-disaster hazard mitigation measures that reduce injuries, loss of life, and damage and destruction of property." Pls.' Statement of Material Facts (SMF) [Dkt # 103] ¶ 1; *see also* Defs.' Resp. to Pls.' Statement of Material Facts (Resp. to SMF) [Dkt # 117] ¶ 1.  It is the largest pre-disaster mitigation program offered through FEMA, and is funded by direct Congressional appropriations, *see* Infrastructure Investment and Jobs Act (IIJA), Pub. L. 117-58, 135 Stat, 429

(2021), and set asides from the Disaster Relief Fund (DRF), *see* Stafford Act § 203(i), 42 U.S.C. § 5133(i).

FEMA makes BRIC financial assistance available during a given fiscal year through a Notice of Funding Opportunity (NOFO). SMF ¶ 7; Resp. to SMF ¶ 7. States and local governments apply through the NOFO for funding for proposed hazard mitigation projects. FEMA then selects a subset of these applications as deserving further consideration. Richardson Decl. [Dkt # 117-1] ¶ 8. Funding is not obligated when FEMA gives its initial approval to an application; the parties must further negotiate with FEMA until a final grant agreement is signed.[1] SMF ¶ 6; Resp. to SMF ¶ 6. It may be months or years before this occurs, as States and local governments must often complete additional steps (e.g., obtaining permits and regulatory approval from government agencies) before work on a mitigation project can begin. SMF ¶ 5; Resp. to SMF ¶ 5.

On April 2, 2025, Cameron Hamilton, the then-Senior Official Performing the Duties of the Administrator of FEMA, issued a memorandum (the Hamilton Memo) intended to "provid[e] new direction for the BRIC Program." Admin. R. (A.R.) [Dkt # 96] at 43. Among other directives, the

---

[1] The States do not dispute that FEMA has discretion over which applications to select and give ultimate approval.

3

memorandum specified that FEMA: (1) "will cancel the FY24 Notice of Funding Opportunity (NOFO) for the BRIC grant program," (2) "will [n]ot award the BRIC projects selected but not yet awarded across all fiscal years," and (3) "will . . . [n]ot grant any additional period of performance extensions on any BRIC projects, without [Hamilton's] prior approval." *Id.* at 43-44.

Two days later, on April 4, 2025, Hamilton issued a press release (the April 4 Press Release) stating that "FEMA is ending the [BRIC] program" and "will . . . immediately return[]" any funds which had not yet been distributed "either to the Disaster Relief Fund or the U.S. Treasury." A.R. at 55; *see also* A.R. 63 ("On April 4, FEMA announced that it is ending the Building Resilient Infrastructure and Communities Program."); A.R. 67 (same). Several FEMA Regional Administrators viewed the Hamilton Memo and the April 4 Press Release as the official termination of the BRIC program and notified their stakeholders accordingly.[2] *See, e.g.*, Ezelle Decl. [Dkt # 104-20], Ex. A; van Leeuwen Decl. [Dkt. # 104-21], Ex. A; Fenning Decl. [Dkt # 120-23], Ex. A; Higgins Decl. [Dkt # 104-25], Ex. A; Osborn Decl. [Dkt # 104-26], Ex. A; Strickland Decl. [Dkt # 104-30], Ex. A; Rogers Decl. [Dkt # 104-31], Ex. A; Bray Decl. [Dkt # 104-37], Ex. A; *see also* A.R. 48-50, 53 (labeling

---

[2] Richardson similarly characterized the April 4 Press Release as "announcing" that the BRIC program "was ending" in a May 16, 2025 memorandum to Secretary Noem. A.R. at 103.

4

the Hamilton Memo a "directive" and providing Regional Administrators with a "Rollout Timeline" for notifying stakeholders).

