UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STATE OF WASHINGTON, et al., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL EMERGENCY MANAGEMENT AGENCY, et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 1:25-cv-12006-RGS |

## MEMORANDUM IN SUPPORT OF PLAINTIFF STATES' MOTION TO ENFORCE THE COURT'S SUMMARY JUDGMENT ORDER

On December 11, 2025, the Court granted Plaintiff States'[1] Motion for Summary Judgment in this dispute over the unlawful termination of the Building Resilient Infrastructure and Communities (BRIC) program by the Federal Emergency Management Agency (FEMA). ECF Nos. 129-130. The Court permanently enjoined Defendants[2] from implementing the BRIC termination and ordered them to "promptly take all steps necessary to reverse the termination[.]" ECF No. 130 (Order) ¶ 3.

---

[1] Plaintiffs are the State of Washington; the Commonwealth of Massachusetts; the State of Arizona; the State of California; the State of Colorado; the State of Connecticut; the State of Delaware; the District of Columbia; the State of Illinois; Office of the Governor, *Ex. rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky; the State of Maine; the State of Maryland; the State of Michigan; the State of Minnesota; the State of New Jersey; the State of New Mexico; the State of New York; the State of North Carolina; the State of Oregon; Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania; the State of Rhode Island; the State of Vermont; and the State of Wisconsin, and their subdivisions and instrumentalities.

[2] "Defendants" are the Federal Emergency Management Agency (FEMA), Karen Evans in her official capacity as acting FEMA Administrator under the title "Senior Official Performing the Duties of the Administrator," the Department of Homeland Security (DHS), Kristi Noem in her official capacity as the Secretary of Homeland Security, and the United States.

Over two months have passed and Defendants have offered no indication to Plaintiff States, the public, FEMA's regional offices, or apparently even Defendants' own attorney that they have complied with the Order. Many of FEMA's regional offices seem to lack information about whether and when Defendants will resume the BRIC program, while others have indicated to Plaintiff States that Defendants are taking a "wait and see" approach. Despite Plaintiffs' inquiries, Defendants have not identified any concrete steps that they have taken to implement the Order, and instead merely represent that Defendants are "still in the process of connecting with leadership about how BRIC will operate and on what timelines." Declaration of Amy Laura Cahn (Cahn Decl.) Ex. 1.

FEMA's noncompliance only exacerbates the harms identified by the Court in issuing its permanent injunction: Defendants continue to perpetuate a substantial reduction in FEMA's mitigation responsibilities and deny Plaintiff States the ability to access funding to which they are statutorily entitled. The uncertainty and ongoing delay continue to "threaten the very existence of the States' projects", leaving state emergency management agencies and local municipalities scrambling to fill funding gaps and preserve contracts and partnerships, even as they respond to extreme weather events that further highlight the need for pre-disaster mitigation. ECF No. 129 at 18. And ultimately, Plaintiff States continue to face the loss of an urgently needed program "designed to protect against natural disasters and save lives." *Id.* at 17-18.

Plaintiff States ask the Court to enforce the Order by requiring Defendants to (1) communicate the reversal of the Hamilton Memo and the April 4 Press Release to all relevant stakeholders, (2) issue the long-overdue Notice of Funding Opportunity (NOFO) for Fiscal Year 2024 to make pre-disaster mitigation funds available as required by statute, (3) inform each Plaintiff State as to the status of all BRIC projects impacted by the BRIC termination and what

steps are required to move the projects forward, and (4) file status reports with this Court outlining any actions taken to comply with the Order and identifying when the Defendants intend to take the remaining steps required to comply with the Order.

## FACTUAL BACKGROUND

### I.    The BRIC Termination

FEMA's BRIC program provides "technical and financial assistance to States and local governments for cost-effective pre-disaster hazard mitigation measures that reduce injuries, loss of life, and damage and destruction of property." ECF No. 129 at 2 (citations omitted). BRIC "is the largest pre-disaster mitigation program offered through FEMA, and is funded by direct Congressional appropriations . . . and set asides from the Disaster Relief Fund (DRF)[.]" *Id.* at 2-3 (citing Infrastructure Investment and Jobs Act (IIJA), Pub. L. 117-58, 135 Stat. 429 (2021) and Stafford Act § 203(i), 42 U.S.C. § 5133(i)).

FEMA makes BRIC financial assistance available for a given fiscal year through a NOFO. ECF No. 129 at 3. Congress expressly directed FEMA to make at least $200 million available for BRIC grants each year for fiscal years 2022 through 2026, and to make a minimum portion of funds available to each eligible State. ECF No. 129 at 9 (citing IIJA, Pub. L. No. 117-58, 135 Stat. at 1387 and 42 U.S.C. § 5133(f)(2)). The BRIC NOFO for fiscal year (FY) 2024 was originally published on or about January 6, 2025, announcing a submission deadline of April 18, 2025 for BRIC applications. Cahn Decl. Ex. 2 at 2.