Consistent with the public statements, FEMA removed the FY 2024 NOFO from its website in April of 2025. Since that date, it has not issued any replacement FY 2024 NOFO or a FY 2025 NOFO (effectively foreclosing States and local governments from submitting new grant proposals), nor has it obligated funding to projects previously identified for further review but not formally awarded. SMF ¶¶ 45-48, 50, 52; Resp. to SMF ¶¶ 45-48, 50, 52. FEMA also reversed the set-aside of funds previously allocated to BRIC in its June 2025 DRF report.[3] *See* Disaster Relief Fund: Monthly Report as of June 30, 2025 [Dkt # 9-19] at 4, 20; Disaster Relief Fund: Monthly Report as of August 31, 2025 (August 2025 DRF Report) [Dkt # 104-12] at 4, 20; *see also* Order [Dkt # 79]. FEMA has not, however, officially terminated any awarded grants to date.

## DISCUSSION

### I.  *Subject Matter Jurisdiction*

The court begins with the issue of subject matter jurisdiction. *See Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 18 (1st Cir.

---

[3] FEMA has since returned the funds to the Mitigation Fund in compliance with the court's August 5, 2025 Order granting the States' motion for a preliminary injunction.

5

2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case."). The Government levels the same three challenges to the existence of jurisdiction that it raised at the preliminary injunction phase of this litigation: ripeness, standing, and sovereign immunity. Again, the court finds the Government's arguments unconvincing.

### a. Ripeness

"Questions of ripeness that arise incident to challenged governmental actions in the declaratory judgment context are gauged by means of a two-part test." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). "First, the court must consider whether the issue presented is fit for review." *Id.* The critical question is "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Id.* at 536, quoting *Massachusetts Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 20 (1st Cir. 1992) (per curiam). Second, the court must "consider the extent to which hardship looms." *Ernst & Young*, 45 F.3d at 535. This inquiry is focused "on the judgment's usefulness." *State of Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 693 (1st Cir. 1994). The court must ask "whether granting relief would serve a useful purpose, or, put another way, whether the sought-after

6

declaration would be of practical assistance in setting the underlying controversy to rest." *Jensen v. Rhode Island Cannabis Control Comm'n*, --- F.4th ----, 2025 WL 3280840, at *5 (1st Cir. Nov. 25, 2025), quoting *Narragansett*, 19 F.3d at 693.

The first prong is easily satisfied. Although the Government argues that the States' claims depend on a contingent future event – whether the agency will in fact terminate the BRIC program – the evidence in the record indicates that the decision to end the program has, for all practical purposes, been made. The Hamilton Memo and the April 4 Press Release use language indicative of a final decision – "is" and "will," *see* A.R. 45, 55 – and FEMA officials have consistently treated these pronouncements as binding during the months that have ensued.[4] FEMA has, for example, cancelled the FY 2024 NOFO as instructed, declined to obligate funds for *any* grants previously selected but not yet awarded, failed to approve the transition of *any* phased projects from Phase I (design) into Phase II (construction), and attempted (albeit unsuccessfully) to reverse the set-aside of more than $4 billion from the DRF to the Mitigation Fund. That FEMA has yet to formally terminate any already-awarded grants does not convince the court that the

---

[4] Richardson himself acknowledged that FEMA had "beg[u]n activities to close out the BRIC program" in his May 16 memorandum. A.R. at 103.

7

program's *future* status remains up in the air.[5]

The second prong is also satisfied here. Even accepting the Government's assertion that it has not formally terminated any awarded grants (and may not do so in the future), it cannot seriously be disputed that the States face a "'direct and immediate' dilemma," *Ernst & Young*, 45 F.3d at 535, quoting *W.R. Grace & Co. v. EPA*, 959 F.2d 360, 364 (1st Cir. 1992), such that "granting relief would serve a useful purpose," *Narraganset*, 19 F.3d at 693. A definitive decision from this court will allow the States to make a responsible determination whether to proceed with their selected but not yet awarded projects and will provide guidance whether to expect federal mitigation funding opportunities in the future.

b. *Standing*

The standing inquiry has three elements. "First, the plaintiff must have suffered an 'injury in fact'–an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent." *Lujan v. Defs.*

---

[5] Nor is the court swayed by the fact that the Government has submitted six requests for information on selected but not yet awarded projects (the seventh request identified by the Government pertains to an already awarded grant, not a selected grant). This figure is well below what would be expected over a seven-month period given historical trends and the sheer number of existing selected projects (nearly seven hundred). In any event, the Government does not contend that any of these requests led to a selected grant being awarded.