On April 2, 2025, Cameron Hamilton, the then-Senior Official Performing the Duties of the Administrator of FEMA, sent a memo to a subordinate directing the termination of the BRIC program (the Hamilton Memo). ECF No. 129 at 3; ECF No. 96 (Administrative Record) at 43-44. The Hamilton Memo directed that "FEMA: (1) 'will cancel the FY24 Notice of Funding

Opportunity (NOFO) for the BRIC grant program,' (2) 'will [n]ot award the BRIC projects selected but not yet awarded across all fiscal years,' and (3) 'will . . . [n]ot grant any additional period of performance extensions on any BRIC projects, without [Hamilton's] prior approval.'" ECF No. 129 at 4 (citing ECF No. 96 at 43-44).

Two days later, Defendants issued a press release (April 4 Press Release) in which they announced that "FEMA is ending the [BRIC] program." ECF No. 129 at 4 (quoting ECF No. 96 at 55). Defendants acknowledged that Congress had appropriated $1 billion toward the BRIC program through the IIJA but announced that they "will . . . immediately return[]" these funds, as well as any set aside funds not yet distributed, "either to the Disaster Relief Fund or the U.S. Treasury." ECF No. 96 at 55. Once they received the Hamilton Memo and the April 4 Press Release, FEMA Regional Administrators informed funding recipients that the BRIC program had been terminated. ECF No. 129 at 4.

FEMA carried out the termination of the BRIC program consistent with the steps outlined in the Hamilton Memo and April 4 Press Release. In April 2025, "FEMA reversed the set-aside of funds previously allocated to BRIC," ECF No. 129 at 5, requiring Plaintiff States to move for a preliminary injunction--which this Court granted--to prevent FEMA from spending these funds down on other programs. ECF No. 79. FEMA also removed the FY 2024 NOFO from its website and has since declined to issue a replacement FY 2024 NOFO or a FY 2025 NOFO, "effectively foreclosing States and local governments from submitting new grant proposals." ECF No. 129 at 5. And the agency ceased to obligate any "funding to projects previously identified for further review but not formally awarded" or take any steps to otherwise move BRIC projects forward that had not already commenced construction. *Id*.

## II.    The Court's Summary Judgment Order Is Unambiguous

On cross-motions for summary judgment, the Court found the BRIC termination to be an unlawful "substantial reduction of FEMA's mitigation responsibilities" under 6 U.S.C. § 316(c)(1). ECF No. 129 at 13-14. The Court further determined that FEMA had violated the Further Consolidated Appropriations Act 2024 by "unlawfully shift[ing] funds within an appropriation" from the BRIC set-aside to post-disaster relief grants. *Id.* at 15-16. Finally, the Court held that FEMA had unlawfully denied Plaintiff States funding mandated by the Stafford Act and the IIJA for fiscal years 2024 and 2025. *Id.* at 16.

The Court vacated and set aside the BRIC termination and permanently enjoined Defendants "from implementing, adopting, giving effect to, reissuing, or reinstating under a different name the Hamilton Memo . . . and the April 4 Press Release" or otherwise "terminat[ing], shut[ting] down, cancel[ling], freez[ing], suspend[ing], or paus[ing] the BRIC program with respect to plaintiffs without Congressional authorization and approval." ECF No. 130 ¶¶ 2-3. The Court further enjoined Defendants from any actions to reprogram or repurpose funds set aside or appropriated for the BRIC program for other purposes without Congressional authority and approval. *Id.* ¶ 3(d). The Court ordered Defendants to "promptly take all steps necessary to reverse the termination of the BRIC program," including "reversing any policies, memoranda, directives, or actions" and providing written notice of the Court's order "to all federal departments and agencies to which the Hamilton Memo or its directives . . . were communicated." *Id.* ¶¶ 3(c), (f). The Court also explicitly retained jurisdiction to enforce its Order. *Id.* ¶ 3(g).

In granting Plaintiff States' Motion for Summary Judgment, the Court found that Plaintiff States met their burden of showing irreparable harm, given FEMA's failure to provide funding to

which States are entitled, the impact of the BRIC termination on pending projects, and the long-term consequences of "bureaucratic obstruction" preventing Plaintiff States from accessing funds "designed to protect against natural disasters and save lives." ECF No. 129 at 17-18. Such harms persist to this day due to Defendants' non-compliance.

### III.    <u>Defendants Offer No Signs of Compliance with the Court's Order</u>

Despite the Court's directive to "promptly take all steps necessary to reverse the termination of the BRIC program," ECF No. 130 ¶ 3(c), nothing has changed. Since December 11, 2025, Defendants have communicated nothing to funding recipients, including Plaintiff States, or the public that indicates they have restarted administration of the BRIC program.

Defendants have taken no public-facing steps to revoke the termination. At no point has FEMA announced the reversal of the Hamilton Memo or the April 4 Press Release. Cahn Decl. ¶ 4. To date, FEMA has not reissued the FY 2024 NOFO, nor issued NOFOs for fiscal years 2025 or 2026. *See e.g.,* Cahn Decl. Ex. 5 at ¶ 5; Ex. 7 at ¶ 3. And OpenFEMA data confirms that the agency has awarded zero BRIC projects in the period of December 11, 2025 to February 9, 2026. Cahn Decl. Ex. 4 at ¶ 9. BRIC funds remain frozen and the reversal of the BRIC termination has not commenced.