*of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of." *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable [court] decision.'" *Id.* at 561, quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 38, 43 (1976).

The Government focuses on the first prong, arguing that the States have not suffered any *actual* injury because they are not entitled to funding for any non-awarded projects. But this is not literally true. The Stafford Act and the IIJA guarantee each State an overall, if minimal, threshold of mitigation funding each fiscal year. *See* Stafford Act § 203(f)(2), 42 U.S.C. § 5133(f)(2) ($575,000 or 1% of total appropriations "shall" be made available to each State); IIJA, Pub. L. No. 117-58, 135 Stat. at 1387 (requiring the agency to offer $200 million in mitigation funding for each fiscal year between 2022 and 2026). Thus, while FEMA has discretion whether to award funding for any single grant, it lacks discretion to refuse to award *any* funds to selected grants in a given fiscal year.

In any event, the States also allege that the shuttering of the BRIC program has cost them the opportunity to pursue future benefits. Courts have found similar injuries sufficient to create standing in the past. *See CC*

9

*Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) ("[A] plaintiff suffers a constitutionally cognizable injury by the loss of an *opportunity to pursue a benefit* . . . even though the plaintiff may not be able to show that it was *certain to receive* that benefit had it been accorded the lost opportunity.") (emphasis in original). The Government tries to minimize this harm by contending that the funds remain available in the Mitigation Fund for future use. But the record does not support this contention. FEMA has repeatedly stated that it intends to return any unspent IIJA funds to the Treasury. *See, e.g.*, A.R. at 55 ("Approximately $882 million of funding from the Infrastructure Investment and Jobs Act *will be* returned to the U.S. Treasury or reapportioned by Congress in the next fiscal year.") (emphasis added); A.R. at 64 (same); A.R. at 102 ("The remaining $854M *will* remain unspent.") (emphasis added); A.R. at 104 (same). And as for the $4 billion in funding set aside for the BRIC program from prior DRF appropriations, FEMA has *already* attempted to move that money out of reach. That FEMA did not succeed in this attempt is only by virtue of the court's granting the States injunctive relief.

    c. *Sovereign Immunity*

The court need pause but briefly on the issue of sovereign immunity. The States do not challenge any discretionary authority possessed by FEMA

10

over the decision whether to approve any specific grant application. On the contrary, the thrust of the States' claims is that FEMA *lacked* the discretion to not act at all. The States' claims thus fall outside the scope of 42 U.S.C. § 5148.

The Tucker Act is similarly inapplicable. The States do not allege that FEMA breached any specific contract,[6] nor do they seek to compel performance under or enjoin the termination of any contract. Their claims are focused solely on whether the agency has the authority to shutter the entire BRIC program.

### d. Remaining Threshold Arguments

The Government raises three additional threshold challenges to reviewability under the APA: (1) there has been no final agency action; (2) the claims address action committed to agency discretion by law; and (3) this action seeks to compel agency action that is not required by law. None of these arguments is availing.

The first challenge is flatly contradicted by the record. The unequivocal language used in the Hamilton-era pronouncements and the tangible steps taken by FEMA to implement Hamilton's directives (*e.g.*, cancelling the FY

---

[6] By the Government's own account, it continues to pay all sums due under existing grant agreements.

2024 NOFO, attempting to redirect funds to the DRF, and failing to advance any selected but not yet awarded projects) convince the court that a final determination (*sub silentio* or not) has been made to end the BRIC program. *See Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (agency action is final if it marks the consummation of the decision-making process and determines rights and obligations from which legal consequences flow); *see also Gen. Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) ("[A]n agency pronouncement will be considered binding as a practical matter if it . . . is applied by the agency in a way that indicates it is binding.").

The second and third arguments misconstrue the nature of the States' claims. The States do not accuse FEMA of unreasonably denying funding for any individual grant; they challenge only whether the agency had the discretion to terminate the BRIC program altogether. In that vein, their requested relief is for an injunction enjoining the allegedly unlawful termination of the program. They do not ask the court to compel the agency to exercise its discretion in a particular way (*e.g.*, awarding specific projects), nor do they ask the court to monitor FEMA's day-to-day conducting of business.