Over the past two months, Plaintiff States have seen no signs that Defendants have reversed the BRIC termination. *See, e.g.,* Cahn Decl. Ex. 6 at ¶ 9. Projects that are ready to move forward remain stalled, and FEMA has been unable to provide any information or guidance. *See, e.g.,* Cahn Decl. Ex. 7 at Ex. A (FEMA regional office "[did] not have any updates to share" in response to request for update about seismic retrofit project for small, regional hospital that has been awaiting signature since April 2025 and is in danger of "serious issues" if design certification expires); *id.*, Ex. 21 at Ex. A (FEMA regional office "[had] no new information on the BRIC grant program" in

response to request for update about time-sensitive community safe room projects that have been stalled since February 2025).

State agencies uniformly report that FEMA has not communicated to Plaintiff States any efforts to move previously selected projects forward or to move projects from Phase I (planning) to Phase II (construction). Cahn Decl. Ex. 5 ¶¶ 4(a)-(b); Ex. 6 ¶¶ 4(a)-(b), 7(b); Ex. 7 ¶¶ 4(a)-(b); Ex. 8 ¶ 4(a); Ex. 9 ¶¶ 4(a)-(b); Ex. 10 ¶¶ 4(a)-(b); Ex. 11 ¶¶ 4(a)-(b); Ex. 12 ¶ 4(a); Ex. 13 ¶¶ 4(a)-(b); Ex. 14 ¶¶ 4(a)-(b); Ex. 15 ¶¶ 4(a)-(b); Ex. 16 ¶ 7(a); Ex. 17 ¶ 6(a); Ex. 18 ¶¶ 4(a)-(b); Ex. 19 ¶¶ 4(a)-(b); Ex. 20 ¶ 4(a); Ex. 21 ¶¶ 4(a)-(b); Ex. 22 ¶¶ 4(a)-(b); Ex. 23 ¶ 5; Ex. 24 ¶¶ 4(a)-(b). Often, moving projects forward necessitates requests for information (RFIs) from FEMA to funding recipients. Plaintiff States have seen no RFIs on selected or phased projects from FEMA in more than two months since the Court's order. Cahn Decl. Ex. 5 ¶ 4(e); Ex. 6 ¶ 7(e); Ex. 7 ¶ 4(e); Ex. 8 ¶ 4(c); Ex. 9 ¶ 4(e); Ex. 10 ¶ 4(e); Ex. 11 ¶ 4(e); Ex. 12 ¶ 4(c); Ex. 13 ¶ 4(f); Ex. 14 ¶ 4(e); Ex. 15 ¶ 5(e); Ex. 16 ¶ 4(d); Ex. 17 ¶ 6(a); Ex. 18 ¶ 4(d); Ex. 19 ¶ 4(d); Ex. 20 ¶ 4(d); Ex. 21 ¶ 4(e); Ex. 22 ¶ 4(e); Ex. 24 ¶ 5(e). FEMA has not finalized state management cost grant agreements, including for grants funding state agencies' oversight and management of ongoing, already-obligated BRIC projects that were not frozen. Cahn Decl. Ex. 5 ¶ 4(f); Ex. 6 ¶ 7(f); Ex. 7 ¶ 4(f); Ex. 8 ¶ 4(d); Ex. 9 ¶ 4(f); Ex. 10 ¶ 4(f); Ex. 12 ¶ 4(d); Ex. 13 ¶ 4(g); Ex. 14 ¶ 4(f); Ex. 15 ¶ 5(f); Ex. 17 ¶ 6(e); Ex. 18 ¶ 4(e); Ex. 19 ¶ 4(e); Ex. 21 ¶ 4(f); Ex. 24 ¶ 4(f). FEMA has further failed to resume offering non-financial Direct Technical Assistance to communities within Plaintiff States. Cahn Decl. Ex. 7 ¶ 4(g); Ex. 8 ¶ 4(e); Ex. 9 ¶ 4(g); Ex. 10 ¶ 4(g); Ex. 11 ¶ 4(f); Ex. 12 ¶ 4(e); Ex. 13 ¶ 4(h); Ex. 14 ¶ 4(g); Ex. 15 ¶ 5(g); Ex. 16 ¶ 4(e); Ex. 19 ¶ 4(f); Ex. 20 ¶ 4(e); Ex. 24 ¶ 4(g).

Since the Court's order, FEMA has also failed to resolve period of performance extension requests from Plaintiff States, meaning that deadlines for projects on hold since April 2025 have expired or will soon expire. *See e.g.,* Cahn Decl. Ex. 17 ¶ 6(c) (referencing pending period of performance extensions for projects expired on August 29 and December 17, 2025); Ex. 22 ¶ 4(d) (referencing a period of performance expired as of January 25, 2026, without any response from FEMA about a September period of performance extension request and with projects "now at a standstill and at risk of incompletion"); Ex. 16 ¶ 7(c) (referencing five pending period of performance extensions for existing BRIC projects). In one particularly egregious instance, FEMA itself reminded a state agency that a POP extension would expire on March 1, 2026, and asked the state agency to submit a request for extension if it needed additional time. Cahn Decl. Ex. 20 at Ex. D. When the state agency responded by attaching the POP extension request it had sent seven months earlier in July 2025 and requesting an update, the FEMA regional office responded that it "does not have any additional information or anticipated timelines." *Id.*

Plaintiff States have been unable to obtain any substantive information from FEMA about the BRIC program or move any of their frozen projects forward. Some regional offices have communicated to Plaintiff States that they are awaiting — but have not been given — guidance from FEMA headquarters on how to proceed. *See e.g.,* Cahn Decl. Ex. 5 ¶¶ 7-9; Ex. 15 ¶ 6; Ex. 17 ¶¶ 7-11; Ex. 20 ¶¶ 5-7; Ex. 21 ¶ 5. Other regional offices have expressed that they have no information to share. *See e.g.,* Cahn Decl. Ex. 13 ¶¶ 5-7; Ex. 14 ¶ 5; Ex. 6 ¶ 8; Ex. 18 ¶ 5; Ex. 7 ¶ 5; Ex. 19 ¶¶ 5-6.