## II. Summary Judgment

### a. Termination of the BRIC Program

The States argue that the termination of the BRIC program is unlawful under §§ 706(2)(A)-(C) of the APA, violates the separation of powers, and violates the Appropriations and Spending Clauses because it contravenes Congressional mandates in three ways.[7] The court addresses each in turn.

1. Substantial Reduction of Mitigation Functions (Counts I, II, and IX)

First, the States argue that the Government lacked discretion to terminate the BRIC program because mitigation is one of FEMA's core responsibilities, *see* 6 U.S.C. §§ 313(b)(1), 313(b)(2), 314(a)(9)(A), and Congress has explicitly prohibited the agency from "substantially or significantly reduc[ing] . . . the authorities, responsibilities, or functions of the Agency or the capability of the Agency to perform those missions, authorities, responsibilities, except as otherwise specifically provided in an Act enacted after October 4, 2006." 6 U.S.C. § 316(c)(1) (footnote omitted). The court agrees.

The BRIC program is the largest pre-disaster mitigation program offered through FEMA. Its summary termination (without the

---

[7] Because the claims implicate constitutional considerations (whether the Executive Branch can terminate a program despite a Congressional mandate or spend funds in a manner not authorized by Congress at the time of appropriation), the court rejects the Government's suggestion that the separation of powers and Appropriations and Spending Clauses claims are simply APA claims in a constitutional disguise.

implementation of any replacement program through which states and local governments can obtain mitigation funding) undoubtedly qualifies as a substantial reduction of FEMA's mitigation responsibilities within the scope of § 316. The Government does not persuasively argue otherwise,[8] nor does it identify any Congressional Act authorizing FEMA to abandon its mitigation duties. It follows that the termination of the BRIC program was unlawful.

### 2. Repurposing of Funds (Counts III, IV, and IX)

The States next argue that the Government lacked discretion to terminate the BRIC program because one of the planned steps in the termination is to channel funds previously set aside for the BRIC program to post-disaster relief grant programs. Again, the court agrees.

The Further Consolidated Appropriations Act 2024 provides that "no funds shall be reprogrammed within . . . appropriations . . . to increase or

---

[8] At best, the Government asserts that operations have not ceased because the funding is still available. But it cannot reasonably be disputed that, by refusing to obligate any of the funds in the Mitigation Fund to previously selected projects or to provide States with the opportunity to apply for new projects, the agency's mitigation responsibilities have been reduced from prior levels. That mitigation funding may be restored in the future does not negate the violation taking place now.

decrease funding for grant programs."[9] Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, § 503(d)(2), 138 Stat. 460, 615 (2024). Reprogramming funds includes "shifting funds within an appropriation or fund account to use them for purposes other than those contemplated at the time of appropriation." U.S. Gov't Accountability Off., GAO-05-734SP, A Glossary of Terms Used in the Federal Budget Process 85 (2005), https://www.gao.gov/assets/gao-05-734sp.pdf.

At the time of each BRIC appropriation, Congress contemplated that FEMA would (as it promised) dedicate these funds to the BRIC program (as evidenced by the agency's budget requests to Congress). To now redirect those funds to post-disaster relief grant programs as the Government apparently intends (and, indeed, has attempted) to do, would unlawfully shift funds within an appropriation to decrease funding for BRIC grants and increase funding for post-disaster relief grants. The termination accordingly

---

[9] The Stafford Act also appears to limit the discretion of the executive branch to redirect funds once they are allocated to the BRIC program. *See* 42 U.S.C. § 5133(f)(3). The Government disputes this point, arguing that another subsection authorizes it to shift funds to post-disaster relief grants. *See* § 5133(i)(3) (stating that any amount set aside from the DRF for the BRIC program "shall not reduce the amounts otherwise made available for" post-disaster relief grants). But to interpret that subsection as the Government proposes leads to a nonsensical result: It would prevent set-aside funds from *ever* being used for their nominal mitigation purposes because use of the funds for mitigation would necessarily always reduce the amounts available for post-disaster relief grants.