Notably, certain FEMA regional offices have indicated that Defendants may have unilaterally granted itself an administrative stay of the Court's order. In one instance staff within FEMA Region 8 stated that they had no information to share because of "ongoing litigation." Cahn

Decl. Ex. 8 ¶ 5 & at Ex. A. In another example, the FEMA Region 1 Mitigation Acting Director told a Plaintiff State the regional office had "been requesting guidance about BRIC but received no such guidance and that the situation is 'wait and see.'" Cahn Decl. Ex. 12 ¶ 5. As a result, the regional office informed the Plaintiff State that the office could not respond to requests for technical assistance or process any closeouts due to a "litigation hold." *Id.* And yet a third office in FEMA Region 2 advised a Plaintiff State that it remains unable to provide technical assistance, move forward with environmental or historic preservation reviews, or respond to a request to adjust the scope of work for a Fiscal Year 2022 project because the office "cannot act on it at this time[.]" Cahn Decl. Ex. 17 ¶¶ 8-9 & at Exs. A-B. Each of these communications indicate that Defendants are acting in contravention of the clear terms of the Court's order.

## IV.    **Plaintiff States' Efforts to Seek Compliance Have Been Futile**

On January 15, 2026, Plaintiff States emailed Defendants' counsel to request a status update in an effort to avoid unnecessary motion practice. Cahn Decl. Ex. 1. Plaintiff States communicated to Defendants' counsel that "Plaintiff States are currently not aware of any efforts to reinstate the BRIC program[.]" *Id*. Plaintiff States requested any information regarding Defendants' efforts to comply with the Court's order by Friday, January 23rd. *Id.*

On January 23, 2026, Plaintiff States received an email from Defendants' counsel stating "[b]y way of update, I've reached out to FEMA but am still waiting to hear back. I'll keep you posted when any updates I receive." *Id.* On January 29, in response to an email from Defendants' counsel requesting more details about the information Plaintiff States were seeking, Plaintiff States stated an interest "in learning about any efforts by the Defendants to comply with the Court's order" and expressed particular concern about the following:

- There has been no public statement from the Defendants reversing the BRIC termination,

- The 2024 BRIC NOFO has not been reissued,
- The 2025 and 2026 BRIC NOFOs do not appear to have been contemplated,
- No BRIC projects that were selected but not obligated have been awarded, and
- No period of performance extensions have been awarded.

*Id.*

Plaintiff States requested that Defendants' counsel clarify if any of the above statements are inaccurate or "if there is some evidence of Defendants' compliance with the Court's order" about which Plaintiff States were unaware. *Id.*

On February 2, Defendants' counsel responded with an email stating that, having conferred with her clients, "DHS will comply with the Court's order, but is still in the process of connecting with leadership about how BRIC will operate and on what timelines." Defendant's counsel further stated that she did not have "specific details that I can share at this time." *Id.* Based on these representations, Plaintiff States are forced to conclude that Defendants have done nothing to comply with the Court's order. The fact that Defendants' "leadership" does not appear to have even formed a plan for complying with the Court's order in the more than two months since it was issued is unacceptable. It serves only as a covert means of continuing the unlawful BRIC termination, denying States the ability to access funds to which they are entitled, maintaining a FEMA reduced in its core functions, and killing these critical mitigation projects.

## **LEGAL STANDARD**

Courts may issue further orders to obtain "compliance with a court order[.]" *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). In the First Circuit, a party seeking such an order must show: (1) notice of the court order; (2) clarity and lack of ambiguity of the order; (3) the other party's ability to comply; and (4) violation of the order by the other party. *Letourneau v. Aul*, No. CV 14-421JJM, 2024 WL

1364340, at *2 (D.R.I. Apr. 1, 2024) (citing *Hawkins v. Dep't of Health & Hum. Servs.*, 665 F.3d 25, 31 (1st Cir. 2012)).

"[T]he 'clear and unambiguous' standard applies to the *language* of the relevant court order, not to its effectiveness." *Cashman Dredging & Marine Contracting Co., LLC v. Belesimo*, No. CV 21-11398-DJC, 2022 WL 3227535, at *4 (D. Mass. May 17, 2022) (emphasis in original) (quoting *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002)). When evaluating whether a court order is "clear and unambiguous," the question is "not whether the order is clearly worded as a general matter." *Saccoccia*, 433 F.3d at 28. Instead, the "clear and unambiguous" prong "requires that the words of the court's order have clearly and unambiguously forbidden the precise conduct" giving rise to the need for enforcement. *Id.* (emphasis omitted) (citing *Perez v. Danbury Hosp.*, 347 F.3d 419, 424 (2d Cir. 2003)).

## ARGUMENT

The Court's order must be enforced. There can be no dispute that Defendants had notice of the Order, the Order was clear and unambiguous, Defendants have violated and continue to violate the Order, and, yet, Defendants had and continue to have the ability to comply with the Order. This Court enjoined Defendants from terminating the BRIC program and Defendants cannot be allowed to flout the Court's authority in this manner.

## I.    Defendants Have Given No Indication That They Have Taken Any Steps to Comply with the Order Despite Their Ability to Do So

The language of the Court's order plainly and ambiguously vacated and set aside the BRIC termination and permanently enjoined Defendants from implementing the Hamilton Memo and the April 4 Press Release or otherwise "terminat[ing], shut[ting] down, cancel[ling], freez[ing], suspend[ing], or paus[ing] the BRIC program with respect to plaintiffs without Congressional authorization and approval." ECF No. 130 ¶¶ 2- 3. The Court was similarly clear in its directive

that Defendants "*promptly* take all steps necessary to reverse the termination of the BRIC program," *id.* ¶ 3(c) (emphasis added), including "reversing any policies, memoranda, directives, or actions issued before this Order," *id.*, and providing written notice of the Court's order "to all federal departments and agencies to which the Hamilton Memo or its directives . . . were communicated." *Id.* ¶ 3(f).

Defendants are in violation of the Court's order. The Order enjoined Defendants from "implementing, adopting, giving effect to, reissuing, or reinstating under a different name the Hamilton Memo." ECF No. 130 ¶ 3(a). The core components of the Hamilton Memo were to (1) "[n]ot award the BRIC projects selected but not yet awarded," (2) "[n]ot grant any additional period of performance extensions on any BRIC projects," and (3) cancel the FY 2024 NOFO. ECF No. 96 at 43-44. Each of these core elements of the BRIC termination remains unchanged despite the Court's order. No BRIC projects have been awarded. *See e.g.,* Cahn Decl. Ex. 4 ¶ 9; Ex. 5 ¶ 4(c); Ex. 6 ¶ 7(c); Ex. 7 ¶ 4(c). No period of performance extensions on BRIC projects have been granted. *See e.g.,* Cahn Decl. Ex. 11 ¶ 4(d); Ex. 16 ¶ 7(c); Ex. 17 ¶ 6(c); Ex. 20 ¶¶ 4(c), 8; Ex. 22 ¶ 4(d). No FY 2024 NOFO has been reissued. *See e.g.,* Cahn Decl. Ex. 5 at ¶ 5; Ex. 7 at ¶ 3. The BRIC program remains terminated despite this Court's order to the contrary.

As stated above, Defendants also have taken no public-facing steps to revoke the termination. Plaintiff States themselves have seen no signs that Defendants have reversed the BRIC termination, despite attempts by state agencies to engage FEMA regional offices on issues related to both specific projects and the state of the program as a whole. *See e.g.,* Cahn Decl. Ex. 6 ¶ 9; Ex. 8 ¶ 5; Ex. 12 ¶ 5; Ex. 16 ¶ 7(c); Ex. 17 ¶ 6-11. Responses from FEMA regional offices to inquiries from Plaintiff States are, at best, devoid of information. *See e.g.,* Cahn Decl. Ex. 13 ¶¶ 5-7; Ex. 14 ¶ 5; Ex. 6 ¶ 8; Ex. 18 ¶ 5; Ex. 7 ¶ 5; Ex. 15 ¶ 6; Ex. 19 ¶¶ 5-6. At worst, messages from

FEMA regional offices indicate Defendants' "wait and see" approach to compliance with the Court's order—seemingly granting themselves an administrative stay. *See, e.g.,* Cahn Decl. Ex. 12, ¶ 5(b).

Defendants are able to comply with the Court's order. The BRIC program is funded through set-asides and appropriations, both "no-year" funding that will remain available until it is expended. *See, e.g.,* IIJA, Pub. L. 117-58, 135 Stat. 429, 1387 (2021) (identifying that IIJA funds appropriated for BRIC shall "remain available until expended"); Further Consolidated Appropriations Act 2024, Public Law 118-47, 138 Stat. 460, 608-09 (2024) (specifying funds in the Disaster Relief Fund "remain available until expended").[3] As per the most recent FEMA Monthly Report dated February 3, 2026, the Predisaster Mitigation Balance in the Disaster Relief Fund currently totals $5.082 billion dollars, which includes $417 million and $276 million set aside for federal fiscal years 2024 and 2025, respectively, and $200 million appropriated under the IIJA for each of fiscal years 2024, 2025, and 2026. Cahn Decl. Ex. 3 at 18. As the Court has made clear, States are entitled to this funding and it cannot be reprogrammed for other purposes or programs. ECF No. 129 at 13-16. The 2024 NOFO had already been finalized and published before it was rescinded as a result of the BRIC termination and could be reissued with minimal effort. *See* Cahn Decl. Ex. 2.

During the parties' attempts to meet and confer, Defendants did not offer any explanation for their noncompliance with the Order. Cahn Decl. Ex. 1. Several FEMA regional offices as well

---

[3] FEMA's BRIC program is not affected by a lapse in DHS appropriations due to the nature of its funding sources. As outlined in DHS's 2025 Procedures Relating to a Lapse in Appropriations, the department identified "Disaster Relief Fund activities" as among "the significant agency activities that [would] continue during a lapse" in appropriations. Cahn Decl., Ex. 25 at 4. Functions "covered by . . . multi-year, no-year . . appropriations [with] sufficient carry-over balance" are exempt from the work restrictions specified in the Anti-Deficiency Act (ADA), 31 U.S.C. § 1341 *et seq*., and may continue during a lapse in appropriations. *Id.* at 5-6 (citing the Disaster Relief Fund as an example of an exempt function). The document also notes that, as of September 2025, an estimated 20,975 out of approximately 24,925 FEMA employees would be exempt or excepted from a funding hiatus "and estimated to be retained during a lapse in appropriations." *Id.* at 46.

as Defendants' counsel have indicated that FEMA headquarters or "leadership" remains the barrier to restarting the program. Cahn Decl. Ex. 1; Ex. 5 ¶ 9; Ex. 17 ¶¶ 8-9. Agency leadership must comply with the Court's order. Defendants are fully capable of doing so but have chosen not to do so.

## II.    <u>The Court's Order Must Be Enforced</u>

This Court must enforce its Order. Courts inherently "have the power to enforce their judgments." *Fafel v. Dipaola*, 399 F.3d 403, 411 (1st Cir. 2005). As discussed *supra*, Defendants appear to have made no effort whatsoever to comply with the Order. It is "axiomatic that a final judgment is binding on the parties[.]" *Hosp. San Antonio, Inc. v. Oquendo-Lorenzo*, 47 F.4th 1, 9 (1st Cir. 2022). Defendants appear to have treated the Order as an advisory opinion that they can at best comply with at their leisure and at worst ignore entirely. This cannot continue.

Enforcement is necessary here. Recently, District Courts in the First Circuit have repeatedly granted motions to enforce court orders where FEMA (and other federal agencies) have failed to comply. *See, e.g.,* Order, *State of Illinois et al. v. Federal Emergency Management Agency, et al.*, No. 1:25-cv-00506-WES-PAS, ECF No. 75 (D. R.I. Oct. 14, 2025) (granting motion to enforce where "Defendants have done precisely what the Memorandum and Order forbids"); Memorandum and Order, *State of New York et al. v. Trump et al.*, No. 1:25-cv-00039, ECF No. 175 (D. R.I. April 4, 2025) (granting motion to enforce preliminary injunction); Order, *State of New York et al. v. Trump et al.*, No. 1:25-cv-00039, ECF No. 96 (D. R.I. Feb. 10, 2025) (granting motion to enforce order on temporary restraining order).

Plaintiff States are entitled to the complete relief ordered by the Court. "[E]quity has jurisdiction to afford complete relief," as "one of the basic functions of equity is to prevent a multiplicity of actions." *Angoff v. Goldfine*, 270 F.2d 185, 190–91 (1st Cir. 1959). The Court has

vacated and set aside the BRIC termination as unlawful, meaning that it "is treated as a nullity" and reverts to the "preexisting state of affairs." *Matson Navigation Co. v. Dep't of Transp.*, 770 F. Supp. 3d 44, 67-68 (D.D.C. 2025). Defendants must therefore resume operating the BRIC program as if the Hamilton Memo or any of its associated directives were never issued. *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 85 (D.D.C. 2007) ("[T]he effect of the vacatur ... is to take the rule off the books and reinstate the prior regulatory regime.") (emphasis removed).

Plaintiff States ask that this Court enforce its Order. Defendants were enjoined from implementing the Hamilton Memo and ordered to "promptly take all steps necessary to reverse the termination of the BRIC program, including reversing any policies, memoranda, directives, or actions[.]" ECF No. 130 § 3(a), (c). The Hamilton Memo included the direction to "cancel the FY24 Notice of Funding Opportunity (NOFO) for the BRIC grant program." ECF No. 129 at 4 (citing ECF No. 96 at 43-44). Although it is currently federal FY 2026 and the FY 2024 NOFO is now over a year late, Defendants have not reversed this action or any other parts of the Hamilton Memo or the April 4 Press Release. See Cahn Decl. ¶ 4; Ex. 3 at 18 (identifying February 20, 2024 as the most recent BRIC NOFO application deadline). This Court should therefore order Defendants to (1) communicate the reversal of the Hamilton Memo and the April 4 Press Release to all relevant stakeholders, and (2) promptly issue a NOFO for Fiscal Year 2024 to make pre-disaster mitigation funds available as required by statute. IIJA, Pub. L. No. 117-58, 135 Stat. 429, 1387 (2021) (providing that "in addition to any amounts set aside pursuant to . . . 42 U.S.C. § 5133 . . . $200,000,000 . . . *shall* be made available" for each of fiscal years 2022, 2023, 2024, 2025, and 2026 (emphasis added)); 42 U.S.C. § 5133(f). This remedy is within the Court's power. *Cf. Washington v. U.S. Dep't of Hous.*, No. 1:25-CV-00626-MSM-AEM, 2025 WL 3721053, at *1, ¶¶ 5-6 (D.R.I. Dec. 23, 2025) (preliminarily enjoining government "from giving effect to any

existing or forthcoming agency action to further rescind or replace the FY24-25 NOFO" for Continuum of Care program and ordering government to "preserve the status quo ante that existed under the FY24-25 NOFO, including by taking all steps necessary to process eligible renewals for… funding pursuant to the FY24-25 NOFO").

Defendants should also be ordered to file status reports with this Court outlining any actions taken to comply with the Order, including by describing any efforts to disseminate the Order as required by ¶ 3(f), and any efforts to reverse the Hamilton Memo's directives as required by ¶¶ 3(a)-(c). Defendants should also be ordered to identify the current balances for appropriated and set aside BRIC funds in the DRF and the amount of funds currently apportioned by the Office of Management and Budget to DHS or FEMA for the DRF and the BRIC program to demonstrate compliance with ¶ 3(d) of the Order. Defendants should inform Plaintiff States as to the status of all BRIC projects impacted by the BRIC termination and what steps are required to move the projects forward. Defendants should also be ordered to file a status report with this Court identifying any remaining steps required to comply with the Order, including identifying when Defendants intend to (1) issue the BRIC NOFOs for Fiscal Years 2025 and 2026, (2) resolve pending period of performance extensions for BRIC projects, and (3) finalize pending state management cost grant agreements. This, too, is within the Court's power. *See, e.g., Child Trends, Inc. v. United States Dep't of Educ.*, 795 F. Supp. 3d 700, 732 (D. Md. 2025) (ordering status report "advising of Defendants' plans" for fulfilling statutory obligations, including "a detailed, specific timetable of steps Defendants will take to meet their obligations"); *Washington*, 2025 WL 3721053, at *1, ¶¶ 8-9 (ordering government to "file a report that sets forth any steps necessary to process eligible renewals for… funding under the FY2024-2025 NOFO and Defendants' expected

timeline" and "inform recipients of any steps they must take in order for eligible renewals to be processed").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff States respectfully request that this Court enter the

Proposed Order attached to the accompanying motion as Exhibit 1.

DATED this 17th day of February 2026.


Respectfully submitted,

Plaintiffs

**ANDREA JOY CAMPBELL**
Attorney General
Commonwealth of Massachusetts

*/s/ Amy Laura Cahn*
HANNAH C. VAIL, BBO No. 698577
JAK KUNDL, BBO No. 713951
Assistant Attorneys General
AMY LAURA CAHN, BBO No. 716706
Special Assistant Attorney General
Massachusetts Office of the Attorney
General
One Ashburton Place
Boston, MA 02108
617-963-2512
hannah.vail@mass.gov
jak.kundl@mass.gov
amy.laura.cahn@mass.gov
*Attorneys for Plaintiff Commonwealth of
Massachusetts*

**NICHOLAS W. BROWN**
Attorney General
State of Washington

*/s/ Jennifer K. Chung*
TYLER ROBERTS*
JENNIFER K. CHUNG*
NIYA TAWACHI*
ANDREW R.W. HUGHES*
MOLLY POWELL**
Assistant Attorneys General
CRISTINA SEPE*
Deputy Solicitor General
Washington Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744
tyler.roberts@atg.wa.gov
jennifer.chung@atg.wa.gov
niya.tawachi@atg.wa.gov
andrew.hughes@atg.wa.gov
cristina.sepe@atg.wa.gov
*Attorneys for Plaintiff State of Washington*

**KRISTIN K. MAYES**
Attorney General
State of Arizona

*/s/ Lauren Watford*
LAUREN WATFORD*
Assistant Attorney General
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, Arizona 85004
602-542-3333
Lauren.Watford@azag.gov
*Attorneys for the State of Arizona*

**ROB BONTA**
Attorney General
State of California

*/s/ David Green*
R. MATTHEW WISE*
Supervising Deputy Attorney General
DAVID GREEN*
CHRISTOPHER KISSEL*
HARALD H. KIRN*
Deputy Attorneys General
California Office of the Attorney General
1300 I Street
Sacramento, CA 95814
916-445-9555
matthew.wise@doj.ca.gov
david.green@doj.ca.gov
christopher.kissel@doj.ca.gov
harold.kirn@doj.ca.gov
*Attorneys for Plaintiff State of California*

**PHILIP J. WEISER**
Attorney General
State of Colorado

*/s/ Finnuala Tessier*
FINNUALA TESSIER*
SAMUEL WOLTER*
Assistant Attorneys General
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
720-508-6000
finnuala.tessier@coag.gov
samuel.wolter@coag.gov
*Attorneys for Plaintiff State of Colorado*

**WILLIAM TONG**
Attorney General
State of Connecticut

*/s/ Ashley Meskill*
ASHLEY MESKILL*
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Ave
Hartford, CT 06106
860-808-5270
ashley.meskill@ct.gov
*Attorneys for Plaintiff State of Connecticut*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

*/s/ Vanessa L. Kassab*
IAN R. LISTON*
Director of Impact Litigation
VANESSA L. KASSAB*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

*/s/ Andrew C. Mendrala*
ANDREW C. MENDRALA*
Assistant Attorney General
Public Advocacy Division

Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
302-683-8899
vanessa.kassab@delaware.gov
*Attorneys for Plaintiff State of Delaware*

**KWAME RAOUL**
Attorney General
State of Illinois

*/s/ Aleeza M. Strubel*
ALEEZA M. STRUBEL*
Complex Litigation Counsel
SARAH J. GALLO*
Ethics Unit Supervisor
Illinois Office of the Attorney General
115 S. LaSalle Street
Chicago, IL 60604
773-914-3046
aleeza.strubel@ilag.gov
sarah.gallo@ilag.gov
*Attorneys for Plaintiff State of Illinois*

**AARON M. FREY**
Attorney General
State of Maine

*/s/ Reid Hayton-Hull*
REID HAYTON-HULL*
Assistant Attorney General
Maine Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
207-626-8800
reid.hayton-hull@maine.gov
*Attorneys for the State of Maine*

**DANA NESSEL**
Attorney General
State of Michigan

Office of the Attorney General for the
 District of Columbia
400 Sixth Street, NW
Washington, D.C. 20001
202-724-9726
andrew.mendrala@dc.gov
*Attorneys for the District of Columbia*

**OFFICE OF THE GOVERNER**
Andy Beshear, in his official capacity as
Governor of the Commonwealth of Kentucky

*/s/ S. Travis Mayo*
S. TRAVIS MAYO*
General Counsel
TAYLOR PAYNE*
Chief Deputy General Counsel
LAURA C. TIPTON*
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
502-564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
*Attorneys for the Office of the Governor of
Kentucky*

**ANTHONY G. BROWN**
Attorney General
State of Maryland

*/s/ Robert N. Brewer*
ROBERT N. BREWER*
Assistant Attorney General
Maryland Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
410-576-6924
rbrewer@oag.state.md.us
*Attorneys for Plaintiff State of Maryland*

**KEITH ELLISON**
Attorney General
State of Minnesota

*/s/ Neil Giovanatti*
NEIL GIOVANATTI*
ADAM DE BEAR*
Assistant Attorneys General
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
517-335-7603
giovanattin@michigan.gov
deaeara@michigan.gov
*Attorneys for Plaintiff State of Michigan*

**JENNIFER L. DAVENPORT**
Attorney General
State of New Jersey

*/s/ Phoenix N. Meyers*
PHOENIX N. MEYERS*
Deputy Attorney General
New Jersey Office of the Attorney General
25 Market Street
Trenton, NJ 08625
609-696-5289
phoenix.meyers@law.njoag.gov
*Attorneys for Plaintiff State of New Jersey*

**LETITIA JAMES**
Attorney General
State of New York

*/s/ Colleen K. Faherty*
COLLEEN K. FAHERTY*
Special Trial Counsel
New York Office of the Attorney General
28 Liberty Street
New York, NY 10005
212-416-6046
Colleen.Faherty@ag.ny.gov
*Attorneys for Plaintiff State of New York*

**DAN RAYFIELD**
Attorney General

*/s/ Cat Rios-Keating*
CAT RIOS-KEATING*
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-7302
catherine.rios-keating@ag.state.mn.us
*Attorneys for Plaintiff State of Minnesota*

**RAÚL TORREZ**
Attorney General
State of New Mexico

*/s/ Mark Noferi*
MARK NOFERI*
Senior Litigation Counsel
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501
505-490-4060
mnoferi@nmdoj.gov
*Attorneys for the State of New Mexico*

**JEFF JACKSON**
Attorney General

LAURA HOWARD
Chief Deputy Attorney General
State of North Carolina

*/s/ Daniel T. Wilkes*
DANIEL T. WILKES*
Assistant Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncodoj.gov
*Attorneys for Plaintiff State of North Carolina*

**JOSH SHAPIRO**

State of Oregon

*/s/ Scott P. Kennedy*
SCOTT P. KENNEDY*
BRIAN S. MARSHALL*
Senior Assistants Attorney General
Oregon Office of the Attorney General
1162 Court Street NE
Salem, OR 97301
971-453-9050
scott.kennedy@doj.oregon.gov
brian.s.marshall@doj.oregon.gov
*Attorneys for Plaintiff State of Oregon*

in his official capacity as Governor of the
Commonwealth of Pennsylvania

JENNIFER SELBER
General Counsel

*/s/ Jacob B. Boyer*
JACOB B. BOYER*
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
717-460-6786
jacobboyer@pa.gov
*Attorneys for Governor Josh Shapiro*

**PETER F. NERONHA**
Attorney General
State of Rhode Island

*/s/ Nicholas M. Vaz*
Nicholas M. Vaz, Esq. (BBO 693629)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
401-274-4400
NVaz@riag.ri.gov
*Attorneys for Plaintiff State of Rhode Island*

**CHARITY R. CLARK**
Attorney General
State of Vermont

*/s/ Ryan P. Kane*
RYAN P. KANE*
Deputy Solicitor General
Vermont Office of the Attorney General
109 State Street
Montpelier, VT 05609
802-828-2153
ryan.kane@vermont.gov
*Attorneys for Plaintiff State of Vermont*

**JOSHUA L. KAUL**
Attorney General
State of Wisconsin

*/s/ Lynn K. Lodahl*
LYNN K. LODAHL*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
608-264-6219
lynn.lodahl@wisdoj.gov
*Attorneys for Plaintiff State of Wisconsin*

*\*admitted pro hac vice*

 **\*\****pro hac vice application pending or forthcoming*

**CERTIFICATE OF SERVICE**

I certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

_/s/ Amy Laura Cahn_
Amy Laura Cahn