15

violates the Further Consolidated Appropriations Act 2024.

### 3. Withholding of Funds (Counts V, VI, IX, and X)

Third, the States argue that the termination of the BRIC program is unlawful because it has caused FEMA to withhold funds appropriated for BRIC grants. Here, too, the court finds in the States' favor.

The Stafford Act requires FEMA to provide each State with a certain minimum amount of mitigation funding for each fiscal year. The IIJA further requires FEMA to make $200 million available for each fiscal year between 2022 and 2026. Because FEMA ceased implementing the BRIC program, it has not provided the States with the minimum level of funding mandated by statute for fiscal years 2024 or 2025, nor has it made available the $200 million appropriated in the IIJA for these years.[10] Its actions are therefore unlawful.

#### a. *Remaining Claims*

Although the court recognizes the doubts about the legality of the appointment of Hamilton and Richardson in their vaguely defined governance roles, given its holding and its reluctance to issue what might

---

[10] The Government's deferral argument, even if not waived, is unavailing. The delay in providing States with these funds is intentional, not the result of some inevitable bureaucratic red tape.

fairly be thought to be an advisory opinion,[11] the court declines to address the merits of the States' Appointments Clause argument.

### III. Permanent Injunction

The States seek the entry of a permanent injunction enjoining the termination of the BRIC program (at least as currently structured). A plaintiff seeking a permanent injunction

> must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction.

*Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008), quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).

Here, the States have met their burden of showing irreparable harm for which monetary damages would provide inadequate compensation. The Stafford Act and IIJA entitle the States to a certain measure of funding for mitigation projects each fiscal year. The agency indisputably has not provided the States with that funding, and while the Government suggests that the States "could theoretically receive reimbursement for BRIC awards

---

[11] Hamilton and Richardson have both since resigned from the position of Senior Official Performing the Duties of FEMA Administrator. Karen Evans is now Senior Official Performing the Duties of FEMA Administrator.

if they prevail on their claims,"[12] Opp'n [Dkt # 116] at 40, monetary damages will not remedy hardships caused by the delay in accessing the funds. Some projects have expired while the BRIC program has remained terminated (which has also had the effect of rendering the relevant States and local governments ineligible for certain post-disaster relief grants), while others have lost access to secondary sources of funding or had stakeholders drop out in the face of uncertainty. These harms threaten the very existence of the States' projects and cannot be compensated with damages.

The States have also shown that the balance of hardship and public interest factors tilt in their favor. There is an inherent public interest in ensuring that the government follows the law, and the potential hardship accruing to the States in the absence of an injunction is great. The BRIC program is designed to protect against natural disasters and save lives. It need not be gainsaid that the imminence of disasters is not deterred by bureaucratic obstruction.

Any potential hardship to the Government, in contrast, is minimal. The States do not ask the court to compel the agency to award any specific

---

[12] The court entertains doubts that monetary relief will remain available absent an injunction. Nothing would prevent the agency from repurposing funds set aside for the BRIC program, as it previously attempted to do. And once any repurposed funds are spent elsewhere, they cannot be recovered for the BRIC program.

18

grants, nor do they ask the court to enjoin the agency from replacing the BRIC program in the future with a different mitigation program. Nor do they seek to prevent the Secretary of Homeland Security, as the overseeing executive of FEMA, from recommending to Congress that the BRIC program be abolished. The States' requested relief is to enjoin the cancellation of the BRIC program as it is currently constituted by an act of Congress.

In sum, this is not a case about judicial encroachment on the discretionary authority of the Executive Branch. This is a case about unlawful Executive encroachment on the prerogative of Congress to appropriate funds for a specific and compelling purpose, and no more than that.

## ORDER

For the forgoing reasons, the States' motion for summary judgment is <u>ALLOWED</u> and the Government's motion for summary judgment is <u>DENIED</u>. The Clerk shall enter judgment in the States' favor on Counts I-VI and IX-X.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE