# Exhibit 6

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STATE OF WASHINGTON, et al.,

Plaintiff,

v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY, et al.,

Defendants.

CIVIL ACTION
NO. 1:25-cv-12006-RGS

**DECLARATION OF SIMON VAN LEEUWEN
IN SUPPORT OF MOTION TO ENFORCE**

I, Simon van Leeuwen, pursuant to 28 U.S.C. § 1746, hereby declare:

1.      I am over the age of eighteen and understand the obligations of an oath.

2.      I am the Assistant Director for Mitigation and Recovery at the Massachusetts
Emergency Management Agency ("MEMA"). In this role I am responsible for the state
administration of the Federal Emergency Management Agency ("FEMA") Hazard Mitigation
Assistance ("HMA") programs for Massachusetts communities. As the state administrator, we
receive and are accountable for the federal funds and we advise, monitor, and reimburse the
subrecipients/subapplicants (communities). I have held this role since 2022. I make this declaration
based on my personal knowledge, on information I acquired through the performance of my duties
at MEMA, and on my review of records maintained in the ordinary course of business by MEMA.

3.      MEMA is a Massachusetts state agency.  MEMA coordinates the Commonwealth's
disaster mitigation, preparedness, response, and recovery programs.  As the primary grantee of
many FEMA program funds in Massachusetts, MEMA administers a wide range of federal

1

programs meant to assist states and localities in mitigating against, preparing for, responding to, and recovering from catastrophic human-caused and natural disasters.

4.     On January 6, 2025, the U.S. Department of Homeland Security ("DHS") issued the Fiscal Year 2024 Building Resilient Infrastructure and Communities Notice of Funding Opportunity ("2024 BRIC NOFO").  A true and accurate copy of the 2024 BRIC NOFO is attached as **<u>Exhibit A</u>**.

5.     FEMA cancelled the 2024 BRIC NOFO in April 2025, just a few days before the application deadline.  MEMA had prepared a detailed application for the 2024 BRIC NOFO that encompassed 53 projects (10 competitive and 43 state set-aside/allocated).  The cancellation denied MEMA the opportunity to submit these projects for consideration and many of these projects have now stalled.

6.     FEMA has not re-issued a Notice of Funding Opportunity ("NOFO") for the BRIC program for Fiscal Year 2024.  FEMA also has not issued a NOFO for the BRIC program for Fiscal Years 2025 or 2026.

7.     Between December 11, 2025 and February 4, 2026, FEMA has not:

   a.  Provided any new information regarding the status of BRIC projects in Massachusetts that were selected but not obligated;

   b.  Moved any phased BRIC project in Massachusetts from Phase I (planning) to Phase II (construction);

   c.  Obligated any new funds for BRIC projects in Massachusetts, including by executing new contracts;

   d.  Acted on Massachusetts' pending requests for period of performance extensions for existing BRIC projects;

e. Sent any requests for information to Massachusetts regarding selected, phased, or otherwise pending projects; or

f. Finalized pending state management cost grant agreements for already-obligated projects.

8. MEMA has repeatedly reached out to FEMA requesting information about the status of Massachusetts' BRIC projects, but FEMA has failed to provide any guidance.

9. I have not observed any efforts by FEMA to reverse the BRIC termination since December 11, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 4th__ day of February, 2026, in Framingham, Massachusetts

_____
Simon van Leeuwen
Assistant Director for Mitigation and Recovery
Massachusetts Emergency Management Agency

3

# Exhibit A

**The U. S. Department of Homeland Security (DHS)**
**Notice of Funding Opportunity (NOFO)**
**Fiscal Year 2024 Building Resilient Infrastructure and Communities (BRIC)**

| SUMMARY OVERVIEW OF KEY INFORMATION<br><br>**FEDERAL EMERGENCY MANAGEMENT AGENCY (FEMA) BUILDING RESILIENT INFRASTRUCTURE AND COMMUNITIES (BRIC)** | |
|---|---|
| **Program Overview** | The Building Resilient Infrastructure and Communities (BRIC) grant program makes federal funds available for hazard mitigation activities. It does so with a recognition of the growing hazards associated with climate change and of the need for natural hazard risk mitigation activities that promote climate adaptation and resilience with respect to those hazards. These include both acute extreme weather events and chronic stressors which have been observed and are expected to increase in intensity and frequency in the future. |
| **Goals and Objectives** | • Increase climate literacy among the emergency management community, including awareness of natural hazard risks and knowledge of best practices for hazard mitigation and climate adaptation.<br>• Increase awareness of stakeholders and partners with capabilities to support hazard mitigation.<br>• More innovative risk-informed hazard mitigation projects are developed and completed, including multi-hazard resilience or nature-based solutions.<br>• Communities identify and mitigate their risks to natural hazards and climate change.<br>• FEMA directs increased resources to eliminate disparities in equitable outcomes across disadvantaged communities. |
| **Eligible Projects** | • Capability and Capacity Building activities – activities that enhance the knowledge, skills, and expertise of the current workforce to expand or improve the administration of hazard mitigation assistance. This includes activities in the following sub-categories: building codes, partnerships, project scoping, hazard mitigation planning and planning-related activities, and other activities.<br>• Hazard Mitigation Projects – cost-effective projects designed to increase resilience and public safety; reduce injuries and loss of life; and reduce damage and destruction to property, critical services, facilities, and infrastructure (including natural systems) from a multitude of natural hazards, including drought, wildfire, earthquakes, extreme heat, and the effects of climate change.<br>• Management Costs – financial assistance to reimburse the recipient and subrecipient for eligible and reasonable indirect costs, direct administrative costs, and other administrative |

| | |
|---|---|
| | expenses associated with a specific hazard mitigation measure or project. |
| **Deadlines** | NOFO Availability Window Start Date: 01/06/2025<br>Applicant Eligibility Period Start Date: 01/06/2025<br>Application Submission Deadline: 04/18/2025 |
| **Funding Amount** | Available Funding for the NOFO:                                    $ 750,000,000<br><br>• State/Territory Allocation Subtotal:               $ 112,000,000<br>• Tribal Set-Aside Subtotal:                              $ 50,000,000<br>• State/Territory Building Code Plus-Up Subtotal: $ 112,000,000<br>• Tribal Building Code Plus-Up Subtotal:          $ 25,000,000<br>• National Competition Subtotal:                      $ 451,000,000 |
| **Eligible Applicants** | • States<br>• District of Columbia<br>• U.S. territories<br>• Federally recognized Tribal nations |
| **Cost Share** | The cost share for the BRIC program is 75% federal and 25% non-federal.<br><br>Cost share for the BRIC program is adjusted to 90% federal and 10% non-federal for the following:<br>• Projects and Capability and Capacity Building activities located within or primarily benefitting Community Disaster Resilience Zones<br>• Economically Disadvantaged Rural Communities<br><br>For insular areas, including American Samoa, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands, FEMA automatically waives the non-federal cost share for the recipient when the non-federal cost share for the entire award is under $200,000. If the non-federal cost share for the entire award is $200,000 or greater, FEMA may waive all or part of the non-federal cost share at the request of the recipient. |
| **Build America, Buy America Act** | All applicable BRIC subapplications must comply with the Build America, Buy America Act (BABAA).  Please go to "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure \| FEMA.gov for more information. |

**All entities wishing to do business with the federal government must have a unique entity identifier (UEI). The UEI number is issued by the system. Requesting a UEI using System for Award Management (SAM.gov) can be found at:** https://sam.gov/content/entity-registration.

**Updates in Grant Application Forms:**

The Data Universal Numbering System (DUNS) Number was replaced by a new, non-

proprietary identifier requested in, and assigned by SAM.gov. This new identifier is the Unique Entity Identifier.

Additional Information can be found on Grants.gov: https://www.grants.gov/forms/forms-development/planned-uei-updates

Table of Contents
Updates in Grant Application Forms: ............................................................................ 2
A.  Program Description........................................................................................................ 7
    1.  Issued By................................................................................................................ 7
    2.  Assistance Listings Number .................................................................................. 7
    3.  Assistance Listings Title ....................................................................................... 7
    4.  Funding Opportunity Title ..................................................................................... 7
    5.  Funding Opportunity Number................................................................................ 7
    6.  Authorizing Authority for Program ....................................................................... 7
    7.  Appropriation Authority for Program .................................................................... 7
    8.  Announcement Type ............................................................................................... 7
    9.  Program Category ................................................................................................... 7
    10. Program Overview, Objectives, and Priorities ..................................................... 7
    11. Performance Measures ......................................................................................... 11
B.  Federal Award Information ............................................................................................ 12
    1.  Available Funding for the NOFO: $750,000,000.00 ........................................... 12
    2.  Period of Performance: 36 months ...................................................................... 14
    3.  Projected Period of Performance Start Date(s): Will vary by award.................... 14
    4.  Projected Period of Performance End Date(s): 36 months from date of the award unless otherwise specified by FEMA ........................................................................................ 14
    5.  Funding Instrument Type:  Grant ........................................................................ 14
C.  Eligibility Information................................................................................................... 15
    1.  Eligible Applicants............................................................................................... 15
    2.  Applicant Eligibility Criteria ............................................................................... 15
    3.  Subawards and Beneficiaries ............................................................................... 15
        a. Subaward Allowability.................................................................................... 15
        b. Subrecipient Eligibility .................................................................................. 16
        c. Beneficiaries or Participants ........................................................................... 16
    4.  Other Eligibility Criteria/Restrictions ................................................................. 17
        a. *Phased Projects* ........................................................................................... 17
        b. *Environmentally Friendly Measures* ........................................................... 20
        c. *Identifying as a Disadvantaged Community* ................................................ 21
        d. *Additional Criteria* ...................................................................................... 22
    5.  Cost Share or Match............................................................................................. 24
        a. General ............................................................................................................ 24
        b. Economically Disadvantaged Rural Communities.......................................... 25
        c. Community Disaster Resilience Zones ............................................................ 26
        d. Insular Areas ................................................................................................... 27
D.  Application and Submission Information....................................................................... 27
    1.  Key Dates and Times ............................................................................................ 27
        a. *Application Start Date:*  01/06/2025 ............................................................ 27

b. *Application Submission Deadline:* 04/18/2025 at 03:00 PM ET .............................. 27
c. Other Key Dates ................................................................................................ 28
2. Agreeing to Terms and Conditions of the Award ........................................................ 29
3. Address to Request Application Package .................................................................... 29
4. Requirements: Obtain a Unique Entity Identifier (UEI) and Register in the System for Award Management (SAM.gov) ............................................................ 29
5. Steps Required to Obtain a Unique Entity Identifier, Register in the System for Award Management (SAM), and Submit an Application ................................................ 29
6. Electronic Delivery ................................................................................................ 30
7. How to Register to Apply ........................................................................................ 31
   a. General Instructions: ............................................................................................ 31
   b. Obtain an UEI Number: ........................................................................................ 31
   c. Obtain Employer Identification Number .................................................................. 31
   d. Create a login.gov account: .................................................................................. 31
   e. Register with SAM: .............................................................................................. 31
   f. Register in FEMA GO, Add the Organization to the System, and Establish the AOR: 32
8. Submitting the Final Application .............................................................................. 33
9. Timely Receipt Requirements and Proof of Timely Submission .................................. 33
10. Content and Form of Application Submission ............................................................ 33
    a. Standard Required Application Forms and Information ............................................. 33
    b. Program-Specific Required Forms and Information .................................................. 34
11. Other Submission Requirements .............................................................................. 35
    a. Benefit-Cost Analysis (BCA) for Hazard Mitigation Projects .................................... 35
    b. Go/No-Go Milestones .......................................................................................... 35
    c. National Environmental Policy Act Requirements for Hazard Mitigation Projects . 35
    d. Acquisition Project Requirements .......................................................................... 35
12. Intergovernmental Review ..................................................................................... 36
13. Funding Restrictions and Allowable Costs ................................................................ 36
    a. Prohibitions on Expending FEMA Award Funds for Covered Telecommunications Equipment or Services ............................................................ 36
    b. Pre-Award Costs .................................................................................................. 38
    c. Management Costs ................................................................................................ 38
E. Application Review Information ................................................................................. 39
   1. Application Evaluation Criteria ................................................................................ 39
      a. Programmatic Criteria .......................................................................................... 39
      b. Financial Integrity Criteria .................................................................................... 46
      c. Supplemental Financial Integrity Criteria and Review ............................................. 47
   2. Review and Selection Process ................................................................................ 48
      a. Review Process .................................................................................................... 48
      b. Selection Status .................................................................................................. 50
      c. Appeals .............................................................................................................. 51
F. Federal Award Administration Information ................................................................. 51
   1. Notice of Award .................................................................................................... 51
   2. Administrative and National Policy Requirements ...................................................... 52
      a. DHS Standard Terms and Conditions ...................................................................... 52

*FY 2024 BRIC NOFO*

       b. Ensuring the Protection of Civil Rights ......................................................... 52
       c. Environmental Planning and Historic Preservation (EHP) Compliance ................ 53
       d. Construction Project Requirements ............................................................... 55
       e. Mandatory Disclosures ................................................................................. 55
   3.    Reporting ....................................................................................................... 56
       a. Financial Reporting Requirements ................................................................ 56
       b. Programmatic Performance Reporting Requirements ..................................... 56
       c. Closeout Reporting Requirements ................................................................ 56
       d. Additional Reporting Requirements ............................................................. 58
   4.    Monitoring and Oversight .............................................................................. 59
G.  DHS Awarding Agency Contact Information ............................................................. 61
   1.    Contact and Resource Information ................................................................... 61
       a. Program Office Contact ................................................................................ 61
       b. FEMA Grants News ..................................................................................... 61
       c. FEMA Regional Offices ............................................................................... 62
       d. Civil Rights ................................................................................................. 62
       e. Environmental Planning and Historic Preservation ....................................... 62
   2.    Systems Information ...................................................................................... 62
       a. FEMA GO .................................................................................................... 62
H.  Additional Information ........................................................................................... 62
   1.    Termination Provisions .................................................................................. 62
       a. Noncompliance ............................................................................................ 62
       b. With the Consent of the Recipient ............................................................... 63
       c. Notification by the Recipient ....................................................................... 63
   2. Program Evaluation ........................................................................................ 63
   3.    Period of Performance Extensions ................................................................... 64
   4.    Disability Integration ..................................................................................... 65
   5.    Conflicts of Interest in the Administration of Federal Awards or Subawards ............. 66
   6.    Procurement Integrity .................................................................................... 66
       a. Important Changes to Procurement Standards in 2 C.F.R. Part 200 ...................... 67
       b. Competition and Conflicts of Interest .......................................................... 67
       c. Supply Schedules and Purchasing Programs ................................................. 69
       d. Procurement Documentation ....................................................................... 70
       e. Prohibition on Use of Funds to Support or Oppose Union Organizing ................. 71
   7. Financial Assistance Programs for Infrastructure ............................................... 71
       a. Build America, Buy America Act .................................................................. 71
       b. Waivers ...................................................................................................... 71
       c. Definitions ................................................................................................. 72
   8.    Record Retention ........................................................................................... 72
       a. Record Retention Period .............................................................................. 72
       b. Types of Records to Retain .......................................................................... 73
   9.    Actions to Address Noncompliance ................................................................. 73
  10.  Audits ........................................................................................................... 75
  11.  Payment Information ..................................................................................... 76
  12.  Whole Community Preparedness .................................................................... 76
  13.  Report issues of fraud, waste, abuse ............................................................... 77

14. Extraordinary Circumstances ................................................................................... 77
15.  Good Jobs Initiative ............................................................................................... 78
16.  Integrating Hazard Mitigation and Planning ......................................................... 78
17. Hazard-Resistant Building Codes ............................................................................ 79
18. Requests for Information .......................................................................................... 79
19.  Appendices .............................................................................................................. 79
        a.  Abbreviations ................................................................................................... 79
        b.  Resources .......................................................................................................... 80

**A. Program Description**
**1. Issued By**
U.S. Department of Homeland Security (DHS)/Federal Emergency Management Agency (FEMA)/Resilience/Hazard Mitigation Directorate/Hazard Mitigation Assistance Division (HMA)

**2. Assistance Listings Number**
97.047

**3. Assistance Listings Title**
Building Resilient Infrastructure and Communities

**4. Funding Opportunity Title**
Fiscal Year 2024 Building Resilient Infrastructure and Communities (BRIC)

**5. Funding Opportunity Number**
DHS-24-MT-047-00-98

**6. Authorizing Authority for Program**
Sections 203 and 206 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (Stafford Act), as amended (Pub. L. No. 93-288) (42 U.S.C. §§ 5133 and 5136).

**7. Appropriation Authority for Program**
Section 203(i) of the Stafford Act, as amended (Pub. L. No. 93-288) (42 U.S.C. § 5133(i)) and Infrastructure Investment and Jobs Act (Pub. L. No. 117-58) (2021)[1].

**8. Announcement Type**
Initial

**9. Program Category**
Mitigation: Natural Hazards

**10. Program Overview, Objectives, and Priorities**
    **a. Overview**
        The Building Resilient Infrastructure and Communities (BRIC) grant program makes federal funds available to states, U.S. territories, federally recognized Tribal nations[2], and local governments for hazard mitigation activities. It does so recognizing the growing hazards associated with climate change[3] and the need for natural hazard risk mitigation activities that promote climate adaptation and resilience with respect to

---

[1] Any FY 2025 funding appropriated by the IIJA will become available in FY 2025 and will not be awarded/obligated until after the start of FY 2025.

[2] The term "federally recognized tribal nations," as used in this funding opportunity, has the same meaning as "Indian tribal government," as defined at 42 U.S.C. § 5122(6).

[3] Climate change is defined as "Changes in average weather conditions that persist over multiple decades or longer. Climate change encompasses both increases and decreases in temperature, as well as shifts in precipitation, changes in frequency and location of severe weather events, and changes to other features of the climate system." (NCA5).

those hazards. These include both acute extreme weather events and chronic stressors which have been observed and are expected to increase in intensity and frequency in the future.

The BRIC program's guiding principles include supporting communities through capability and capacity building; encouraging and enabling innovation, including multi-hazard resilience or nature-based solutions including the use of native plants; promoting partnerships; enabling large, systems-based projects; maintaining flexibility; and providing consistency. Through these efforts, communities are able to better understand disaster risk and vulnerabilities, conduct community-driven resilience activities, guide hazard mitigation planning, and design transformational projects and programs. FEMA's Mitigation Action Portfolio showcases hazard mitigation projects to provide practitioners with examples of activities that integrate the Investment Strategy's goals and reflect the guiding principles of the Disaster Recovery Reform Act of 2018 (DRRA).

Certain awards made under this funding opportunity may be funded, in whole or in part, by the Infrastructure Investment and Jobs Act, more commonly known as the Bipartisan Infrastructure Law (BIL). The BIL is a once-in-a-generation investment in infrastructure, which will grow a more sustainable, resilient, and equitable economy by enhancing U.S. competitiveness. The BIL appropriates billions of dollars to FEMA to promote resilient infrastructure, respond to the impacts of climate change, and equip our nation with the resources to combat its most pressing threats.

FEMA will provide financial assistance to eligible BRIC applicants for the following activities:

- Capability and Capacity Building (C&CB) activities – activities that enhance the knowledge, skills, and expertise of the current workforce to expand or improve the administration of hazard mitigation assistance. This includes activities in the following sub-categories: building codes, partnerships, project scoping, hazard mitigation planning and planning-related activities, and other activities as defined in the HMA Guide, Part 10, C.2.1.1. BRIC: Capability and Capacity Building Activities
- Hazard Mitigation Projects – cost-effective hazard mitigation projects designed to increase resilience and public safety; reduce injuries and loss of life; and reduce damage and destruction to property, critical services, facilities, and infrastructure (including natural systems) from a multitude of natural hazards, including drought, wildfire, earthquakes, extreme heat, and the effects of climate change.
- Management Costs – financial assistance to reimburse the recipient and subrecipient for eligible and reasonable indirect costs, direct administrative costs, and other administrative expenses associated with a specific award or subaward.

For more information about available assistance through the BRIC grant program, including how to submit various project types in FEMA Grants Outcomes System

(FEMA GO), refer to the Program Support Material (PSM) Resources for the BRIC Grant Program webpage.

For more detailed program information, please go to Building Resilient Infrastructure and Communities (BRIC).

**BRIC Direct Technical Assistance**
FEMA has implemented an initiative, BRIC Direct Technical Assistance (BRIC DTA), to support the development of climate resilience planning and project design in, and with, underserved and/or disadvantaged communities, and federally recognized Tribal nations that are disproportionately affected by natural hazard and climate change risk. Eligible recipients of non-financial direct technical assistance provided through BRIC DTA as defined in 42 § U.S.C. 5122 include, but are not limited to, territories, federally recognized Tribal nations, and local governments. Eligible communities, territories, and tribes interested in receiving BRIC DTA can visit the BRIC DTA webpage for more information.

FEMA will prioritize assistance for eligible entities that request technical assistance support for resilience or hazard mitigation activities within or that primarily benefit a Justice40 community, which includes Federally Recognized Tribes or Tribal entities, and/or census tracts identified as disadvantaged by the Climate and Economic Justice Screening Tool (CEJST); an Economically Disadvantaged Rural Community (defined in 42 U.S.C. § 5133(a) as a small impoverished community); or a Community Disaster Resilience Zone (as defined in 42 U.S.C. § 5136(a)(1)). Eligible entities can visit the BRIC DTA webpage for more information on how to submit a request for assistance.

b. **Goals, Objectives, and Priorities**
BRIC aims to shift the focus of federal investments away from reactive, post-disaster spending and toward research-supported, proactive investments in community resilience. These investments aim to reduce future disaster losses, loss of life, property, and future spending from the Disaster Relief Fund (DRF). BRIC focuses on cost-effective hazard mitigation and climate adaptation measures including protecting public infrastructure so that critical services can withstand or more rapidly recover from future disasters, as well as other projects and activities to increase resilience throughout the nation. Through BRIC, FEMA can engage state, local, tribal, and territorial (SLTT) partners in enhancing climate resilience and adaptation through systems-based, community-wide investments. FEMA is including provisions to implement the Community Disaster Resilience Zones Act, which aims to direct public and private resilience investments in communities that are most vulnerable to natural hazards.

In accordance with the program's guiding principles, the Justice40 Initiative established in EO 14008, BRIC will prioritize assistance to disadvantaged or Justice40 communities to reduce or eliminate gaps in capacity to build resilience and reduce risk exposure.

*Program Objectives:*

BRIC program objectives are aligned with the [2022-2026 FEMA Strategic Plan](#).
- Increase climate literacy among the emergency management community, including awareness of natural hazard risks and knowledge of best practices for hazard mitigation (Strategic Objective 2.1)
- Increase awareness of stakeholders and partners with capabilities to support hazard mitigation, preparedness, response, and recovery (Strategic Objective 3.1)
- Develop and complete more innovative risk-informed hazard mitigation projects, such as multi-hazard resilience or nature-based solutions (Strategic Objective 2.3)
- Identify and mitigate the risks to natural hazards and their own threats from climate change (Strategic Objective 2.2)
- Increase resources to eliminate disparities in equitable outcomes across disadvantaged communities. (Strategic Objectives 1.2 & 1.3)
- Adopt and enforce the latest published editions of building codes (Strategic Objective 2.2)

**Priorities**
For FY 2024, the priorities for the program are to incentivize natural hazard risk reduction activities to include those that address multi-hazards that mitigate current and future risk to public infrastructure and disadvantaged communities as referenced in EO 14008; incorporate nature-based solutions, including those designed to reduce carbon emissions; enhance climate resilience and adaptation; and increase funding to applicants that facilitate the adoption and enforcement of the latest published editions of building codes. BRIC encourages hazard mitigation projects that meet multiple program priorities.

FEMA acknowledges the adoption and enforcement of building codes, specifications, and/or standards as an important hazard mitigation activity that provides significant resilience benefits. Therefore, BRIC continues to dedicate additional funds through a State/Territory and Tribal Building Codes Plus-Up for FY 2024 to carry out eligible building code adoption and enforcement activities. Additionally, in future BRIC grant cycles, FEMA may increase its emphasis on building codes criteria. The additional dedicated funds and the increased emphasis on building codes criteria in the future are activities FEMA is committing to as it helps to lead and support the [National Initiative to Advance Building Codes (NIABC)](#). BRIC eligible activities and construction requirements exemplify priorities under the NIABC that help state, local, tribal, and territorial governments adopt the latest climate resilient codes and standards; ensure building projects follow modern codes and standards to the greatest extent feasible; and enhance outreach, technical assistance, and capacity building on building codes.

   **c. Alignment to Program Purpose and the DHS and FEMA Strategic Plan**

The BRIC program aligns with the goal of promoting resilience and adaptation in light of current and future risks, including those posed by climate change, as well as aligning with and the 2020-2024 DHS Strategic Plan through Goal 5: Strengthen Preparedness and Resilience. Specifically, Objective 5.1: Build a National Culture of Preparedness has several sub-objectives that the BRIC program supports. BRIC serves primarily to bolster *Sub-Objective 5.1.1: Incentivize investments that reduce risk and increase pre-disaster hazard mitigation, including expanding the use of insurance to manage risk*, through funding hazard mitigation projects, particularly ones that reduce risk to infrastructure. Additionally, the capability- and capacity-building activities that BRIC funds also contribute to other sub-objectives. For example, planning, partnerships, and project scoping efforts help improve awareness initiatives to encourage public action to increase preparedness (Sub-Objective 5.1.2), use lessons from past disasters and exercises to inform community investment decisions and anticipate challenges that may emerge during future disasters (Sub-Objective 5.1.3), and coordinate and guide continuity of operations activities through partnerships with government and non-government stakeholders (Sub-Objective 5.1.5). The BRIC program also promotes the goal of equity, by helping members of particularly overburdened and underserved communities[4], who might be at heightened risk from current hazards, including those associated with climate change.

The 2022-2026 FEMA Strategic Plan outlines a bold vision and three ambitious goals designed to address key challenges the agency faces during a pivotal moment in the field of emergency management: Goal 1 - Instill equity as a foundation of emergency management, Goal 2 - Lead the whole of community in climate resilience, and Goal 3 - Promote and sustain a ready FEMA and prepared nation. One of BRIC's purposes is to help achieve the goals of the 2022-2026 FEMA Strategic Plan. In particular, the BRIC program supports Objective 1.2: Remove barriers to FEMA programs through a people first approach, Objective 1.3: Achieve equitable outcomes for those we serve, and Objective 2.2: Build a climate resilient nation. BRIC also supports the National Mitigation Investment Strategy by advancing hazard mitigation investment to reduce risks thereby increasing the nation's resilience to natural hazards.

## 11. Performance Measures

The BRIC program supports risk reduction of both acute events and chronic stressors, exacerbated by natural hazard risk and climate change, which are either observed or expected.

The following key performance indicators provide strategic and relevant information to decisionmakers and stakeholders about BRIC's progress and success toward achieving its goals and objectives, and are based on metrics that are available or could be feasibly collected:

- Total number and population size of communities supported since inception

---

[4] "Underserved communities" is defined in Executive Order (EO) 13985: Advancing Racial Equity and Support for Underserved Communities through the Federal Government, and cited in the 2022-2026 FEMA Strategic Plan.

- Percent of federal dollars spent in or otherwise benefiting Justice40 communities
- Dollar amount of total expected benefits
- Number of State, Local, Tribal, and Territorial governments that adopted hazard-resistant building codes after receiving BRIC grants for building code activities
- Dollar amount of losses avoided in projects or communities funded by BRIC subapplications.

FEMA recognizes that many effective resilience solutions, such as nature-based solutions, yield critical benefits that may be difficult to assign market values. As such, FEMA notes that these key performance indicators are not determinative of whether an application to the BRIC program is selected for funding. FEMA's Learning Agenda has identified evidence gaps in achieving the agency's strategic goals and will address these through the research questions and data projects, in accordance with the requirements and best practices of the Foundations for Evidence-Based Policymaking Act of 2018 (Evidence Act).

**B. Federal Award Information**
1. Available Funding for the NOFO:                                **$750,000,000.00**

- State/Territory Allocation Subtotal:                          **$  112,000,000**
- Tribal Set-Aside Subtotal:                                        **$    50,000,000**
- State/Territory Building Code Plus-Up Subtotal:      **$  112,000,000**
- Tribal Building Code Plus-Up Subtotal:                    **$    25,000,000**
- National Competition Subtotal:                                **$  451,000,000**

Any applicant may not receive more than 20% of the total available funding announced in this funding opportunity. The 20% cap will include the combined total of all funding category requests (Management Costs, State/Territory Allocation, Tribal Set-Aside, Building Code Plus-Up and the National Competition).

**State/Territory Maximum Allocation & Activity Caps**                          **$ 2,000,000**
- The maximum allocation for a state or territory under this category is $2,000,000, covering all activities/projects, including Management Costs.
- Each state/territory may apply for up to $2,000,000 in the State/Territory Allocation. The State/Territory Allocation may be used for Capability and Capacity Building activities and/or hazard mitigation projects. The combined cost for any Capability and Capacity Building activities and/or hazard mitigation projects under the State/Territory Allocation must not exceed $2,000,000 federal cost share per applicant. Additionally, the applicant's highest ranked subapplication (Capability and Capacity Building activity or hazard mitigation project) for the State/Territory Allocation must not exceed $2,000,000 federal cost share.
- A total of $1,500,000 must be used for Capability and Capacity Building activities per applicant.
  o Subapplications submitted to the State/Territory Allocation and Building Code Plus-Up, as well as Project Scoping subapplications selected from the National Competition will count towards the $1,500,000 minimum spend requirement.

- Up to 10% of any subapplication may be used for information dissemination activities, including public awareness and education (brochures, workshops, videos, etc.) related to a proposed Capability and Capacity Building activity or hazard mitigation project.

**Tribal Set-Aside Activity Caps**                                   **$ 50,000,000**
- The combined cost for any Capability and Capacity Building activities under the Tribal Set-Aside must not exceed $2,000,000 federal cost share per applicant. Additionally, the applicant's highest ranked subapplication (Capability and Capacity Building activity) for the Tribal Set-Aside must not exceed $2,000,000 federal cost share.
- Up to 10% of any subapplication may be used for information dissemination activities, including public awareness and education (brochures, workshops, videos, etc.) related to a proposed Capability and Capacity Building activity or hazard mitigation project.
- In the event that more than $50,000,000 in subapplications is submitted under the Tribal Set-Aside, the Capability and Capacity Building activities and highest-ranked hazard mitigation project subapplications up to $50,000,000 will be selected. Once the $50,000,000 is selected, all remaining tribal hazard mitigation project subapplications will be evaluated under the national competition.

**State/Territory Building Code Plus-Up**                            **$ 2,000,000**
- The maximum allocation for a state or territory under this category is $2,000,000, to carry out eligible building code adoption and enforcement activities such as
  - Evaluate adoption and/or implementation of codes that reduce risk
  - Enhance existing adopted codes to incorporate more current requirements or higher standards (excluding construction)
  - Develop professional workforce capabilities relating to building codes through technical assistance and training
- Activities under this category should enable the adoption and enforcement of building codes based on both the International Building Code (IBC) and the International Residential Code (IRC) model codes published by the International Code Council (ICC) either through Mandatory State-Wide or Territory Building Code Adoption Requirement or via Local Code Adoption Requirement (2021 or 2024 versions of IBC and IRC). For any consensus-based codes, specifications, or standards used to carry out these activities, the two most recently published editions may be used.
- Building code plus-up funds may only be applied to eligible building code activities and may not be used for other BRIC eligible projects or activities. Funds not allocated to eligible building codes activities will result in loss of funds.

**Tribal Building Code Plus-Up**                                     **$ 25,000,000**
- The maximum total selection for the Tribal Building Code Plus-Up is $2,000,000, to carry out eligible building code adoption and enforcement activities such as
  - Evaluate adoption and/or implementation of codes that reduce risk
  - Enhance existing adopted codes to incorporate more current requirements or higher standards (excluding construction)

- o Develop professional workforce capabilities relating to building codes through technical assistance and training
- Activities under this category should enable the adoption and enforcement of building codes based on both the International Building Code (IBC) and the International Residential Code (IRC) model codes published by the International Code Council (ICC) either through Mandatory State-Wide or Territory Building Code Adoption Requirement or via Local Code Adoption Requirement (2021 or 2024 versions of IBC and IRC). For any consensus-based codes, specifications, or standards used to carry out these activities, the two most recently published editions may be used.
- Building code plus-up funds may only be applied to eligible building code activities and may not be used for other BRIC eligible projects or activities. Funds not allocated to eligible building codes activities will result in loss of funds.

**National Competition Cap**                                               **$ 50,000,000**
Applicants may submit an unlimited number of hazard mitigation project subapplications, each valued up to $50,000,000 federal share, to the national competition.

In addition, FEMA will assign up to 10% of National Competition funding for project scoping activities. Applicants may submit an unlimited number of project scoping subapplications to the national competition.
- Up to 10% of any subapplication may be used for information dissemination activities, including public awareness and education (brochures, workshops, videos, etc.) related to a proposed hazard mitigation project.

**2.** Period of Performance:                                               **36 months**
The Period of Performance (POP) is 36 months, starting on the date of the recipient's federal award. Any subsequent amendments to the federal award will not extend the POP unless explicitly stated. The applicant may submit a request for a longer POP in the application for FEMA to review and approve. A longer POP must be requested, documented, reasonable, justified, and approved by FEMA.

Extensions to the period of performance are allowed. For additional information on period of performance extensions, please refer to Section H.3. of this funding opportunity.

FEMA awards under the BRIC program only include one budget period; it will be the same as the period of performance. *See* 2 C.F.R. § 200.1 for definitions of "budget period" and "period of performance."

**3.** Projected Period of Performance Start Date(s):          **Will vary by award**

**4.** Projected Period of Performance End Date(s):            **36 months from date of the award unless otherwise specified by FEMA**

**5.** Funding Instrument Type:                                   **Grant**

**C. Eligibility Information**
**1. Eligible Applicants**

- States
- District of Columbia
- U.S. territories
- Federally recognized Tribal nations

Each state, territory, the District of Columbia, and federally recognized Tribal nations shall designate an agency of their choice to serve as the applicant for BRIC funding. The designee is strongly encouraged to conduct outreach prior to and during the application process with disadvantaged communities, including federally recognized Tribal nations, Tribal entities, all census tracts identified as disadvantaged within the Climate and Economic Justice Screening Tool (CEJST) as referenced in EO 14008, Community Disaster Resilience Zones. Each applicant's designated agency may submit only one BRIC grant application to FEMA. Subapplications under which two or more entities would carry out the award are eligible, such as a multi-state or multi-tribal initiative; however, only one entity may be the subapplicant with primary responsibility for carrying out the subaward.

**2. Applicant Eligibility Criteria**
- States and territories that have had a major disaster declaration under the Robert T. Stafford Disaster Relief and Emergency Assistance Act in the seven years prior to the annual application period start date are eligible to apply to FEMA for federal assistance under BRIC (applicants). As a result of numerous major disaster declarations, all states, territories, and the District of Columbia are eligible to apply in FY 2024.
- Federally recognized Tribal nations that have had a major disaster declaration under the Stafford Act in the seven years prior to the annual application period start date or are entirely or partially located in a state or territory that has had a major disaster declaration in the seven years prior to the annual application period start date are eligible to apply to FEMA for federal assistance under BRIC as applicants or subapplicants to eligible states and territories. As a result of numerous major disaster declarations, all federally recognized Tribal nations are eligible to apply in FY 2024.
- Applicants are required to have a FEMA-approved State or Tribal Hazard Mitigation Plan in accordance with 44 C.F.R. Part 201 by the application deadline and at the time of obligation of the award. (Hazard mitigation planning subapplications submitted by applicants are exempt from this hazard mitigation plan requirement).
- To be considered for financial assistance, all applicants must submit their FY 2024 BRIC grant applications to FEMA via FEMA GO (see Section D).

**3. Subawards and Beneficiaries**
   **a. Subaward Allowability**
   Communities, including local governments, cities, townships, counties, special district governments, and Tribal nations (including federally recognized Tribal nations who choose to apply as subapplicants) are considered subapplicants and must submit subapplications for financial assistance to their state/territory/tribal applicant

agency. Federally recognized Tribal nations who wish to apply as subapplicants rather than as applicants directly to FEMA must submit to their applicant agency. State Hazard Mitigation Officers are able to provide more information and answer questions on the subapplication process.

Contact information is available on the State Hazard Mitigation Officers webpage.

**b. Subrecipient Eligibility**
- Local governments as defined in 44 U.S.C § 5122(6), are eligible to apply to eligible states and territories for federal assistance under BRIC (subapplicants).
- Subapplicants are required to have a FEMA approved Local or Tribal Hazard Mitigation Plan in accordance with 44 C.F.R. Part 201 by the application deadline and at the time of obligation of grant funds for hazard mitigation projects. Multi-jurisdictional plans (e.g., watershed plans) may be accepted, as appropriate, as long as each jurisdiction has participated in the process and has officially adopted the plan. State-wide plans will not be accepted as multi-jurisdictional plans.
- Regional planning districts (e.g., planning commissions or councils, councils of government, area development districts, or equivalent planning entities) without approved mitigation plans may serve as the subapplicant on behalf of a local government or Tribal nation within their service area if the local government or Tribal nation proposing the mitigation project/where the activity is located has a current FEMA approved Local or Tribal Mitigation Plan and the proposed activity is consistent with that plan.
- Subapplicants are exempt from the hazard mitigation plan requirement for the following Capability and Capacity Building activity types: (1) hazard mitigation planning and planning related activities, (2) partnerships, (3) building codes, and (4) project scoping.
  - Federally recognized Tribal nations, submitting as subapplicants to a state or territory, are included in this exemption.
- Hazard mitigation plan integration, while not required to be eligible for BRIC, is encouraged. See Section H.15. for additional information. Local hazard mitigation plans must conform to the 2011 Local Mitigation Plan Review Guide, or 2022 Local Mitigation Planning Policy Guide, as applicable.

**c. Beneficiaries or Participants**
This NOFO and any subsequent federal awards create no rights or causes of action for any participant or beneficiary.

Individuals, businesses, and nonprofit organizations are not eligible to apply for BRIC funds as an applicant or subapplicant; however, an eligible applicant or subapplicant may apply for funding on behalf of individuals, businesses, and nonprofit organizations.

**4. Other Eligibility Criteria/Restrictions**

All activities under BRIC must be in conformance with all criteria established by FEMA that are specific to the proposed activity, found in the 2024 Hazard Mitigation Assistance Program and Policy Guide (HMA Guide).

   **a. *Phased Projects***

In general, sufficient technical information is provided by the applicant or subapplicant to allow FEMA to make an eligibility determination on a subapplication. The costs to obtain this information are generally eligible as pre-award costs. However, in some cases, it is beyond the subapplicant's technical and financial resources to provide the information necessary to complete a full subapplication review (including but not limited to the EHP compliance review). The applicant and FEMA may provide technical assistance to the subapplicant to develop this complete body of technical data by approving a subapplication to finalize the project's analysis and design, conduct applicable engineering studies, prepare a Benefit-Cost Analysis (BCA), and provide documentation for an EHP compliance review. This information could be developed or collected as part of project scoping or a phased project subapplication. Note that phased projects differ from project scoping activities. Project scoping could help a community develop a project from the very beginning and include problem evaluation, analysis of alternatives, and development of project concept or initial design in addition to all the tasks eligible for a phased project. On the other hand, phased projects are used when a subapplicant has a preliminary plan or concept where FEMA can make initial eligibility, technical feasibility, and cost-effectiveness determinations. Phased projects are further along in development and have assessed and selected a project alternative that could be evaluated but still lack technical and financial resources to complete a full subapplication.

In the case of phased projects, the subapplicant could finalize during Phase I the required analysis and design, conduct applicable engineering studies, prepare a Benefit-Cost Analysis (BCA), and provide documentation for an EHP review. The Phase I deliverables provide FEMA with a technical body of information mutually concurred on by the subrecipient, the recipient, and FEMA to determine project eligibility, technical feasibility, and cost effectiveness. If the results of the Phase I review indicate that the project meets BRIC requirements, the project would then be eligible for funding for construction under a Phase II approval. Phase I funding is part of the project's total estimated cost and is subject to BRIC cost share requirements.

The use of a phased approach should be limited to projects that require studies and technical or EHP information to complete the design and the EHP compliance review of the project. The following provides guidelines and outlines the process for selecting projects for Phase I/Phase II project approval.

   **I. PRE-SCREENING PROCESS**

The subapplicant must submit documentation showing the project meets the following criteria for Phase I award:

- *State or Tribal (Standard or Enhanced) Hazard Mitigation Plan:* The proposed project must be consistent with the State or Tribal (Standard or Enhanced) Hazard Mitigation Plan as well as the local or Tribal Hazard Mitigation Plan for the jurisdiction in which the activity is located.
- *Justification for Selection of the Proposed Project:* Phased projects must have a preliminary plan or concept that FEMA can use to determine eligibility. Justification must be provided for the selection of the proposed solution after consideration of at least two alternative options and for how the selected alternative mitigates the hazard and reduces risk to people, structure, or infrastructure. Projects that have not completed this analysis of alternatives should be further developed or submitted as a Project Scoping activity.
- *Potential Cost-Effectiveness:* The project demonstrates potential cost-effectiveness based on a preliminary assessment of anticipated project benefits and cost. The subapplicant must be aware that this preliminary assessment is solely for the purpose of the Phase I pre-screening process and is not the final cost-effectiveness determination. A preliminary benefit cost analysis (BCA) is required at the time of application. This requirement does not apply to an Economically Disadvantaged Rural Community, federally recognized Tribal nations, or subapplication within, or that primarily benefits a Community Disaster Resilience Zone, where the subapplicant is unable to calculate a BCR to demonstrate cost-effectiveness as stated in FEMA Policy: Benefit-Cost Analysis Discount Rate and Streamlined Cost-Effectiveness for HMA and PA Programs. FEMA will calculate the BCA for the applicant to ensure cost effectiveness.
- *Cost estimate:* Phased project costs must be itemized and in alignment with the Phased project proposed scope of work clearly indicating the cost of Phase I and Phase II.
- *EHP Review:* The Phase I review is categorically excluded under NEPA review with some exceptions. EHP Phase I review should identify any potential EHP compliance issues and information needs required for Phase II review.
- *Relevant Technical Data*: The subapplicant provides available technical data such as alternative analysis, feasibility studies, preliminary engineering reports or designs, site surveys, existing or preliminary hydrologic and hydraulic data or preliminary geotechnical data, as appropriate.

II. **PHASE I AWARD**

The applicant and FEMA may approve projects meeting the above requirements for technical assistance under a Phase I award. FEMA and the applicant will coordinate closely to ensure mutual concurrence on all data and technical information as well as any conditions included in the Phase I Award as the Phase I technical review process proceeds. The following conditions must be met through the Phase I deliverables prior to progressing to Phase II:

- *Relevant Technical Data:* The applicant and FEMA will review technical data such as hydrologic and hydraulic, environmental, and geotechnical studies provided by the subapplicant, as appropriate.
- *Preliminary Engineering Design:* Based on the technical data, the subapplicant develops a preliminary engineering design and layout and cost estimates with ad hoc technical assistance from the applicant and FEMA.
- *Milestones:* As available, the subapplicant must provide clear milestones (including those that will have Go/No Go criteria for competition projects) and proposed timelines, and a list of potential final deliverables.
- *Federal Flood Risk Management Standard*: If applicable, based on the technical data and revised engineering design, the project must demonstrate compliance with floodplain management requirements under *FEMA Policy 206-24-005*. If a Flood Insurance Rate Map (FIRM) amendment or revision will be necessary under the provisions of the National Flood Insurance Program (NFIP), the applicant and FEMA will provide the subapplicant with technical assistance to meet this requirement.
- *Refinement of the Cost-Effectiveness Assessment:* Based on the revised design and cost estimates, the applicant and FEMA will refine the preliminary assessment of cost-effectiveness conducted prior to Phase I approval. This will result in a final BCR to assess the project's cost-effectiveness, which will include all the project costs, including those associated with Phase I.
- *EHP Review:* The applicant and FEMA will conduct a review of the revised project design to ensure EHP compliance. The project will meet EHP requirements before Phase II approval.
- Note that eligible activities under a Phase I award are defined in the award package and are based on the submitted and reviewed Phase I scope of work. A complete and eligible Phase II application, including environmental consultations, demonstration of technical feasibility, and an updated benefit-cost analysis, must be submitted to and approved by FEMA prior to the initiation of any tasks not included in the approved Phase I scope of work.

### III. PHASE II AWARD AMEDMENT – CONSTRUCTION PROCESS

If the project is determined to be eligible, technically feasible, cost effective, and compliant with EHP requirements under the technical review of Phase I deliverables, the project may then be approved for construction under Phase II.

In general, a contractor who develops the HMA grant application project specifications or is contracted to provide direct assistance with the completion and submission of a grant application, is generally prohibited from competing for the related construction work *See* 2 CFR § 200.319(b) and subsection H.6.b. Competition and Conflicts of Interest of this funding opportunity.

**b.** ***Environmentally Friendly Measures***

- All activities under BRIC must be in conformance with all applicable environmental planning and historic preservation (EHP) laws, regulations, executive orders, and agency policies as defined in the HMA Guide, Part 4, G. Environmental and Historic Preservation Requirements.

- Hazard mitigation projects should focus on building resilient communities and when possible reduce causes of climate change by incentivizing investments in greenhouse gas reduction strategies, such as the use of low-carbon materials, and low-carbon and net-zero energy projects through implementation of the Inflation Reduction Act of 2022 (IRA) as explained in FEMA's implementation memorandum.

- Applicants should utilize climate data to consider the current and future effects of climate change, including, but not limited to, high winds and projected sea level rise, and ensure responsible floodplain and wetland management based on the history of flood hazard mitigation efforts and the frequency, duration, and intensity of precipitation events, and exposure and sensitivity to extreme temperatures, including heat, drought, and wildfire.

- Applicants should utilize nature-based solutions when possible. Nature-based solutions offer significant benefits, monetary and otherwise, often at a lower cost than more traditional infrastructure. These benefits include economic growth, green jobs, increased property values, and improvements to public health, including better disease outcomes and reduced injuries and loss of life.

- FEMA encourages the use of environmentally friendly construction practices when completing BRIC hazard mitigation projects. In particular, FEMA encourages that BRIC projects follow the FEMA building materials program and consider the use of low carbon materials and the development of low-carbon and net-zero energy projects, as defined in the FEMA's Inflation Reduction Act Implementation memorandum.

    o When subapplications include eligible low-carbon materials, FEMA encourages that these materials follow the definition of low-carbon materials presented in the Inflation Reduction Act Implementation Memorandum for FEMA Public Assistance and Hazard Mitigation Assistance Programs.

    o Subrecipients should ensure that federally funded infrastructure investments reduce life cycle emissions of construction materials, specifically concrete, asphalt, glass, steel, and assemblies comprised of at least 80% of these materials.

    o Subrecipients should request disclosure of Environmental Product Declarations (EPD) and provide these so FEMA may evaluate eligibility. A product-specific Type III (third-party verified) EPD must be shown and reported in a third-party dataset, such as the Embodied Carbon in Construction Calculator (EC3), and could be used to evaluate the eligibility of these lower-carbon materials. See the FEMA Inflation Reduction Act Implementation memorandum for additional information.

- FEMA encourages the use of native vegetation when completing BRIC hazard mitigation projects. Examples include:
  - Trees and shrubs can provide lowland habitat, channel shading, soil and bank stabilization, and aesthetic benefits. The use of native vegetation is strongly encouraged to support creation or restoration of habitat and to maintain natural ecosystem conditions.
  - Native vegetation planted on the slope above a revetment as well as within the spaces between rocks in a revetment's face can increase stability and create habitat.
  - Appropriate native marsh vegetation is planted along the future marsh platform. In areas of very low wave energy this may be all that is needed. Native vegetation planted landward of a bulkhead can trap airborne sediment and reduce erosion in the case that a bulkhead is overtopped.

c. ***Identifying as a Disadvantaged Community***
   Subapplicants should include location data in the "Community" and "Location" sections of the FEMA GO subapplication; this will be used to verify if a project or a C&CB activity is within or primarily benefits Community Disaster Resilience Zones, Justice40 Communities, or qualifies as an Economically Disadvantaged Rural Community:

   - In the "Community" section of FEMA GO, subapplicants should list the communities that will benefit from the hazard mitigation activity by clicking on the find community button to find the name and CID number in the Community Information System (CIS) database. If the community cannot be found in the database, include information in the comments (such as the full name and Census incorporated place GEOID) and inform your state NFIP coordinator so the database can be updated.
   - In the "Project site inventory" section of FEMA GO, subapplicants should list all locations of mitigated properties/structures including address and/or latitude and longitude coordinates in the "project site inventory" section on FEMA GO.
   - In the "Project benefitting area" section of the FEMA GO subapplication, subapplicants should submit a map and associated geospatial file(s) (e.g., GeoJSON, Shapefile, KML/KMZ, Geodatabase, or other GIS enabled document) delineating the estimated area benefiting from the project.
     - Applicants may use any software to generate the geospatial file(s) delineating the benefiting area. FEMA has published a job aid that demonstrates how to create the geospatial file(s) using common geospatial software programs.
     - Subapplicants may also use FEMA's Resilience Analysis and Planning Tool (RAPT) and Grant Equity Threshold Tool (GETT) to generate the geospatial file(s) as well as to understand the population impacted by a proposed project, delineate the area benefiting, and translate between census tract geographies identified by Justice40 or Community Disaster Resilience Zones.

*FY 2024 BRIC NOFO*

- Justice40 communities are defined at the census tract level, and applicants should use the CEJST to identify designated tracts. Many project benefiting areas are located across multiple census tracts, either partially or fully. The proportion of benefits going to Justice40 tract(s) will be identified using a weighted population formula, and a project with at least 50% or more of the benefiting population in Justice40 tracts is eligible for Technical Evaluation Criteria points; see Section E.1.a.II. of this funding opportunity for more information about Technical Evaluation Criteria.
- Economically Disadvantaged Rural Communities are defined at 42 U.S.C. § 5133(a) and 44 C.F.R Part 59. See Section C.5.b. in this funding opportunity for more detail on requirements to qualify for this designation for cost share, and Section E.1.a.II. of this funding opportunity for more information about Technical Evaluation Criteria.
- Community Disaster Resilience Zones are also defined at the census tract level, and a project or activity benefiting area may include multiple tracts, either partially or fully. The proportion of benefits going to Community Disaster Resilience Zone tract(s) will be identified using a weighted population formula, and a project or C&CB activity within or with at least 50% or more of the total benefiting population within Community Disaster Resilience Zones is eligible for increased cost share and/or prioritization points. See Section C.5.c. in this funding opportunity for more detail on requirements to qualify for this designation, and Section E.1.a.II. of this funding opportunity for more information about Technical Evaluation Criteria.
- Subapplicants may include narrative descriptions of population benefiting to supplement the data and shapefile provided, particularly in rural areas with limited population data or for projects benefiting geographically dispersed populations.
- If a proposed benefiting area map is not provided, FEMA will default to the subapplicant jurisdiction or jurisdictions listed in the Communities section of FEMA GO and validate the locations listed in the "Project site inventory" to determine Justice40, Community Disaster Resilience Zones, and Economically Disadvantaged Rural Communities for Technical Evaluation Criteria and eligible cost share.

**d.** *Additional Criteria*
- All activities under BRIC must be in conformance with all applicable federal, state, Tribal, and local floodplain and land use laws and regulations as defined in the HMA Guide.
- Hazard mitigation projects must be consistent with the applicant's State or Tribal Hazard Mitigation Plan and the subapplicant's Local or Tribal Hazard Mitigation Plan approved under 44 C.F.R. Part 201. Applicants must identify in the BRIC application where the need for the proposed project types are specifically referenced or included in the State or Tribal Hazard Mitigation Plan (page number, section title, etc.).

- Hazard mitigation projects must be cost-effective and designed to increase resilience and reduce risk of injuries, loss of life, and damage and destruction of property, including critical services and facilities as defined in the HMA Guide, Part 5. Cost-Effectiveness. FEMA Benefit Cost Analysis (BCA) development assistance is available for Economically Disadvantaged Rural Communities, federally recognized Tribal nations and Community Disaster Resilience Zones.
- Hazard mitigation projects must, at a minimum, be in conformance with the two latest published editions of relevant consensus-based codes, specifications, and standards that incorporate the latest hazard-resistant designs. If the hazard mitigation project is located in a Special Flood Hazard Area, it must meet all of the following conditions:
  - The project is in a jurisdiction participating in the National Flood Insurance Program that is not on probation, suspended, or withdrawn.
  - The property owner obtains and maintains flood insurance for the life of the structure, regardless of transfer of ownership, in an amount at least equal to the project cost or to the maximum limit of coverage made available with respect to the mitigated property, whichever is less.
  - The project complies with the requirements of FEMA Policy 206-24-005: Federal Flood Risk Management Standard (FFRMS).
  - Earthquake early warning systems are eligible as stand-alone projects.
- Construction activities for which ground disturbance has already been initiated or completed are not eligible for funding. Non-construction activities that have already started may not be considered for funding. However, under the Hazard Eligibility and Local Projects (HELP) Act, FEMA may provide assistance for certain acquisition and demolition projects when the implementation started after January 5, 2023. To be eligible, the project must also:
  - Qualify for a categorical exclusion under National Environmental Policy Act;
  - Be compliant with applicable floodplain management and protection of wetland regulations and criteria;
  - Not require consultation under any other environmental or historic preservation law or regulation or involve any extraordinary circumstances;
  - Must comply with all other applicable Hazard Mitigation Assistance and federal requirements.
- When subapplications include an information technology or operational technology component as part of a larger project, FEMA will allow activities that enable greater community resilience through cybersecurity as eligible costs when those activities are performed in accordance with the cybersecurity performance goals for critical infrastructure and control systems directed by the National Security Memorandum on Improving Cybersecurity for Critical

Infrastructure Control Systems (NSM-5)[5]. Subapplicants should address cybersecurity in their planning, design, and project oversight for awards that include a technology nexus that may pose a cyber risk that would affect the reliability or operability of the project.

- Subrecipients are encouraged to place publicly visible signage at sites where federal funding is being used for hazard mitigation projects, identifying the funding source of the project (Office of Management and Budget's February 24, 2023 Controller Alert, "CA-23-6, Enhancing Transparency Through Use of the Investing in America Emblem on Signs (UPDATED)). The cost of such signs is an eligible project cost. Subapplicants may request up to $5,000 per project for such costs. Requests for signage costs must be identified as a line item in the subapplication cost estimate. Project costs for signage are subject to the applicable cost-sharing requirements. The contents and other details of the signage must be in accordance with FEMA's signage guidance. Subrecipients that choose to include signage as a project cost must include in their grant reporting: the location of the signage on the project site to include the city, state, and project name; the number of signs on the project site; and a photograph of each sign with the date the photograph was taken. In the information that is reported relating to signage, subrecipients must not include any information that may be considered personally identifiable information."

## 5. Cost Share or Match
### a. General
Cost share is required for all subapplications funded under this program. Generally, the cost share for this program is 75% federal / 25% non-federal. This means federal funding is available for up to 75% of eligible costs. The remaining 25% of eligible costs must be derived from non-federal sources. For example, if the total cost of the activity is $400,000 and the non-federal cost share is 25%, then the non-federal contribution is $100,000 (25% of $400,000 is $100,000). This amount would be provided by the applicant. Likewise, the federal share of that activity would be $300,000 (75% of $400,000 is $300,000). This amount would be provided by FEMA. FEMA will provide 100% federal funding for management costs.

The non-federal cost share may consist of cash, donated or third-party in-kind services, materials, or any combination thereof. Cash and third-party in-kind matches must consist of eligible costs (i.e., same eligibility as the federal share). Applicants cannot apply other federal award funds toward the BRIC non-federal cost share unless the other federal statutory authority allows the funds to be used to meet cost share requirements. For example, FEMA's Safeguarding Tomorrow Revolving Loan Fund (RLF) Program loans may be eligible for use as non-federal cost share funding. For more information, visit the Safeguarding Tomorrow RLF webpage. Additionally, in certain situations, U.S. Department of Housing and Urban Development Community Development Block Grant Disaster Recovery (CDBG-DR) program funds, U.S. Small Business Administration Disaster Loans, United States Department

---

[5] https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/28/national-security-memorandum-on-improving-cybersecurity-for-critical-infrastructure-control-systems/

of Agriculture Rural Development Single Family Direct Home Loans or Single Family Repair Loans, the Department of Defense's Readiness and Environmental Protection Integration (REPI) program, and others may be used towards the non-federal match. Additionally, certain American Rescue Plan funds may be used as non-federal cost share as determined by the Department of Treasury.[6] Refer to the HMA Cost Share Guide for more information. FEMA encourages innovative use of public and private-sector partnerships to meet the non-federal cost share.

BRIC funding cannot be used as matching funds for another federal award. Additionally, third-party in-kind matches used to meet the matching requirement may not be used to meet matching requirements for any other federal program.

Ultimately, the recipient is responsible for ensuring that it contributes the proper cost share to its actual project costs. If actual total project costs exceed the projected total project costs stated in the federal award, the recipient will not receive any additional federal funding and will be responsible for contributing additional funds above the required cost match. If actual total project costs are less than the projected total project costs stated in the federal award, the recipient will be responsible for contributing a cost match calculated as a percentage of those actual project costs. For more information and examples on cost share see the HMA Cost Share Guide.

b. **Economically Disadvantaged Rural Communities**
   The BRIC program term "Economically Disadvantaged Rural Communities" is synonymous with "small impoverished communities" as defined at 42 U.S.C. § 5133(a) meeting the following criteria:
   - a community, meaning any State or political subdivision thereof, or any Indian Tribe or authorized Tribal organization, or Alaska Native village or authorized native organization, which has authority to adopt and enforce flood plain management regulations for the areas within its jurisdiction (44 C.F.R Part 59),
   - of 3,000 or fewer individuals identified by the applicant
   - that is economically disadvantaged, with residents having an average per capita annual income not exceeding 80% of the national per capita income, based on best available data.

   Economically Disadvantaged Rural Communities are eligible for an increase in cost share up to 90% federal / 10% non-federal.

   The following entities, having met all other eligibility requirements as detailed in Section C of this funding opportunity, may work in collaboration with an Economically Disadvantaged Rural Community to build, and submit a subapplication

---

[6] Treasury funds are available through the Coronavirus State and Local Fiscal Recovery Funds (SLFRF) program. According to the U.S. Department of Treasury, the SLFRF program funds available under the "revenue loss" eligible use category (sections 602(c)(1)(C) and 603(c)(1)(C) of the Social Security Act) generally may be used to meet the non-federal cost share or matching requirements of other federal programs. See Coronavirus State & Local Fiscal Recovery Funds: Overview of the Final Rule at https://home.treasury.gov/system/files/136/SLFRF-Final-Rule-Overview.pdf.

**on their behalf**: (1) applicants; or (2) local government subapplicants, including a school district, special district, intrastate district, council of governments (regardless of whether the council of governments is incorporated as a nonprofit corporation under state law), regional or interstate government entity, or agency or instrumentality of a local government. An applicant or subapplicant applying on behalf of an Economically Disadvantaged Rural Community must include as part of the subapplication a letter authorizing the submission. There is no required format for the authorizing letter, but it should contain the following information:

- Point of contact information, including a name, community, address, phone number, and email for the Economically Disadvantaged Rural Community and the applicant or subapplicant applying on their behalf.
- A signature from an authorized representative of the Economically Disadvantaged Rural Community.

An applicant or subapplicant applying on behalf of an Economically Disadvantaged Rural Community will be eligible to receive up to a 90% federal cost share and are eligible for points in Technical Evaluation Criteria.

Applicants and subapplicants who apply as an Economically Disadvantaged Rural Community, or applicants and subapplicants who apply on behalf of one, must request the increased federal cost share amount in the Cost Share section of their Capability and Capacity Building activity and hazard mitigation project subapplication(s). Applicants must ensure the "Community" and "Location" sections correctly identify the Economically Disadvantaged Rural Community. Management costs are already 100% funded. Applicants must certify subapplicants' Economically Disadvantaged Rural Community status and provide documentation with the subapplication(s) to justify the increased federal cost share. If documentation is not submitted with the subapplication, then FEMA will provide no more than 75% federal cost share of the total eligible costs.

Federally recognized Tribal nations meeting the definition of an Economically Disadvantaged Rural Community that apply to FEMA directly as applicants are eligible for a 90% federal cost share for their subapplications, which make up their overall BRIC grant application.

c. **Community Disaster Resilience Zones**

The Community Disaster Resilience Zones Act will build disaster resilience across the Nation by prioritizing resilience efforts in vulnerable communities. FEMA designates Community Disaster Resilience Zones in each state based on the highest individual hazard risk ratings in disadvantaged communities most at-risk to natural hazards. These designated zones will receive targeted support to access federal funding to plan for resilience projects that will help them reduce impacts caused by climate change and natural hazards. These zones will also enable communities to work across a range of federal and private sector partners to maximize funding and

provide technical assistance, strengthening community resilience.[7] Hazard mitigation projects and C&CB activities performed within, or that primarily benefit, a designated Community Disaster Resilience Zone, as defined in 42 U.S.C. § 5136(a)(1), are eligible for an increase in BRIC cost share up to 90% federal / 10% non-federal with the goal to lessen the financial burden on communities to perform resilience-related activities.

Designated zones are published by FEMA on the website.[8]  Community Disaster Resilience Zones are defined at the level of the census tract, which is the smallest geographic unit for which reliable, nationwide data exist to support risk ratings, and a proposed project may include a benefiting area covering portions of census tracts or multiple census tracts. Applicants should confirm the "Community" and "Location" sections correctly identify the Community Disaster Resilience Zones benefitting. Hazard mitigation projects located within, or with at least 50% or more of the total project benefiting the population (identified using a weighted population formula) within Community Disaster Resilience Zones, are eligible for increased cost share and points in the Technical Evaluation Criteria. Project scoping subapplications submitted to the National Competition located within, or that primarily benefit, a designated Community Disaster Resilience Zone are eligible for increased cost share and points in the Technical Evaluation Criteria; all other C&CB activities are eligible for increased cost share only.

Applicants are encouraged to utilize the Community Disaster Resilience Zones designation to better support areas with the highest natural hazard risk and a relatively lower capacity to withstand natural hazard impacts.

d. **Insular Areas**
For insular areas, including American Samoa, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands, FEMA automatically waives the non-federal cost share for the recipient when the non-federal cost share for the entire award is under $200,000. If the non-federal cost share for the entire award is $200,000 or greater, FEMA may waive all or part of the non-federal cost share at the request of the recipient. The recipient may request the waiver in its application.

## D. Application and Submission Information
## 1. Key Dates and Times

    a. *Application Start Date:*    **01/06/2025**

    b. *Application Submission Deadline:*    **04/18/2025 at 03:00 PM ET**

All applications **must** be received by the established deadline. Please note that FEMA deadlines listed in this NOFO refer to application deadlines for the applicants. Subapplicants

---

[7] https://www.congress.gov/117/crpt/srpt141/CRPT-117srpt141.pdf
[8] https://www.fema.gov/flood-maps/products-tools/national-risk-index/community-disaster-resilience-zones

should consult with their applicant agency to confirm subapplication deadlines to the applicant, if applicable.

FEMA's Grants Outcomes System (FEMA GO) automatically records proof of timely submission and the system generates an electronic date/time stamp when FEMA GO successfully receives the application. The individual with the Authorized Organization Representative role that submitted the application will also receive the official date/time stamp and a FEMA GO tracking number in an email serving as proof of their timely submission. For additional information on how an applicant will be notified of application receipt, see the subsection titled "Timely Receipt Requirements and Proof of Timely Submission" in Section D of this NOFO.

**FEMA will not consider or review applications that are received after the deadline.**

**Applicants experiencing technical problems outside of their control must notify FEMA as soon as possible and before the application deadline and no later than 3:00 PM ET on Wednesday, April 16, 2025.** Failure to timely notify FEMA of the issue that prevented the timely filing of the application may preclude consideration of the award. "Timely notification" of FEMA means the following: prior to the application deadline and within 48 hours after the applicant became aware of the issue. FEMA may extend the application deadline on request for any applicant who can demonstrate that good cause exists to justify extending the deadline.

A list of FEMA contacts can be found in Section G of this NOFO, "DHS Awarding Agency Contact Information." For technical assistance with the FEMA GO system, please contact the FEMA GO Helpdesk at femago@fema.dhs.gov or (877) 585-3242, Monday through Friday, 9:00 AM – 6:00 PM Eastern Time (ET). For programmatic or grants management questions, please contact your Program Analyst or Grants Management Specialist. If applicants do not know who to contact or if there are programmatic questions or concerns, please contact the fema-grants-news@fema.dhs.gov, Monday through Friday, 9:00 AM – 5:00 PM ET.

**c. Other Key Dates**

| Event | Suggested Deadline for Completion |
|---|---|
| Obtaining Unique Entity Identifier (UEI) number | Four weeks before actual submission deadline |
| Obtaining a valid Employer Identification Number (EIN) | Four weeks before actual submission deadline |
| Creating an account with login.gov | Four weeks before actual submission deadline |
| Registering in SAM or updating SAM registration | Four weeks before actual submission deadline |
| Registering Organization in FEMA GO | Prior to beginning application |
| Submitting complete application in FEMA GO | One week before actual submission deadline |

2. **Agreeing to Terms and Conditions of the Award**
   By submitting an application, applicants agree to comply with the requirements of this NOFO and the terms and conditions of the award, should they receive an award.

3. **Address to Request Application Package**
   Applications are processed through the FEMA GO system. To access the system, go to https://go.fema.gov/.

   Hard copies of the NOFO can be downloaded at Grants.gov or obtained via email from the Awarding Office points of contact listed in Section G of this NOFO, "DHS Awarding Agency Contact Information" or by TTY (800) 462-7585.

4. **Requirements: Obtain a Unique Entity Identifier (UEI) and Register in the System for Award Management (SAM.gov)**
   Each applicant, unless they have a valid exception under 2 CFR §25.110, must:
   a. Be registered in Sam.Gov before application submission.
   b. Provide a valid UEI in its application.
   c. Continue to always maintain an active SAM registration with current information during the federal award process. Note: Per 2 C.F.R. § 25.300, subrecipients are NOT required to go through the full SAM registration process. First-tier subrecipients (meaning entities receiving funds directly from the recipient) are only required to obtain a UEI through SAM, but they are not required to complete the full SAM registration in order to obtain a UEI. Recipients may not make subawards unless the subrecipient has obtained and provided the UEI.

   Lower-tier subrecipients (meaning entities receiving funds passed through by a higher-tier subrecipient) are not required to have a UEI and are not required to register in SAM. Applicants are also not permitted to require subrecipients to complete a full registration in SAM beyond obtaining the UEI.

5. **Steps Required to Obtain a Unique Entity Identifier, Register in the System for Award Management (SAM), and Submit an Application**
   Applying for an award under this program is a multi-step process and requires time to complete. Applicants are encouraged to register early as the registration process can take four weeks or more to complete. Therefore, registration should be done in sufficient time to ensure it does not impact your ability to meet required submission deadlines.

   Please review the table above for estimated deadlines to complete each of the steps listed. Failure of an applicant to comply with any of the required steps before the deadline for submitting an application may disqualify that application from funding.

   To apply for an award under this program, all applicants must:
   a. Apply for, update, or verify their UEI number and Employer Identification Number (EIN) from the Internal Revenue Service;
   b. In the application, provide an UEI number;
   c. Have an account with login.gov;
   d. Register for, update, or verify their SAM account and ensure the account is active before submitting the application;

    e.   Register in FEMA GO, add the organization to the system, and establish the Authorized Organizational Representative (AOR). The organization's electronic business point of contact (eBiz POC) from the SAM registration may need to be involved in this step. For step-by-step instructions, see https://www.fema.gov/media-library/assets/documents/181607;

    f.   Submit the complete application in FEMA GO; and

    g.   Continue to maintain an active SAM registration with current information at all times during which it has an active federal award or an application or plan under consideration by a federal awarding agency. As part of this, applicants must also provide information on an applicant's immediate and highest-level owner and subsidiaries, as well as on all predecessors that have been awarded federal contracts or federal financial assistance within the last three years, if applicable.

Applicants are advised that FEMA may not make a federal award until the applicant has complied with all applicable SAM requirements. Therefore, an applicant's SAM registration must be active not only at the time of application, but also during the application review period and when FEMA is ready to make a federal award. Further, as noted above, an applicant's or recipient's SAM registration must remain active for the duration of an active federal award. If an applicant's SAM registration is expired at the time of application, expires during application review, or expires any other time before award, FEMA may determine that the applicant is not qualified to receive a federal award and use that determination as a basis for making a federal award to another applicant.

Per 2 C.F.R. § 25.110(c)(2)(iii), if an applicant is experiencing exigent circumstances that prevents it from obtaining an UEI number and completing SAM registration prior to receiving a federal award, the applicant must notify FEMA as soon as possible by contacting fema-grants-news@fema.dhs.gov and providing the details of the circumstances that prevent completion of these requirements. If FEMA determines that there are exigent circumstances and FEMA has decided to make an award, the applicant will be required to obtain an UEI number, if applicable, and complete SAM registration within 30 days of the federal award date.

## 6. Electronic Delivery

DHS is participating in the Grants.gov initiative to provide the grant community with a single site to find and apply for grant funding opportunities. DHS encourages or requires applicants to submit their applications online through Grants.gov, depending on the funding opportunity.

For this funding opportunity, FEMA requires applicants to submit applications through FEMA GO.

7. **How to Register to Apply**
   a. **General Instructions:**
      Registering and applying for an award under this program is a multi-step process and requires time to complete. Read the instructions below about registering to apply for FEMA funds. Applicants should read the registration instructions carefully and prepare the information requested before beginning the registration process. Reviewing and assembling the required information before beginning the registration process will alleviate last-minute searches for required information.

      **The registration process can take up to four weeks to complete.** To ensure an application meets the deadline, applicants are advised to start the required steps well in advance of their submission.

      Organizations must have an UEI number, an EIN, an active SAM registration and Grants.gov account to apply for a federal award under this funding opportunity.

   b. **Obtain an UEI Number:**
      All entities applying for funding, including renewal funding, must have a UEI number. Applicants must enter the UEI number in the applicable data entry field on the SF-424 form.

      For more detailed instructions for obtaining a UEI number, refer to: [SAM.gov](SAM.gov).

   c. **Obtain Employer Identification Number**
      All entities applying for funding must provide an Employer Identification Number (EIN). The EIN can be obtained from the IRS by visiting: [https://www.irs.gov/businesses/small-businesses-self-employed/apply-for-an-employer-identification-number-ein-online](https://www.irs.gov/businesses/small-businesses-self-employed/apply-for-an-employer-identification-number-ein-online).

   d. **Create a login.gov account:**
      Applicants must have a login.gov account in order to register with SAM or update their SAM registration. Applicants can create a login.gov account here: [https://secure.login.gov/sign_up](https://secure.login.gov/sign_up).

      Applicants only have to create a login.gov account once. For applicants that are existing SAM users, use the same email address for the login.gov account as with SAM.gov so that the two accounts can be linked.

      For more information on the login.gov requirements for SAM registration, refer to: [https://www.sam.gov/SAM/pages/public/loginFAQ.jsf](https://www.sam.gov/SAM/pages/public/loginFAQ.jsf).

   e. **Register with SAM:**
      In addition to having a UEI number, all organizations must register with SAM. Failure to register with SAM will prevent your organization from applying through FEMA GO. SAM registration must be renewed annually and must remain active throughout the entire grant life cycle.

For more detailed instructions for registering with SAM, refer to
https://sam.gov/content/entity-registration.

Note: As a new requirement per 2 C.F.R. § 25.200, applicants must also provide the
applicant's immediate and highest-level owner, subsidiaries, and predecessors that
have been awarded federal contracts or federal financial assistance within the last
three years, if applicable.

    **I. ADDITIONAL SAM REMINDERS**
Existing SAM.gov account holders should check their account to make sure it is
"ACTIVE." SAM registration should be completed at the very beginning of the
application period and should be renewed annually to avoid being "INACTIVE."
**Please allow plenty of time before the grant application submission deadline
to obtain an UEI number and then to register in SAM. It may be four weeks
or more after an applicant submits the SAM registration before the
registration is active in SAM, and then it may be an additional 24 hours
before FEMA's system recognizes the information.**

It is imperative that the information applicants provide is correct and current.
Please ensure that your organization's name, address, and EIN are up to date in
SAM and that the UEI number used in SAM is the same one used to apply for all
other FEMA awards. Payment under any FEMA award is contingent on the
recipient's having a current SAM registration.

    **II. HELP WITH SAM**
The SAM quick start guide for new recipient registration and SAM video tutorial
for new applicants are tools created by the General Services Administration
(GSA) to assist those registering with SAM. If applicants have questions or
concerns about a SAM registration, please contact the Federal Support Desk at
https://www.fsd.gov/fsd-gov/home.do or call toll free (866) 606-8220 Monday -
Friday 8 a.m. to 8 p.m. ET.

**f. Register in FEMA GO, Add the Organization to the System, and Establish the
AOR:**
Applicants must register in FEMA GO and add their organization to the system. The
organization's electronic business point of contact (eBiz POC) from the SAM
registration may need to be involved in this step. For step-by-step instructions, see
https://www.fema.gov/grants/guidance-tools/fema-go/startup.

Note: FEMA GO will support only the most recent major release of the following
browsers:
- Google Chrome
- Mozilla Firefox
- Apple Safari
- Microsoft Edge

*FY 2024 BRIC NOFO*

Users who attempt to use tablet type devices or other browsers may encounter issues with using FEMA GO.

8. **Submitting the Final Application**

Applicants will be prompted to submit the standard application information and any program-specific information required as described in Section D.10. of this NOFO, "Content and Form of Application Submission." The Standard Forms (SF) may be accessed in the Forms tab under the SF-424 family on Grants.gov Applicants should review these forms before applying to ensure they have all the information required.

After submitting the final application, FEMA GO will provide either an error message or a successfully received transmission in the form of an email sent to the AOR that submitted the application. Applicants using slow internet connections, such as dial-up connections, should be aware that transmission can take some time before FEMA GO receives your application.

For additional application submission requirements, including program-specific requirements, please refer to the subsection titled "Content and Form of Application Submission" under Section D of this NOFO.

9. **Timely Receipt Requirements and Proof of Timely Submission**

All applications must be completed in FEMA GO by the application deadline. FEMA GO automatically records proof of timely submission and the system generates an electronic date/time stamp when FEMA GO successfully receives the application. The individual with the AOR role that submitted the application will also receive the official date/time stamp and a FEMA GO tracking number in an email serving as proof of their timely submission on the date and time that FEMA GO received the application.

**Applicants who experience system-related issues will be addressed until 3:00 PM ET on Wednesday, April 16, 2025.** No new system-related issues will be addressed after this deadline. Applications not received by the application submission deadline will not be accepted.

10. **Content and Form of Application Submission**
    a. **Standard Required Application Forms and Information**

    Generally, applicants have to submit either the non-construction forms (i.e., SF-424A and SF-424B) or construction forms (i.e., SF-424C and SF-424D), meaning that applicants that only have construction work and do not have any non-construction work need only submit the construction forms (i.e., SF-424C and SF-424D) and not the non-construction forms (i.e., SF-424A and SF-424B), and vice versa. However, applicants who have <u>both</u> construction <u>and</u> non-construction work under this program need to submit both the construction and non-construction forms.

    The following forms or information are required to be submitted via FEMA GO. They are automatically generated in FEMA GO; no additional attachment is needed. The Standard Forms (SF) are also available at https://grants.gov/forms/forms-repository/sf-424-family

- **SF-424, Application for Federal Assistance**
- **Grants.gov Lobbying Form, Certification Regarding Lobbying**
- **SF-424A, Budget Information (Non-Construction)**
- **For construction under an award, submit SF-424C, Budget Information (Construction)**, in addition to or instead of SF-424A
- **SF-424B, Standard Assurances (Non-Construction)**
- **For construction under an award, submit SF-424D, Standard Assurances (Construction)**, in addition to or instead of SF-424B
- **SF-LLL, Disclosure of Lobbying Activities**

**b. Program-Specific Required Forms and Information**

The following program-specific forms or information are required to be submitted in FEMA GO:

- Applicants may require their subapplicants to complete the grant application and/or Assurances and Certifications forms to their Capability and Capacity Building activity and hazard mitigation project subapplications generated in the FEMA GO system.
- Subapplicants should contact their applicant agency for information specific to their state/territory's/tribe's application process. Contact information is available on the State Hazard Mitigation Officers webpage.
- All applicants must submit a BRIC grant application via FEMA GO by the application deadline to be considered for funding. The required format for BRIC applications and subapplications is built into FEMA GO.

**I. MANAGEMENT COSTS**

Applicant requests for management costs must be submitted in a separate management costs subapplication in FEMA GO.

Applicants may submit up to 10% of the application budget inclusive of subapplicant management costs for applicants to administer and manage award and subaward activities. The subapplicant management costs (up to 5%) must be added to the subapplication total budget prior to the calculation of the applicant management costs (up to 10%).

Subapplicants may submit up to 5% of the total budget of the Capability and Capacity Building activity or hazard mitigation project for subapplicant management costs. The total budget refers to the sum of non-federal and federal shares of the proposed Capability and Capacity Building activity or hazard mitigation project. Subapplicants must use subapplicant management costs to manage their subaward activities.

Subapplicant management cost activities should be added to the Scope of Work section and identified as a line item in the Cost Estimate section of the subapplication in FEMA GO. The BRIC Program will review and track subapplications that request Subrecipient Management Cost (SRMC). If a

subapplicant did not submit SRMC, then a reserve will be created for the
subapplicant to request after selections are announced (and if applicable).

## 11. Other Submission Requirements

### a. Benefit-Cost Analysis (BCA) for Hazard Mitigation Projects

Applicants and subapplicants applying for hazard mitigation projects must provide a
BCA or other documentation that validates cost-effectiveness. Through the
development of the BCA Toolkit, FEMA created a standardized methodology,
specific to mitigation activities, to ensure consistency across applicant and
subapplicant benefit cost analyses. In addition to the BCA Toolkit, FEMA provides
several streamlined methodologies to demonstrate cost-effectiveness; applicants and
subapplicants should use one of the three standard approaches. In no case will FEMA
award a hazard mitigation project that is not cost-effective.

Further details on hazard mitigation project cost-effectiveness can be found in the
HMA Guide, Part 5. Cost-Effectiveness or on the Benefit-Cost Analysis webpage.

### b. Go/No-Go Milestones

The subapplicant, in coordination with the applicant, must identify at least one or
more Go/No-Go milestones in the work schedule for hazard mitigation projects
submitted to the national competition that FEMA will review and approve. Hazard
mitigation projects submitted under the State/Territory Allocation or Tribal Set-Aside
do not require Go/No-Go milestones. A Go/No-Go milestone is a major milestone in
the project that if not completed on time may result in a cancellation of the subaward.
Progress towards meeting the Go/No-Go milestones must be reported in the quarterly
progress reports submitted to the recipient and FEMA. At these Go/No-Go
milestones, FEMA will evaluate project performance, schedule adherence, and
contribution to FEMA's program goals and objectives.

### c. National Environmental Policy Act Requirements for Hazard Mitigation Projects

Applicants and subapplicants applying for hazard mitigation projects must provide
information needed to comply with the National Environmental Policy Act (NEPA)
(42 U.S.C. §§ 4321–4370h) and the related Department of Homeland Security and
FEMA instructions and directives: DHS Directive 023-01, DHS Instruction Manual
023-01-001-01, FEMA Directive 108-1, and FEMA Instruction 108-1-1. The required
information is included in the subapplication in FEMA GO. Environmental Historic
Preservation Job Aids and Supplements are available on the Hazard Mitigation
Assistance Job Aids and Environmental & Historic Preservation Guidance for FEMA
Grant Applications webpages. The required information is included in the
subapplication in FEMA GO.

### d. Acquisition Project Requirements

The subrecipient must provide FEMA with a signed copy of the Statement of
Voluntary Participation for each property post-award. The Statement of Voluntary

Participation formally documents the Notice of Voluntary Interest and information related to the purchase offer.

In undertaking a larger-scale migration or relocation effort that is intended to move structures out of high-risk areas, the subapplicant should consider how it can protect and sustain the impacted community and its assets. Accordingly, subapplicants must demonstrate to FEMA how they will resettle such areas in a way that mitigates future risk from natural hazards and increasing insurance costs through mechanisms such as: new land use development plans; building codes or construction requirements; protective infrastructure development; or restrictions on future disaster assistance to such properties.

Subrecipients must apply deed-restriction language to all acquired properties to ensure that the property is maintained in perpetuity as open space consistent with the conservation of natural floodplain functions, as agreed to by their accepting FEMA hazard mitigation award funding. Deed-restriction language is applied to acquired properties by recording the open space and deed restrictions per the FEMA Model Deed Restriction. Subrecipients, as well as recipients and FEMA, are responsible for enforcing open space restrictions pursuant to 44 C.F.R. Part 80 requirements.

## 12. Intergovernmental Review

An intergovernmental review may be required. Applicants must contact their state's Single Point of Contact (SPOC) to comply with the state's process under Executive Order 12372.

## 13. Funding Restrictions and Allowable Costs

All costs charged to federal awards (including both federal funding and any non-federal matching or cost sharing funds) must comply with applicable statutes, rules and regulations, and policies, this NOFO, and the terms and conditions of the federal award. They must also comply with the Uniform Administrative Requirements, Cost Principles, and Audit Requirements at 2 C.F.R. Part 200 unless otherwise indicated in the NOFO or the terms and conditions of the federal award. This includes, among other requirements, that costs must be incurred and products and services must be delivered within the budget period. 2 C.F.R. § 200.403(h) (referring to budget periods, which for FEMA awards is the same as the period of performance). The following identifies a list of activities for which a recipient may not use federal funds and any cost sharing or matching funds under federal awards:

- Matching or cost sharing requirements for other federal grants and cooperative agreements (see 2 C.F.R. § 200.306)
- Lobbying or other prohibited activities under 18 U.S.C. § 1913 or 2 C.F.R. § 200.450
- Prosecuting claims against the federal government or any other government entity (see 2 C.F.R. § 200.435) See subsections below for information on any other funding restrictions.

   **a. Prohibitions on Expending FEMA Award Funds for Covered Telecommunications Equipment or Services**
   Recipients, subrecipients, and their contractors must comply with the prohibitions set forth in Section 889 of the John S. McCain National Defense Authorization Act for

*FY 2024 BRIC NOFO*

Fiscal Year 2019, Pub. L. No. 115-232 (2018) (FY 2019 NDAA) and 2 C.F.R. §§ 200.216, 200.327, 200.471, and Appendix II to Part 200, Title 2. The FY 2019 NDAA and these regulations, as they apply to recipients, subrecipients, and their contractors and subcontractors, provide for two distinct prohibitions: (1) prevent the use of federal award funds to procure or obtain covered telecommunications equipment or services; and (2) prevent the use of federal award funds to contract with an entity that uses such covered telecommunications equipment or services. Guidance is available at FEMA Policy #405-143-1 - Prohibitions on Expending FEMA Award Funds for Covered Telecommunications Equipment or Services.

Additional guidance is available at Contract Provisions Guide: Navigating Appendix II to Part 200 - Contract Provisions for Non-Federal Entity Contracts Under Federal Awards (fema.gov).

FEMA recipients and subrecipients **may not** use any FEMA funds under open or new awards to:
- Procure or obtain any equipment, system, or service that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology of any system;
- Enter into, extend, or renew a contract to procure or obtain any equipment, system, or service that uses covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology of any system; or
- Enter into, extend, or renew contracts with entities that use covered telecommunications equipment or services as a substantial or essential component of any system, or as critical technology as part of any system.

I. **DEFINITIONS**
Per section 889(f)(2)-(3) of the FY 2019 NDAA and 2 C.F.R. § 200.216, covered telecommunications equipment or services means:
   i. Telecommunications equipment produced by Huawei Technologies Company or ZTE Corporation, (or any subsidiary or affiliate of such entities);
   ii. For the purpose of public safety, security of Government facilities, physical security surveillance of critical infrastructure, and other national security purposes, video surveillance and telecommunications equipment produced by Hytera Communications Corporation, Hangzhou Hikvision Digital Technology Company, or Dahua Technology Company (or any subsidiary or affiliate of such entities);
   iii. Telecommunications or video surveillance services provided by such entities or using such equipment; or
   iv. Telecommunications or video surveillance equipment or services produced or provided by an entity that the Secretary of Defense, in consultation with the Director of National Intelligence or the Director of the Federal Bureau of Investigation, reasonably believes to be an

*FY 2024 BRIC NOFO*

entity owned or controlled by, or otherwise connected to, the People's Republic of China.

Examples of the types of products covered by this prohibition include phones, internet, video surveillance, and cloud servers when produced, provided, or used by the entities listed in the definition of "covered telecommunications equipment or services." *See* 2 C.F.R. § 200.471.

**b. Pre-Award Costs**

Pre-award costs directly related to developing the BRIC grant application or subapplication that are incurred prior to the date of the grant award are allowed subject to FEMA approval at time of award. Such costs may have been incurred prior to application submission, for example gathering data to be used for preparing environmental reviews required by NEPA or developing a BCA (see Section D), preparing design specifications, or conducting workshops or meetings related to development and submission of subapplications. To be eligible for BRIC funding, pre-award costs must be identified in an individual line item in the cost estimate of the subapplication.

Pre-award costs may be cost shared or applicants and subapplicants may identify them as their non-federal cost share (see Section C).

Costs associated with implementation of proposed projects in the submitted grant application or subapplication that are incurred prior to the date of the grant award are not allowed. Activities initiated or completed prior to the date of the grant award are generally not eligible.

If any pre-award activities related to developing a BRIC grant application or subapplication result in ground disturbance, the applicant or subapplicant must comply with all applicable federal, state, and local laws and obtain any applicable environmental permits and clearances. The applicant or subapplicant must ensure monitoring of ground disturbance, and if any potential archaeological resources are discovered, work will immediately cease, and the appropriate state authority will be notified.

Applicants and subapplicants who are not awarded awards or subawards will not receive reimbursement for the corresponding pre-award costs.

**c. Management Costs**

In addition to funding received as described in Section B.1., subapplicants may submit up to 5% of the total budget of the Capability and Capacity Building activity or hazard mitigation project for subapplicant management costs. The total budget refers to the sum of non-federal and federal shares of the proposed Capability and Capacity Building activity or hazard mitigation project. Subapplicants must use subapplicant management costs to manage their subaward activities. Subapplicant

management cost activities must be added to the Scope of Work section and identified as a line item in the Cost Estimate section of subapplications in FEMA GO.

Applicants may submit up to 10% of the application budget inclusive of subapplicant management costs for applicants to administer and manage award and subaward activities. Applicant requests for management costs must be submitted in a separate management costs subapplication in FEMA GO (*see* Section D.10.).

The subapplicant management costs (up to 5%) must be added to the subapplication total budget prior to the calculation of the applicant management costs (up to 10%).

If the applicant is also implementing the award as the subapplicant, the applicant is allowed to claim subapplicant (up to 5%) and applicant management costs (up to 10%). Uses of the applicant management costs must be distinct from subapplicant management costs and must adhere to the stated uses, even if being used by the same entity. The total management costs still may not exceed 15% of the total award.

Management costs are governed by section 324 of the Stafford Act (42 U.S.C. § 5165b). Management costs are any indirect costs, any direct administrative costs, and other administrative expenses that are reasonably incurred in administering an award or subaward. Eligible applicant or subapplicant management cost activities may include:

- Solicitation, review, and processing of subapplications and subawards
- Subapplication development and technical assistance to subapplicants regarding feasibility and effectiveness and BCA
- Geocoding hazard mitigation projects identified for further review by FEMA
- Delivery of technical assistance (e.g., plan reviews, planning workshops, training) to support the implementation of hazard mitigation activities
- Managing awards (e.g., quarterly reporting including managing Go/No-Go milestones for hazard mitigation projects submitted under the national competition, closeout)
- Technical monitoring (e.g., site visits, technical meetings)
- Purchase of equipment, per diem and travel expenses, and professional development that is directly related to the implementation of HMA programs
- Staff salary costs directly related to performing the activities listed above

**E. Application Review Information**
**1. Application Evaluation Criteria**
    **a. Programmatic Criteria**
        **I. ELIGIBILITY AND COMPLETENESS PROGRAMMATIC REVIEW CRITERIA**
        For all activities/projects under all applications, including for the State/Territory Allocation, Tribal Set-Aside, and national competition FEMA will review applications and subapplications submitted by each applicant to ensure:

        - Eligibility of the applicant and subapplicant;

- Eligibility of proposed activities and costs;
- Complete Scope of Work;
- Cost-effectiveness (BCA), streamlined cost-effectiveness, BCA assistance of hazard mitigation projects;
- Technical feasibility of hazard mitigation projects;
- Line-item budget;
- Eligibility and availability of the non-federal cost share; and
- Consistency with approved State Mitigation Plan and Local and/or Tribal Hazard Mitigation Plan for hazard mitigation projects.

Subapplicants are exempt from the hazard mitigation plan requirement for the following Capability and Capacity Building activity types: (1) hazard mitigation planning and planning related activities, (2) partnerships, (3) building codes, and (4) project scoping.

II. **ADDITIONAL PROGRAMMATIC REVIEW FOR THE NATIONAL COMPETITION**
Subapplications submitted to the national competition that pass the eligibility and completeness programmatic review will be scored with technical evaluation criteria and may be scored with qualitative evaluation criteria, if applicable.

If the total requested federal share for the eligible project scoping subapplications submitted to the national competition is under the available budget (10% of the national competition), no scoring will be necessary since all the eligible project scoping subapplications could be selected. If requested funds are above the available competitive project scoping budget (oversubscription), project scoping subapplications will be scored using existing program evaluation criteria as described below against other project scoping subapplications.

If needed, based on the number of project subapplications submitted to the BRIC program national competition, FEMA will use the technical evaluation criteria scoring as a program priority screening tool for the qualitative evaluation criteria review. FEMA will send project subapplications valued at three times the amount of available funding and all subapplications for projects within or primarily benefiting Community Disaster Resilience Zones to the BRIC National Review Panel.

At least one eligible project subapplication from each applicant will be sent to the National Review Panel for review.

Similar to other project scoping subapplications in the program, the project scoping submitted to the national competition will not be evaluated for technical feasibility or cost-effectiveness, and therefore will not be sent to the National Technical Review Panel for review.

<u>**Technical Evaluation Criteria**</u>

As set forth in the table below, FEMA will score subapplications using technical evaluation criteria, offering incentives for elements valued by FEMA. To ensure transparency and efficiency in competition selection, technical evaluation criteria awards binary points (full points or zero points) for each criterion or tiered points (points allotted for the element of the criterion met).

| | **Technical Evaluation Criteria for the National Competition** | |
|---|---|---|
| | **Criteria** | **Potential Total Points** |
| 1 | Infrastructure project[9] | 15 |
| 2 | Incorporation of nature-based solutions for hazard mitigation.[10] Subapplication includes a neighborhood or site scale nature-based solution(s), or structural seismic activity. | 5 |
| | OR | OR |
| | Subapplication includes watershed or landscape scale nature-based solution(s) including those that support coastal resilience. | 15 |
| 3 | **Sub-criterion 3.1 – Building Code Adoption and Enforcement** <br> a. <u>Building Code Adoption</u> <br>   i.   The subapplication will receive 5 points if the community where the project will be developed has locally adopted building codes based on both the International Building Code (IBC) and the International Residential Code (IRC) model codes published by the International Code Council (ICC). To obtain these points, both codes have to be 2018, 2021or 2024. [5 points] | 5 <br><br><br><br><br><br> AND |
| |   ii.  The subapplication will receive an additional 5 points if the locally adopted building codes by the community are based on the applicant's mandatory state-, tribal-, territory-wide adoption of building codes based on both the International Building Code (IBC) and the International Residential Code (IRC) model codes published by the International Code Council (ICC). To obtain these points, both codes have to be 2018, 2021or 2024. [5 points] | 5 <br><br><br><br><br><br><br> AND |
| | b. <u>Building Code Enforcement</u> – Subapplicant has Building Code Effectiveness Grading Schedule (BCEGS) Rating of 1 to 5. [10 points] | 10 <br><br> OR |

---

[9] BRIC Policy FP-104-008-05 defines infrastructure as "critical physical structures, facilities, and systems that provide support to a community, its population, and economy." This definition includes natural systems.

[10] For more information, examples, and descriptions of categories and scales of potential nature-based solutions, please reference the <u>HMA Guide, Part 12, A. Overarching Philosophy: Undertaking Mitigation with Nature-Based Solution Techniques</u>, and guidance publications available on the <u>FEMA Nature-Based Solutions webpage.</u>

| | Technical Evaluation Criteria for the National Competition | |
|---|---|---|
| | **Sub-criterion 3.2 – Alternative Higher Standards**<br>Any subapplicant that has not received points under Sub-criterion 3.1 could receive 5 points by providing a narrative demonstrating that they hold higher standards for the primary hazard they have identified in their subapplication.<br><br>Below is a non-exhaustive list of examples for higher standards that could be considered under this sub-criterion:<br>• Prohibition of fill within floodway and/or floodplain<br>• Requiring at least 2 foot of freeboard in all Special Flood Hazard Areas<br>• Prohibition of siting/placement of critical facilities within the 0.2-percent-annual-chance-floodplain (aka 500-year floodplain)<br>• Coastal Zone (V Zone) development requirements, including open foundations, seaward of identified Limits of Moderate Wave Action (LiMWA)<br>• Utilizing a higher risk category as defined in the International Code Council's International Building Code<br>• Utilizing a higher importance factor for the primary hazard as defined in the American Society of Civil Engineers' Minimum Design Loads and Associated Criteria for Buildings and Other Structures (ASCE 7) | 5 |
| 4 | Application generated from a previous[11] FEMA HMA project scoping award or any other federal grant award, or the subapplicant is a past recipient of BRIC DTA. | 10 |
| 5 | Application covers a project that is located within or primarily benefits: | |
| | a. A Justice40 community or communities, including any geographically defined community or communities identified as disadvantaged by the Climate and Economic Justice Screening Tool (CEJST). | 30 |
| | OR | OR |
| | b. Designation as an Economically Disadvantaged Rural Community (as defined in 42 U.S.C. § 5133(a) as a small impoverished community) or a federally recognized Tribal government, or a subapplication within or that primarily benefits a Community Disaster Resilience Zone (as defined in 42 U.S.C. § 5136(a)(1)). | 40 |
| | Note: A subapplication receives the maximum of 40 points if it is identified by both Justice40 and Community Disaster Resilience Zone. | |

---

[11] To receive the points for an application being generated from an HMA Advance Assistance or project scoping award, or any other federal grant award please answer "Yes" to the question in FEMA GO that asks "Was this created from a previous FEMA HMA Project Scoping award?" and attach a PDF of the award letter to the application and provide the name of the attached file in the free text field that asks "If yes, please provide the project identifier."

For more information regarding an applicant's code adoption status, please visit the FEMA Building Code Adoption Tracking webpage.

Applicants should ensure the "Community" and "Location" sections correctly identify the benefitting communities to qualify Justice40, Economically Disadvantaged Rural Community, or Community Disaster Resilience Zone points in Technical Evaluation Criterion 5 (see Section C.5. in this funding opportunity for more information).

For additional information on technical evaluation criteria refer to the Program Support Material (PSM) Resources for the BRIC Grant Program webpage or contact your Regional Office.

**Qualitative Evaluation Criteria**
In order to increase transparency in decision-making while building capability and partnerships, FEMA will convene a National Review Panel to score subapplications based on qualitative evaluation criteria. The qualitative criteria are narrative submissions to allow subapplicants the flexibility to fully explain the strengths of the proposed project. Qualitative evaluation criteria have graded scales of point scoring.

| | Qualitative Evaluation Criteria for the National Competition | | |
|---|---|---|---|
| | **Topic** | **Criteria** | **Potential Total Points** |
| 1 | **Risk Reduction/Resilience Effectiveness** | The subapplication should detail in the Scope of Work section of FEMA GO how the project will: <br><br> 1) Effectively reduce risk - Identify the risk(s) being reduced and state what action will reduce the identified risk. <br><br> 2) Increase resilience within the community based on their primary natural hazard risk (including the benefits quantified in the BCA) - Detail ability to prepare for anticipated hazards, adapt to changing conditions, and withstand and recover rapidly from disruption. <br><br> 3) Realize ancillary benefits - Identify benefits other than the project's primary risk reduction objective. | 30 |
| 2 | **Climate Change and Other Future Conditions** | The subapplication should detail in the Evaluation section of FEMA GO how the project will: | 20 |

| | | Qualitative Evaluation Criteria for the National Competition | |
|---|---|---|---|
| | | 1) Enhance climate adaptation - Identify the climate change risk(s) being addressed and what action will reduce the identified risk(s). 2) Respond to the effects of climate change - Detail how aspects of the project will reduce the effects of the identified climate change risk(s). 3) Respond to the effects of other future conditions - Describe any other future conditions the project addresses including but not limited to population/demographic/employment changes, land use/development shifts, increased intensity/frequency of natural hazards etc. 4) Cite data sources, assumptions, and models - Include relevant information supporting identified climate change and other future conditions such as data sources, studies, models, etc. | |
| 3 | **Implementation Measures** | The subapplication should detail in the Scope of Work section of FEMA GO how the project will: 1) How the costs will be managed - Describe the processes by which projects costs will be managed including any identified challenges or obstacles. 2) How the schedule will be managed - Provide a description of the project schedule and the measures taken to manage the schedule including any identified challenges. 3) How the project will be successfully implemented, and any innovative techniques incorporated - Detail any pre- and post-implementation monitoring strategies being used and how progress will be measured. Describe any innovative techniques implemented. | 15 |

| | | Qualitative Evaluation Criteria for the National Competition | |
|---|---|---|---|
| | | 4) Technical and managerial staff and resources available - Identify any technical and managerial staff and resources utilized to successfully implement the project.<br><br>5) Whether and how strong labor standards are incorporated - Describe any strong labor standards incorporated to ensure high-quality work, avert disruptive and costly delays, and promote efficiency. | |
| 4 | **Population Impacted** | The subapplication should detail in the Scope of Work section of FEMA GO how the project will:<br>1) Provide community-wide benefits - Describe how the project will positively benefit the community as a whole.<br><br>2) What proportion of the population will be impacted -  Provide details about the population impacted,  including any disadvantaged communities as referenced in Executive Order 14008 and identified as disadvantaged by CEJST.<br><br>3) How the project was selected and designed to maximize positive benefits - Describe how the project will maximize positive impacts and minimize burdens to any disadvantage community.<br><br>4) How the proposed project clearly benefits a disadvantaged community or communities - Detail specific benefits any identified disadvantaged community will gain from the implementation of the project. | 25 |
| 5 | **Community Engagement and Other Outreach Activities** | The subapplication should detail in the Scope of Work section of FEMA GO how the project addresses:<br><br>1) Outreach strategies and supporting activities appropriate to the project and community that advance hazard mitigation - Describe how public outreach and engagement was utilized to inform the community and gain feedback on the project. | 5 |

| | | Qualitative Evaluation Criteria for the National Competition | |
|---|---|---|---|
| | | 2) Types of community planning processes leveraged - Describe what planning processes were leveraged during the development of the project proposal to advance hazard mitigation.<br><br>3) How input from a diverse range of stakeholders, including people from disadvantaged communities, was gathered and incorporated into project concept and design - Describe method for gathering stakeholder feedback and how feedback was utilized in the development of the project.<br><br>4) How community planning and partner input will continue to be used to help direct project execution - Describe plan and process for how the community will continue to be involved throughout the project's implementation. | |
| 6 | **Leveraging Partners** | The subapplication should detail in the Evaluation section of FEMA GO how the project addresses:<br><br>1) Partnerships (e.g., state, territory, tribal, private, district, local community) that will ensure the project meets community needs - Identify partners involved at any stage in the implementation of the project.<br><br>2) Explain how these partnerships benefit disadvantaged communities - Describe in detail how the partnership specifically benefits any identified disadvantaged community.<br><br>3) Explanation on the anticipated outcome of those partnerships - Describe partnership involvement, for example, leveraging resources, such as financial, material, and educational resources; coordinating multi-jurisdictional projects; and a heightened focus on equity-related issues. | 5 |

Further details on qualitative evaluation criteria can be found on the BRIC
Program Resources webpage or through your Regional Office.

**b. Financial Integrity Criteria**

Prior to making a federal award, FEMA is required by 31 U.S.C. § 3354, as enacted by the Payment Integrity Information Act of 2019, Pub. L. No. 116-117 (2020); 41 U.S.C. § 2313; and 2 C.F.R. § 200.206 to review information available through any Office of Management and Budget (OMB)-designated repositories of governmentwide eligibility qualification or financial integrity information, including whether SAM.gov identifies the applicant as being excluded from receiving federal awards or is flagged for any integrity record submission.  FEMA may also pose additional questions to the applicant to aid in conducting the pre-award risk review. Therefore, application evaluation criteria may include the following risk-based considerations of the applicant:

i.   Financial stability.
ii.  Quality of management systems and ability to meet management standards.
iii. History of performance in managing federal award.
iv.  Reports and findings from audits.
v.   Ability to effectively implement statutory, regulatory, or other requirements.

**c.  Supplemental Financial Integrity Criteria and Review**
Prior to making a federal award where the anticipated total federal share will be greater than the simplified acquisition threshold, currently $250,000:

i.   FEMA is required by 41 U.S.C. § 2313 and 2 C.F.R. § 200.206(a)(2) to review and consider any information about the applicant, including information on the applicant's immediate and highest-level owner, subsidiaries, and predecessors, if applicable, that is in the designated integrity and performance system accessible through the System for Award Management (SAM), which is currently the Federal Awardee Performance and Integrity Information System (FAPIIS).

ii.  An applicant, at its option, may review information in FAPIIS and comment on any information about itself that a federal awarding agency previously entered.

iii. FEMA will consider any comments by the applicant, in addition to the other information in FAPIIS, in making a judgment about the applicant's integrity, business ethics, and record of performance under federal awards when completing the review of risk posed by applicants as described in 2 C.F.R. § 200.206.

*FY 2024 BRIC NOFO*

## 2. Review and Selection Process
### a. Review Process

#### I. STATE/TERRITORY ALLOCATION

Applicants must rank their subapplications based on evaluation criteria established by the applicant. FEMA will select eligible Capability and Capacity Building activity and hazard mitigation project subapplications from eligible states, territories, and the District of Columbia in order of the applicant's rank (#1–x) to the lowest ranked subapplication that brings the total federal cost share to no more than $2,000,000 per applicant. In FEMA GO, applicants will rank all subapplications (with C&CB activity subapplications ranked highest). Subapplications submitted to the state/territory allocation and subapplications submitted to the National Competition should be categorized and ranked separately.

FEMA may select a subapplication out of priority order (as determined by the total points scored) based on one or more of the following factors: (1) availability of funding; (2) duplication of subapplications; (3) program priorities and policy factors, including geographical distribution and benefiting disadvantaged communities as referenced in EO 14008; or (4) other pertinent information, including past performance on other FEMA awards or grant balances.

Subapplications that have made it through the selections process but will not be funded due to the limited availability of BRIC funding may be reviewed by other FEMA grant programs for eligibility and alternative funding. Additional information may be requested to ensure all applicable programmatic eligibility criteria are met.

#### II. TRIBAL SET-ASIDE

Applicants must rank their subapplications based on evaluation criteria established by the applicant. FEMA will select eligible Capability and Capacity Building activity and hazard mitigation project subapplications not to exceed a total of $50 million. In FEMA GO, applicants will rank all subapplications (with C&CB activity subapplications ranked highest).

In the event that more than $50 million in subapplications are submitted under the Tribal Set-Aside, the Capability and Capacity Building activities and highest-ranked hazard mitigation project subapplications up to $50 million will be selected. Once the $50 million is selected, all remaining tribal hazard mitigation project subapplications will be evaluated under the national competition.

FEMA may select a subapplication out of priority order (as determined by the total points scored) based on one or more of the following factors: (1) availability of funding; (2) duplication of subapplications; (3) program priorities and policy factors, including geographical distribution and benefiting disadvantaged communities as referenced in EO 14008; or (4) other pertinent information, including past performance on other FEMA awards or grant balances.

Subapplications that have made it through the selections process but will not be funded due to the limited availability of BRIC funding may be reviewed by other FEMA grant programs for eligibility and alternative funding. Additional information may be requested to ensure all applicable programmatic eligibility criteria are met.

**III. STATE/TERRITORY BUILDING CODE PLUS-UP**

Applicants must rank their subapplications based on evaluation criteria established by the applicant. FEMA will select eligible building code adoption and enforcement activity subapplications from eligible states, territories, and the District of Columbia in order of the applicant's rank (#1–x) to the lowest ranked subapplication that brings the total federal cost share to no more than $2,000,000 per applicant. Subapplications submitted to the State/Territory Building Code Plus-Up should be categorized and ranked separately from subapplications submitted to the State/Territory Allocation and the National Competition. Building Code Plus-Up funds may only be applied to eligible building code activities including companion codes (ex. energy codes) and may not be used for other BRIC eligible projects or activities. Funds not allocated to eligible building codes activities will result in loss of funds.

Subapplications that have made it through the selections process but will not be funded due to the limited availability of BRIC funding may be reviewed by other FEMA grant programs for eligibility and alternative funding. Additional information may be requested to ensure all applicable programmatic eligibility criteria are met.

**IV. TRIBAL BUILDING CODE PLUS-UP**

Applicants must rank their subapplications based on evaluation criteria established by the applicant. FEMA will select eligible building code adoption and enforcement activity subapplications not to exceed a total of $25 million. Building Code Plus-Up funds may only be applied to eligible building code activities including companion codes (ex. energy codes) and may not be used for other BRIC eligible projects or activities. Funds not allocated to eligible building codes activities will result in loss of funds.

In the event that more than $25 million in subapplications are submitted under the Tribal Building Code Plus-Up, the building code adoption and enforcement activity subapplications up to $25 million will be selected.

Subapplications that have made it through the selections process but will not be funded due to the limited availability of BRIC funding may be reviewed by other FEMA grant programs for eligibility and alternative funding. Additional information may be requested to ensure all applicable programmatic eligibility criteria are met.

**v. NATIONAL COMPETITION**

FEMA will perform the technical evaluation according to the identified technical evaluation criteria and scoring. In FEMA GO, applicants will rank all subapplications. At its discretion, FEMA may consider using the technical evaluation criteria as a program priority screening tool to determine which applications will be reviewed by the National Review Panel for qualitative evaluation depending on the volume of subapplications.

A National Review Panel will perform the qualitative evaluation according to the identified qualitative evaluation criteria and scoring as identified previously. The National Review Panel will include representatives from relevant federal agencies as well as state, local, tribal, and territorial partners.

Projects submitted to the national competition will be evaluated independently from the project scoping activities submitted to the national competition. In the case of projects, a project's cumulative score from both qualitative and technical evaluations will determine its priority order among all projects considered in the national competition. Similarly, when the national competition funding for project scoping activities is oversubscribed and project scoping activities scored, the project scoping subapplication cumulative score from both qualitative and technical evaluations will determine its priority order among all project scoping subapplications considered in the national competition funding for project scoping.

FEMA may select a subapplication out of priority order (as determined by the total points scored) based on one or more of the following factors: (1) availability of funding; (2) duplication of subapplications; (3) program priorities and policy factors, including geographical distribution and benefiting disadvantaged communities as referenced in EO 14008; or (4) other pertinent information, including past performance on other FEMA awards or grant balances.

Subapplications that have made it through the selections process but will not be funded due to the limited availability of BRIC funding may be reviewed by other FEMA grant programs for eligibility and alternative funding. Additional information may be requested to ensure all applicable programmatic eligibility criteria are met.

**b. Selection Status**

After FEMA has completed its review of all subapplications across all activities/projects, it will assign each of them one of the following three statuses:

- **Identified for Further Review (IFFR)** – This means the subapplication is selected and there is available funding under the applicable subtotals. Additional information may be requested from the applicant at this stage that may impact eligibility. Identified for Further Review (IFFR) status does not automatically imply an award will be made.

*FY 2024 BRIC NOFO*

Applicants with Capability and Capacity Building activity and/or hazard mitigation project subapplication(s) that are IFFR that submitted a management costs subapplication in their BRIC grant application (see Section D) are eligible to receive applicant management costs not to exceed 10% of the selected Capability and Capacity Building activity and hazard mitigation project subapplications.

- **Not Selected** – This means the subapplication does satisfy the basic eligibility or completeness requirements. This status does not reflect eligibility determinations made if it was subject to the cost-effectiveness and technical feasibility requirements.
- **Does Not Meet HMA Requirements** – This means the subapplication does not satisfy the eligibility or completeness requirements. This status does not reflect eligibility determinations made if it was subject to the cost-effectiveness and technical feasibility requirements.

**c. Appeals**

An eligible applicant, subapplicant, recipient, or subrecipient may request an appeal of FEMA's denial of its application or subapplication for hazard mitigation projects, management costs, and activities for which there is an indication of a substantive technical or procedural error.[12]

The appeal must be submitted according to the following procedures:
- The applicant or recipient must submit an appeal in writing to FEMA within 60 days after receipt of a notice of the action that is being appealed. The subapplicant or subrecipient must submit its appeal in writing to the applicant or recipient, after which the applicant or recipient must review and evaluate the subapplicant's or subrecipient's appeal before submission to FEMA.
- For denials of applications or subapplications for hazard mitigation projects and activities, the appeal must identify any substantive technical or procedural error committed by FEMA, and FEMA will only consider the information provided in the application or subapplication as supporting documentation.

The applicant, subapplicant, recipient, or subrecipient will be notified in writing of the disposition of the appeal or the need for additional information. All appeal decisions are final.

**F. Federal Award Administration Information**

**1. Notice of Award**

Before accepting the award, the AOR recipient should carefully read the award package. The award package includes instructions on administering the grant award and the terms and conditions associated with responsibilities under federal awards. Recipients must accept all conditions in this NOFO as well as any specific terms and conditions in the Notice of Award to receive an award under this program.

---

[12] For information about appeals of a remedy FEMA has taken for noncompliance see Section H.9. of this funding opportunity, Actions to Address Noncompliance.

FEMA will provide the federal award package to the applicant electronically via FEMA GO. Award packages include an Award Letter, Summary Award Memo, Agreement Articles, and Obligating Document. An email notification of the award package will be sent through FEMA's grant application system to the AOR that submitted the application.

Recipients must accept their awards no later than 30 days from the award date. The recipient shall notify FEMA of its intent to accept and proceed with work under the award through the FEMA GO system.

Funds will remain on hold until the recipient accepts the award through the FEMA GO system and all other conditions of the award have been satisfied or until the award is otherwise rescinded. Failure to accept a grant award within the specified timeframe may result in a loss of funds.

## 2. Administrative and National Policy Requirements

In addition to the requirements in this section and in this NOFO, FEMA may place specific terms and conditions on individual awards in accordance with 2 C.F.R. Part 200.

### a. DHS Standard Terms and Conditions

All successful applicants for DHS grant and cooperative agreements are required to comply with DHS Standard Terms and Conditions, which are available online at: DHS Standard Terms and Conditions.

The applicable DHS Standard Terms and Conditions will be those in effect at the time the award was made. What terms and conditions will apply for the award will be clearly stated in the award package at the time of award.

### b. Ensuring the Protection of Civil Rights

As the Nation works towards achieving the National Preparedness Goal, it is important to continue to protect the civil rights of individuals. Recipients and subrecipients must carry out their programs and activities, including those related to the building, sustainment, and delivery of core capabilities, in a manner that respects and ensures the protection of civil rights for protected populations.

Federal civil rights statutes, such as Section 504 of the Rehabilitation Act of 1973 and Title VI of the Civil Rights Act of 1964, along with DHS and FEMA regulations, prohibit discrimination on the basis of race, color, national origin, sex, religion, age, disability, limited English proficiency, or economic status in connection with programs and activities receiving federal financial assistance from FEMA, as applicable.
The DHS Standard Terms and Conditions include a fuller list of the civil rights provisions that apply to recipients. These terms and conditions can be found in the DHS Standard Terms and Conditions. Additional information on civil rights provisions is available at https://www.fema.gov/about/offices/equal-rights/civil-rights.

53

Monitoring and oversight requirements in connection with recipient compliance with federal civil rights laws are also authorized pursuant to 44 C.F.R. Part 7 or other applicable regulations.

In accordance with civil rights laws and regulations, recipients and subrecipients must ensure the consistent and systematic fair, just, and impartial treatment of all individuals, including individuals who belong to underserved communities that have been denied such treatment.

**c.  Environmental Planning and Historic Preservation (EHP) Compliance**

As a federal agency, FEMA is required to consider the effects of its actions on the environment and historic properties to ensure that all activities and programs funded by FEMA, including grant-funded projects, comply with federal EHP laws, Executive Orders, regulations, and policies, as applicable.

**Recipients and subrecipients proposing projects that have the potential to impact the environment, including, but not limited to, the construction of communication towers, modification or renovation of existing buildings, structures, and facilities, or new construction including replacement of facilities, must participate in the FEMA EHP review process.** The EHP review process involves the submission of a detailed project description along with any supporting documentation requested by FEMA in order to determine whether the proposed project has the potential to impact environmental resources including, but not limited to, threatened or endangered species and historic properties; and identify mitigation measures and/or alternative courses of action that may lessen any impact to those resources.

In some cases, FEMA is also required to consult with other regulatory agencies and the public in order to complete the review process. Federal law requires EHP review to be completed before federal funds are released to carry out proposed projects. FEMA may not be able to fund projects that are not in compliance with applicable EHP laws, Executive Orders, regulations, and policies. FEMA may recommend mitigation measures and/or alternative courses of action to lessen any impact to environmental resources and bring the project into compliance with EHP requirements.

Guidance on the EHP process is found at Environmental Planning and Historic Preservation. The site contains links to various documents including those identifying agency EHP responsibilities and program requirements, such as implementation of the National Environmental Policy Act and other EHP laws, regulations, and Executive Orders. DHS and FEMA EHP policy is also found in the EHP Directive & Instruction.

All FEMA actions, including grant-funded actions, must comply with National Flood Insurance Program criteria or any more restrictive federal, state, or local floodplain management standards or building code (44 CFR § 9.11(d)(6)).

*FY 2024 BRIC NOFO*

For actions located within or that may affect a floodplain or wetland, the following alternatives must be considered: a) no action; b) alternative locations; and c) alternative actions, including alternative actions that use natural features or nature-based solutions. Where possible, natural features and nature-based solutions shall be used. If not practicable as an alternative on their own, natural features and nature-based solutions may be incorporated into actions as minimization measures.

All FEMA-funded new construction, substantial improvement, and repair of substantial damage actions, and all structure elevation, mitigation reconstruction, and dry floodproofing actions under FEMA's HMA programs must be either located outside the Federal Flood Risk Management Standard (FFRMS) floodplain or designed to ensure resilience against flooding up to the FFRMS flood elevation. Structures must be elevated (or if non-residential, elevated, or floodproofed) to the FFRMS flood elevation. Resilience measures for facilities include using structural or nonstructural methods to reduce or prevent damage; elevating a structure; or, where appropriate, designing it to adapt to, withstand, and rapidly recover from a flood event.

See Executive Order 11988, Floodplain Management, as amended by Executive Order 13690, Establishing a Federal Flood Risk Management Standard and a Process for Further Soliciting and Considering Stakeholder Input, and FEMA Policy 206-24-005: Federal Flood Risk Management Standard (FFRMS).

Individual FEMA programs have separate procedures to conduct and document EHP review. Guidance for individual grant programs is available from applicable program offices.

Executive Orders 11988 and 11990: Protection of Wetlands, require that all federal actions in or affecting the floodplain or wetlands be reviewed for opportunities to relocate, and be evaluated for social, economic, historical, environmental, legal and safety considerations. FEMA's regulations at 44 C.F.R. Part 9 implement the EOs and require an 8-step review process if a proposed action is located in a floodplain or wetland or has the potential to affect or be affected by a floodplain or wetland.

The regulation also requires that the federal agency provide public notice of the proposed action at the earliest possible time to provide the opportunity for public involvement in the decision-making process (44 C.F.R. § 9.8). Where there is no opportunity to relocate the federal action, FEMA is required to undertake a detailed review to determine what measures can be taken to minimize future damages to the floodplain or wetland.

Through this NOFO, FEMA is giving initial public notice of grant opportunities that may be funded under the Building Resilient Infrastructure and Communities program, consistent with the requirements of Section 9.8. The public is invited to participate in the process of identifying alternatives to locating a proposed project in the floodplain or wetland and analyzing the impacts of the alternatives on the floodplain or

wetland. Comments may be provided by emailing FEMA-OEHP-NOFOQuestions@fema.dhs.gov within 15 days of BRIC grant selections. While analyzing alternatives, FEMA may determine there are no practicable alternatives to carrying out the proposed work within the floodplain or wetland.  Relocating facilities may not be practicable and could adversely impact affected communities socially and economically.

In addition, no alternative actions may be practicable that serve the same purpose and have less potential to affect or be affected by the floodplain. In the course of developing project proposals, subsequent project specific public notices will be published, if necessary, as more detailed information becomes available.

**d.  Construction Project Requirements**
Acceptance of federal funding requires FEMA, the recipient, and any subrecipients to comply with all federal, state, and local laws and regulations prior to the start of any construction activity. Failure to obtain all appropriate federal, state, and local environmental permits and clearances may jeopardize federal funding. Also:
- Any change to the approved scope of work will require re-evaluation by FEMA for compliance with the NEPA and other laws and executive orders
- If ground-disturbing activities occur during construction, the recipient and any subrecipients must ensure monitoring of ground disturbance, and if any potential archaeological resources are discovered, the subrecipient will immediately cease construction in that area and notify the recipient and FEMA.
  - All mitigation projects must be in conformance with flood insurance requirements. This means that if the project is located in a SFHA: (a) the project must be in a jurisdiction participating in the NFIP; and (b) the property owner(s) must obtain and maintain flood insurance for the life of the structure, regardless of transfer of ownership, in an amount at least equal to the project cost or to the maximum limit of coverage made available with respect to the mitigated property, whichever is less.

**e.  Mandatory Disclosures**
The non-Federal entity or applicant for a Federal award must disclose, in a timely manner, in writing to the Federal awarding agency or pass-through entity all violations of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. (2 CFR 200.113)

Please note applicants and recipients may report issues of fraud, waste, abuse, and mismanagement, or other criminal or noncriminal misconduct to the Office of Inspector General (OIG) hotline. The toll-free numbers to call are 1 (800) 323-8603, and TTY 1 (844) 889-4357.

3. **Reporting**

Recipients are required to submit various financial and programmatic reports as a condition of award acceptance. Future awards and funds drawdown may be withheld if these reports are delinquent.

    a. **Financial Reporting Requirements**

        I. **FEDERAL FINANCIAL REPORT (FFR)**

        Recipients must report obligations and expenditures through the FFR form (SF-425) to FEMA.

        Recipients may review the Federal Financial Reporting Form (FFR) (SF-425) at https://apply07.grants.gov/apply/forms/sample/SF425-V1.0.pdf.

        Recipients must file the FFR electronically using FEMA GO.

        II. **FFR REPORTING PERIODS AND DUE DATES**

        An FFR must be submitted quarterly throughout the POP, including partial calendar quarters, as well as in periods where no grant award activity occurs. The final FFR is due within 120 calendar days after the end of the POP. Future awards and fund drawdowns may be withheld if these reports are delinquent, demonstrate lack of progress, or are insufficient in detail.

        Except for the final FFR due at 120 days after the end of the POP for purposes of closeout, the following reporting periods and due dates apply for the FFR:

| Reporting Period | Report Due Date |
|---|---|
| October 1 – December 31 | January 30 |
| January 1 – March 31 | April 30 |
| April 1 – June 30 | July 30 |
| July 1 – September 30 | October 30 |

    b. **Programmatic Performance Reporting Requirements**

        I. **PERFORMANCE PROGRESS REPORT (PPR)**

        In addition to the FFR reports, recipients must report on the progress of the grant on a quarterly basis to DHS/FEMA using the Quarterly Performance Report in FEMA GO, The Quarterly Performance Reports must be submitted electronically in FEMA GO quarterly throughout the POP, including partial calendar quarters, as well as for periods where no grant award activity occurs. Reports are due within 30 days from the end of the first federal quarter following the initial grant award and thereafter until the grant ends.

    c. **Closeout Reporting Requirements**

        I. **CLOSEOUT REPORTING**

        Within 120 calendar days after the end of the period of performance for the prime award or after an amendment has been issued to close out an award before the

original POP ends, recipients must liquidate all financial obligations and must submit the following:

i.      The final request for payment, if applicable.
ii.     The final FFR (SF-425).
iii.    The final progress report detailing all accomplishments, including a narrative summary of the impact of those accomplishments throughout the period of performance. If applicable the recipient must include with the final progress report an inventory of all construction projects.
v.      Other documents required by this NOFO, terms and conditions of the award, or other FEMA guidance. If the final FFR and performance report periods coincide with the end of the period of performance, FEMA has discretion under 2 C.F.R. Part 200 to waive the last quarterly/semiannual/annual reports and only require the final FFR and performance report for closeout purposes. The recipient is responsible for returning any balances of unobligated or unliquidated funds that have been drawn down that are not authorized to be retained per 2 C.F.R. § 200.344(d).

In addition, pass-through entities are responsible for closing out their subawards as described in 2 C.F.R. § 200.344; subrecipients are still required to submit closeout materials within 90 calendar days of the period of performance end date. When a subrecipient completes all closeout requirements, pass-through entities must promptly complete all closeout actions for subawards in time for the recipient to submit all necessary documentation and information to FEMA during the closeout of the prime award.

After the prime award closeout reports have been reviewed and approved by FEMA, a closeout notice will be completed to close out the grant. The notice will indicate the period of performance as closed, list any remaining funds that will be deobligated, and address the requirement of maintaining the grant records for at least three years from the date of the final FFR. The record retention period may be longer, such as due to an audit or litigation, for equipment or real property used beyond the period of performance, or due to other circumstances outlined in 2 C.F.R. § 200.334.

The recipient is responsible for refunding to FEMA any balances of unobligated cash that FEMA paid that are not authorized to be retained per 2 C.F.R. § 200.344(d).

II.   **ADMINISTRATIVE CLOSEOUT**

Administrative closeout is a mechanism for FEMA to unilaterally move forward with closeout of an award using available award information in lieu of final reports from the recipient per 2 C.F.R. § 200.344(h)-(i). It is a last resort available to FEMA, and if FEMA needs to administratively close an award, this may negatively impact a recipient's ability to obtain future funding. This mechanism can also require FEMA to make cash or cost adjustments and ineligible cost

determinations based on the information it has, which may result in identifying a debt owed to FEMA by the recipient.

When a recipient is not responsive to FEMA's reasonable efforts to collect required reports needed to complete the standard closeout process, FEMA is required under 2 C.F.R. § 200.344(h) to start the administrative closeout process within the regulatory timeframe. FEMA will make at least three written attempts to collect required reports before initiating administrative closeout. If the recipient does not submit all required reports in accordance with 2 C.F.R. § 200.344, this NOFO, and the terms and conditions of the award, FEMA must proceed to administratively close the award with the information available within one year of the period of performance end date. Additionally, if the recipient does not submit all required reports within one year of the period of performance end date, per 2 C.F.R. § 200.344(i), FEMA must report in Contracting Performance Assessment Reporting System (CPARS) the recipient's material failure to comply with the terms and conditions of the award.

If FEMA administratively closes an award where no final FFR has been submitted, FEMA uses that administrative closeout date in lieu of the final FFR submission date as the start of the record retention period under 2 C.F.R. § 200.334.

In addition, if an award is administratively closed, FEMA may decide to impose remedies for noncompliance per 2 C.F.R. § 200.339, consider this information in reviewing future award applications, or apply special conditions to existing or future awards.

### d. Additional Reporting Requirements
#### I. DISCLOSING INFORMATION PER 2 C.F.R. § 180.335
This reporting requirement pertains to disclosing information related to government-wide suspension and debarment requirements. Before a recipient enters into a grant award with FEMA, the recipient must notify FEMA if it knows if it or any of the recipient's principals under the award fall under one or more of the four criteria listed at 2 C.F.R. § 180.335:

- Are presently excluded or disqualified;
- Have been convicted within the preceding three years of any of the offenses listed in 2 C.F.R. § 180.800(a) or had a civil judgment rendered against it or any of the recipient's principals for one of those offenses within that time period;
- Are presently indicted for or otherwise criminally or civilly charged by a governmental entity (federal, state, or local) with commission of any of the offenses listed in 2 C.F.R. § 180.800(a); or
- Have had one or more public transactions (federal, state, or local) terminated within the preceding three years for cause or default.

At any time after accepting the award, if the recipient learns that it or any of its

principals falls under one or more of the criteria listed at 2 C.F.R. § 180.335, the recipient must provide immediate written notice to FEMA in accordance with 2 C.F.R. § 180.350.

**II. REPORTING OF MATTERS RELATED TO RECIPIENT INTEGRITY AND PERFORMANCE**
Appendix XII to Part 200, Title 2 sets forth a term and condition related to recipient integrity and performance matters that will apply to all federal awards under this funding opportunity. If the total value of currently active grants, cooperative agreements, and procurement contracts from all federal awarding agencies exceeds $10,000,000 for any period of time during the period of performance of a federal award under this funding opportunity, then a recipient must maintain the currency of information reported in the Contracting Performance Assessment Reporting System (CPARS) about civil, criminal, or administrative proceedings described in paragraph 2 of Appendix XII at the reporting frequency described in paragraph 4 of Appendix XII.

**III. SINGLE AUDIT REPORT**
A recipient that expends $750,000 or more during the recipient's fiscal year in federal awards (as defined by 2 C.F.R. § 200.1) must have a single audit conducted in accordance with 2 C.F.R. § 200.514 except when it elects to have a program-specific audit conducted in accordance with 2 C.F.R. § 200.501. The audit must be conducted in accordance with 2 C.F.R. Part 200, Subpart F and, as required by 2 C.F.R. § 200.514, in accordance with the U.S. Government Accountability Office (GAO) Generally Accepted Government Auditing Standards, which can be found on the Yellow Book page of the GAO website.

**4. Monitoring and Oversight**
The regulation at 2 C.F.R. § 200.337 provides DHS and any of its authorized representatives with the right of access to any documents, papers, or other records of the recipient [and any subrecipients] that are pertinent to a federal award in order to make audits, examinations, excerpts, and transcripts. The right also includes timely and reasonable access to the recipient's or subrecipient's personnel for the purpose of interview and discussion related to such documents. Pursuant to this right and per 2 C.F.R. § 200.329, DHS may conduct desk reviews and make site visits to review project accomplishments and management control systems to evaluate project accomplishments and to provide any required technical assistance. During site visits, DHS may review a recipient's or subrecipient's files pertinent to the federal award and interview and/or discuss these files with the recipient's or subrecipient's personnel. Recipients and subrecipients must respond in a timely and accurate manner to DHS requests for information relating to a federal award.

Effective monitoring and oversight help FEMA ensure that recipients use grant funds for their intended purpose(s); verify that projects undertaken are consistent with approved plans; and ensure that recipients make adequate progress toward stated goals and objectives. Additionally, monitoring serves as the primary mechanism to ensure that recipients comply

with applicable laws, rules, regulations, program guidance, and requirements. FEMA regularly monitors all grant programs both financially and programmatically in accordance with federal laws, regulations (including 2 C.F.R. Part 200), program guidance, and the terms and conditions of the award. All monitoring efforts ultimately serve to evaluate progress towards grant goals and proactively target and address issues that may threaten grant success during the period of performance.

FEMA staff will periodically monitor recipients to ensure that administrative processes, policies and procedures, budgets, and other related award criteria are meeting Federal Government-wide and FEMA regulations. Aside from reviewing quarterly financial and programmatic reports, FEMA may also conduct enhanced monitoring through either desk-based reviews, onsite monitoring visits, or both. Enhanced monitoring will involve the review and analysis of the financial compliance and administrative processes, policies, activities, and other attributes of each federal assistance award, and it will identify areas where the recipient may need technical assistance, corrective actions, or other support.

Financial and programmatic monitoring are complementary processes within FEMA's overarching monitoring strategy that function together to ensure effective grants management, accountability, and transparency; validate progress against grant and program goals; and safeguard federal funds against fraud, waste, and abuse. Financial monitoring primarily focuses on statutory and regulatory compliance with administrative grant requirements, while programmatic monitoring seeks to validate and assist in grant progress, targeting issues that may be hindering achievement of project goals and ensuring compliance with the purpose of the grant and grant program. Both monitoring processes are similar in that they feature initial reviews of all open awards, and additional, in-depth monitoring of grants requiring additional attention.

Recipients and subrecipients who are pass-through entities are responsible for monitoring their subrecipients in a manner consistent with the terms of the federal award at 2 C.F.R. Part 200, including 2 C.F.R. § 200.332. This includes the pass-through entity's responsibility to monitor the activities of the subrecipient as necessary to ensure that the subaward is used for authorized purposes, in compliance with federal statutes, regulations, and the terms and conditions of the subaward; and that subaward performance goals are achieved.

In terms of overall award management, recipient and subrecipient responsibilities include, but are not limited to: accounting of receipts and expenditures, cash management, maintaining adequate financial records, reporting and refunding expenditures disallowed by audits, monitoring if acting as a pass-through entity, or other assessments and reviews, and ensuring overall compliance with the terms and conditions of the award or subaward, as applicable, including the terms of 2 C.F.R. Part 200.

By accepting the award, all recipients agree to participate in monitoring or an evaluation of this grant, which may include analysis of the impact and providing access to program operating personnel and participants, as specified by the evaluator(s). FEMA, through the BRIC program, encourages investments to protect communities and infrastructure. As part of performance evaluation and monitoring efforts, FEMA may conduct a series of grant

effectiveness and cost-effectiveness case studies jointly with BRIC recipients to highlight how recipients and subrecipients have used the BRIC funds to increase resilience from natural hazards in their jurisdictions.

FEMA will not provide additional federal funding in the event of a cost overrun.

## G. DHS Awarding Agency Contact Information
## 1. Contact and Resource Information
### a. Program Office Contact

General questions about the BRIC program can be directed to the appropriate FEMA Regional Office or State Hazard Mitigation Officer.

Trial nations can find their Regional Tribal Liaison email at the Federally Recognized Tribes webpage. Tribal nations with land that crosses multiple FEMA regions should work with the region in which their Tribal headquarters is located; that will be their primary region of support.

The HMA Helpline is available by telephone 1-866-222-3580 or email fema-hmahelpline@fema.dhs.gov.

For questions about cost-effectiveness and FEMA's BCA software, contact the BC Helpline by telephone 1-855-540-6744 or email BCHelpline@fema.dhs.gov.

The Building Science Helpline is available for guidance on FEMA Building Science publications by email FEMA-BuildingScienceHelp@fema.dhs.gov.

A Helpline for guidance on FEMA Safe Room publications is available by email FEMA-BuildingScienceHelp@fema.dhs.gov.

For questions about NEPA or EHP requirements, the EHP Helpline is available by email FEMA-OEHP-NOFOQuestions@fema.dhs.gov.

Resources intended to help applicants and subapplicants prepare hazard mitigation plans and planning grants are available on FEMA's Mitigation planning webpage at Hazard Mitigation Planning.

FEMA publications that specify the documentation and information necessary for FEMA to review project applications for feasibility and effectiveness, cost-effectiveness, and potential impacts on environmental and cultural resources are available on the FEMA website at https://www.fema.gov/grants/guidance-tools.

### b. FEMA Grants News

FEMA Grants News is a non-emergency comprehensive management and information resource developed by FEMA for grants stakeholders. This channel provides general information on all FEMA grant programs and maintains a comprehensive database containing key personnel contact information at the federal,

state, and local levels. When necessary, recipients will be directed to a federal point of contact who can answer specific programmatic questions or concerns. FEMA Grants News Team can be reached by e-mail at fema-grants-news@fema.dhs.gov OR by phone at (800) 368-6498, Monday through Friday, 9:00 AM – 5:00 PM ET.

**c. FEMA Regional Offices**
FEMA Regional Offices manage, administer, and conduct the application budget review, create the award package, approve, amend, and close out awards, as well as conduct cash analysis, financial and programmatic monitoring, and audit resolution for BRIC. The Regions also provide technical assistance to BRIC recipients.

FEMA Regional Office contact information is available at https://www.fema.gov/fema-regional-contacts.

**d. Civil Rights**
The FEMA Office of Civil Rights (OCR) is responsible for compliance with and enforcement of federal civil rights obligations in connection with programs and services conducted by FEMA and recipients of FEMA financial assistance. All inquiries and communications about federal civil rights compliance for FEMA grants under this NOFO should be sent to FEMA-CivilRightsOffice@fema.dhs.gov.

**e. Environmental Planning and Historic Preservation**
The FEMA Office of Environmental Planning and Historic Preservation (OEHP) provides guidance and information about the EHP review process to FEMA programs and FEMA's recipients and subrecipients. All inquiries and communications about EHP compliance for FEMA grant projects under this NOFO or the EHP review process should be sent to FEMA-OEHP-NOFOQuestions@fema.dhs.gov.

**2. Systems Information**
    **a. FEMA GO**
    For technical assistance with the FEMA GO system, please contact the FEMA GO Helpdesk at femago@fema.dhs.gov or (877) 585-3242, Monday through Friday, 9:00 AM – 6:00 PM ET.

## H. Additional Information
**1. Termination Provisions**
FEMA may terminate a federal award in whole or in part for one of the following reasons. FEMA and the recipient must still comply with closeout requirements at 2 C.F.R. §§ 200.344-200.345 even if an award is terminated in whole or in part. To the extent that subawards are permitted under this NOFO, pass-through entities should refer to 2 C.F.R. § 200.340 for additional information on termination regarding subawards.

    **a. Noncompliance**
    If a recipient fails to comply with the terms and conditions of a federal award, FEMA may terminate the award in whole or in part. If the noncompliance can be corrected, FEMA may first attempt to direct the recipient to correct the noncompliance. This

may take the form of a Compliance Notification. If the noncompliance cannot be corrected or the recipient is non-responsive, FEMA may proceed with a Remedy Notification, which could impose a remedy for noncompliance per 2 C.F.R. § 200.339, including termination. Any action to terminate based on noncompliance will follow the requirements of 2 C.F.R. §§ 200.341-200.342 as well as the requirement of 2 C.F.R. § 200.340(c) to report in FAPIIS the recipient's material failure to comply with the award terms and conditions. See also the section on Actions to Address Noncompliance in this NOFO.

**b. With the Consent of the Recipient**
FEMA may also terminate an award in whole or in part with the consent of the recipient, in which case the parties must agree upon the termination conditions, including the effective date, and in the case of partial termination, the portion to be terminated.

**c. Notification by the Recipient**
The recipient may terminate the award, in whole or in part, by sending written notification to FEMA setting forth the reasons for such termination, the effective date, and in the case of partial termination, the portion to be terminated. In the case of partial termination, FEMA may determine that a partially terminated award will not accomplish the purpose of the federal award, so FEMA may terminate the award in its entirety. If that occurs, FEMA will follow the requirements of 2 C.F.R. §§ 200.341-200.342 in deciding to fully terminate the award.

**2. Program Evaluation**
Federal agencies are required to structure NOFOs that incorporate program evaluation activities from the outset of their program design and implementation to meaningfully document and measure their progress towards meeting agency priority goal(s) and program outcomes.

OMB Memorandum M-21-27, Evidence-Based Policymaking: Learning Agendas and Annual Evaluation Plans, implementing Title I of the Foundations for Evidence-Based Policymaking Act of 2018, Pub. L. No. 115-435 (2019) (Evidence Act), urges federal awarding agencies to use program evaluation as a critical tool to learn, improve equitable delivery, and elevate program service and delivery across the program lifecycle. Evaluation means "an assessment using systematic data collection and analysis of one or more programs, policies, and organizations intended to assess their effectiveness and efficiency." Evidence Act, § 101 (codified at 5 U.S.C. § 311).

As such, recipients and subrecipients are required to participate in a DHS-, Component, or Program Office-led evaluation if selected, which may be carried out by a third-party on behalf of the DHS, its component agencies, or the Program Office. Such an evaluation may involve information collections including but not limited to surveys, interviews, or discussions with individuals who benefit from the federal award program operating personnel, and award recipients, as specified in a DHS-, component agency-, or Program Office-approved evaluation plan. More details about evaluation requirements may be

provided in the federal award, if available at that time, or following the award as evaluation requirements are finalized. Evaluation costs incurred during the period of performance are allowable costs (either as direct or indirect) Recipients and subrecipients are also encouraged, but not required, to participate in any additional evaluations after the period of performance ends, although any costs incurred to participate in such evaluations are not allowable and may not be charged to the federal award.

3. **Period of Performance Extensions**

Extensions to the period of performance (POP) for this program are allowed. Extensions to the POP identified in the award will only be considered through formal, written requests to the recipient's FEMA Regional Office and must contain specific and compelling justifications as to why an extension is required. Recipients are advised to coordinate with the FEMA Regional Hazard Mitigation Assistance Specialist as needed when preparing an extension request.

All extension requests must address the following:
   a. The grant program, fiscal year, and award number;
   b. Reason for the delay –including details of the legal, policy, or operational challenges that prevent the final outlay of awarded funds by the deadline;
   c. Current status of the activity(ies);
   d. Approved POP termination date and new project completion date;
   e. Amount of funds drawn down to date;
   f. Remaining available funds, both federal and, if applicable, non-federal;
   g. Budget outlining how remaining federal and, if applicable, non-federal funds will be expended;
   h. Plan for completion, including milestones and timeframes for achieving each milestone and the position or person responsible for implementing the plan for completion; and
   i. Certification that the activity(ies) will be completed within the extended POP without any modification to the original statement of work, as described in the application and as approved by FEMA.

Extension requests will be granted only due to compelling legal, policy, or operational challenges. Extension requests will only be considered for the following reasons:
   • Contractual commitments by the recipient or subrecipient with vendors prevent completion of the project, including delivery of equipment or services, within the existing POP;
   • The project must undergo a complex environmental review that cannot be completed within the existing POP;
   • Projects are long-term by design, and therefore acceleration would compromise core programmatic goals; or
   • Where other special or extenuating circumstances exist.

Recipients should submit all proposed extension requests to FEMA for review and approval at least 60 days prior to the end of the POP to allow sufficient processing time.

**No additional federal funds will be awarded as part of period of performance extensions.**

4. **Disability Integration**

Pursuant to Section 504 of the Rehabilitation Act of 1973, recipients of FEMA financial assistance must ensure that their programs and activities do not discriminate against qualified individuals with disabilities.

Grant and cooperative agreement recipients should engage with the whole community to advance individual and community preparedness and to work as a nation to build and sustain resilience. In doing so, recipients are encouraged to consider the needs of individuals with disabilities into the activities and projects funded by the grant or cooperative agreement.

FEMA expects that the integration of the needs of people with disabilities will occur at all levels, including planning; alerting, notification, and public outreach; training; purchasing of equipment and supplies; protective action implementation; and exercises/drills.

The following are examples that demonstrate the integration of the needs of people with disabilities in carrying out FEMA awards:

- Include representatives of organizations that work with/for people with disabilities on planning committees, work groups, and other bodies engaged in development and implementation of the grant programs and activities.
- Hold all activities related to the grant in locations that are accessible to persons with physical disabilities and intellectual disabilities to the extent practicable.
- Provide auxiliary aids and services, including American Sign Language interpreters, live captioning, or translation services that provide public information across the community and in shelters.
- Ensure shelter-specific grant funds are in alignment with FEMA's Guidance on Planning for Integration of Functional Needs Support Services in General Population Shelters.
- If making alterations to an existing building to a primary function area utilizing federal funds, complying with the most recent codes and standards, and making path of travel to the primary function area accessible to the greatest extent possible.
- Implement specific procedures used by public transportation agencies that include evacuation and passenger communication plans and measures for individuals with disabilities.
- Identify, create, and deliver training to address any training gaps specifically aimed toward whole-community preparedness. Include and interact with individuals with disabilities, aligning with the designated program capability.
- Establish best practices in inclusive planning and preparedness that consider physical access, needs of individuals with intellectual disabilities, and information access

FEMA grant recipients can fund projects towards the resiliency of the whole community, including people with disabilities, such as training, outreach, and safety campaigns, provided that the project aligns with this NOFO and the terms and conditions of the award.

5. **Conflicts of Interest in the Administration of Federal Awards or Subawards**
   For conflicts of interest under grant-funded procurements and contracts, refer to the section on Procurement Integrity in this NOFO and 2 C.F.R. §§ 200.317 – 200.327.

   To eliminate and reduce the impact of conflicts of interest in the subaward process, recipients and pass-through entities must follow their own policies and procedures regarding the elimination or reduction of conflicts of interest when making subawards. Recipients and pass-through entities are also required to follow any applicable federal and state, local, tribal, or territorial (SLTT) statutes or regulations governing conflicts of interest in the making of subawards.

   The recipient or pass-through entity must disclose to the respective Program Analyst or Program Manager, in writing, any real or potential conflict of interest that may arise during the administration of the federal award, as defined by the federal or SLTT statutes or regulations or their own existing policies, within five days of learning of the conflict of interest. Similarly, subrecipients, whether acting as subrecipients or as pass-through entities, must disclose any real or potential conflict of interest to the recipient or next-level pass-through entity as required by the recipient or pass-through entity's conflict of interest policies, or any applicable federal or SLTT statutes or regulations.

   Conflicts of interest may arise during the process of FEMA making a federal award in situations where an employee, officer, or agent, any members of his or her immediate family, his or her partner has a close personal relationship, a business relationship, or a professional relationship, with an applicant, subapplicant, recipient, subrecipient, or FEMA employees.

6. **Procurement Integrity**
   Through audits conducted by the DHS Office of Inspector General (OIG) and FEMA grant monitoring, findings have shown that some FEMA recipients have not fully adhered to the proper procurement requirements at 2 C.F.R. §§ 200.317 – 200.327 when spending grant funds. Anything less than full compliance with federal procurement requirements jeopardizes the integrity of the grant as well as the grant program. To assist with determining whether an action is a procurement or instead a subaward, please consult 2 C.F.R. § 200.331. For detailed guidance on the federal procurement standards, recipients and subrecipients should refer to various materials issued by FEMA's Procurement Disaster Assistance Team (PDAT), such as the PDAT Field Manual and Contract Provisions Guide. Additional resources, including an upcoming trainings schedule can be found on the PDAT Website: https://www.fema.gov/grants/procurement.

   The below highlights the federal procurement requirements for FEMA recipients when procuring goods and services with federal grant funds. FEMA will include a review of recipients' procurement practices as part of the normal monitoring activities. **All procurement activity must be conducted in accordance with federal procurement standards at 2 C.F.R. §§ 200.317 – 200.327.** Select requirements under these standards are listed below. The recipient and any of its subrecipients must comply with all requirements, even if they are not listed below.

Under 2 C.F.R. § 200.317, when procuring property and services under a federal award, states (including territories) must follow the same policies and procedures they use for procurements from their non-federal funds; additionally, states must now follow 2 C.F.R. § 200.321 regarding socioeconomic steps, 200.322 regarding domestic preferences for procurements, 200.323 regarding procurement of recovered materials, and 2 C.F.R. § 200.327 regarding required contract provisions.

All other non-federal entities, such as tribes (collectively, non-state entities), must have and use their own documented procurement procedures that reflect applicable SLTT laws and regulations, provided that the procurements conform to applicable federal law and the standards identified in 2 C.F.R. Part 200. These standards include, but are not limited to, providing for full and open competition consistent with the standards of 2 C.F.R. § 200.319 and the required procurement methods at § 200.320.

a. **Important Changes to Procurement Standards in 2 C.F.R. Part 200**
States are now required to follow the socioeconomic steps in soliciting small and minority businesses, women's business enterprises, and labor surplus area firms per 2 C.F.R. § 200.321. All non-federal entities should also, to the greatest extent practicable under a federal award, provide a preference for the purchase, acquisition, or use of goods, products, or materials produced in the United States per 2 C.F.R. § 200.322. More information on OMB's revisions to the federal procurement standards can be found in Purchasing Under a FEMA Award: OMB Revisions Fact Sheet.

The recognized procurement methods in 2 C.F.R. § 200.320 have been reorganized into informal procurement methods, which include micro-purchases and small purchases; formal procurement methods, which include sealed bidding and competitive proposals; and noncompetitive procurements. The federal micro-purchase threshold is currently $10,000, and non-state entities may use a lower threshold when using micro-purchase procedures under a FEMA award. If a non-state entity wants to use a micro-purchase threshold higher than the federal threshold, it must follow the requirements of 2 C.F.R. § 200.320(a)(1)(iii)-(v). The federal simplified acquisition threshold is currently $250,000, and a non-state entity may use a lower threshold but may not exceed the federal threshold when using small purchase procedures under a FEMA award. *See* 2 C.F.R. § 200.1 (citing the definition of simplified acquisition threshold from 48 C.F.R. Part 2, Subpart 2.1).

See 2 C.F.R. §§ 200.216, 200.471, and Appendix II as well as Section D.13.a. of the NOFO regarding prohibitions on covered telecommunications equipment or services.

b. **Competition and Conflicts of Interest**
Among the requirements of 2 C.F.R. § 200.319(b) applicable to all non-federal entities other than states, in order to ensure objective contractor performance and eliminate unfair competitive advantage, contractors that develop or draft specifications, requirements, statements of work, or invitations for bids or requests for proposals must be excluded from competing for such procurements. FEMA considers

these actions to be an organizational conflict of interest and interprets this restriction as applying to contractors that help a non-federal entity develop its grant application, project plans, or project budget. This prohibition also applies to the use of former employees to manage the grant or carry out a contract when those former employees worked on such activities while they were employees of the non-federal entity.

Under this prohibition, unless the non-federal entity solicits for and awards a contract covering both development <u>and</u> execution of specifications (or similar elements as described above), and this contract was procured in compliance with 2 C.F.R. §§ 200.317 – 200.327, federal funds cannot be used to pay a contractor to carry out the work if that contractor also worked on the development of those specifications. This rule applies to all contracts funded with federal grant funds, including pre-award costs, such as grant writer fees, as well as post-award costs, such as grant management fees.

Additionally, some of the situations considered to be restrictive of competition include, but are not limited to:
- Placing unreasonable requirements on firms for them to qualify to do business;
- Requiring unnecessary experience and excessive bonding;
- Noncompetitive pricing practices between firms or between affiliated companies;
- Noncompetitive contracts to consultants that are on retainer contracts;
- Organizational conflicts of interest;
- Specifying only a "brand name" product instead of allowing "an equal" product to be offered and describing the performance or other relevant requirements of the procurement; and
- Any arbitrary action in the procurement process.

Per 2 C.F.R. § 200.319(c), non-federal entities other than states must conduct procurements in a manner that prohibits the use of statutorily or administratively imposed SLTT geographical preferences in the evaluation of bids or proposals, except in those cases where applicable federal statutes expressly mandate or encourage geographic preference. Nothing in this section preempts state licensing laws. When contracting for architectural and engineering services, geographic location may be a selection criterion provided its application leaves an appropriate number of qualified firms, given the nature and size of the project, to compete for the contract.

Under 2 C.F.R. § 200.318(c)(1), non-federal entities other than states are required to maintain written standards of conduct covering conflicts of interest and governing the actions of their employees engaged in the selection, award, and administration of contracts. **No employee, officer, or agent may participate in the selection, award, or administration of a contract supported by a federal award if he or she has a real or apparent conflict of interest.** Such conflicts of interest would arise when the employee, officer or agent, any member of his or her immediate family, his or her partner, or an organization that employs or is about to employ any of the parties indicated herein, has a financial or other interest in or a tangible personal benefit from a firm considered for a contract. The officers, employees, and agents of the non-

federal entity may neither solicit nor accept gratuities, favors, or anything of monetary value from contractors or parties to subcontracts. However, non-federal entities may set standards for situations in which the financial interest is not substantial, or the gift is an unsolicited item of nominal value. The standards of conduct must provide for disciplinary actions to be applied for violations of such standards by officers, employees, or agents of the non-federal entity.

Under 2 C.F.R. 200.318(c)(2), if the recipient or subrecipient (other than states) has a parent, affiliate, or subsidiary organization that is not a state, local, tribal, or territorial government, the non-federal entity must also maintain written standards of conduct covering organizational conflicts of interest. In this context, organizational conflict of interest means that because of a relationship with a parent company, affiliate, or subsidiary organization, the non-federal entity is unable or appears to be unable to be impartial in conducting a procurement action involving a related organization. The non-federal entity must disclose in writing any potential conflicts of interest to FEMA or the pass-through entity in accordance with applicable FEMA policy.

**c.  Supply Schedules and Purchasing Programs**
Generally, a non-federal entity may seek to procure goods or services from a federal supply schedule, state supply schedule, or group purchasing agreement.

**I.  GENERAL SERVICES ADMINISTRATION SCHEDULES**
States, tribes, and local governments, and any instrumentality thereof (such as local education agencies or institutions of higher education) may procure goods and services from a General Services Administration (GSA) schedule. GSA offers multiple efficient and effective procurement programs for state, tribal, and local governments, and instrumentalities thereof, to purchase products and services directly from pre-vetted contractors. The GSA Schedules (also referred to as the Multiple Award Schedules and the Federal Supply Schedules) are long-term government-wide contracts with commercial firms that provide access to millions of commercial products and services at volume discount pricing.

Information about GSA programs for states, tribes, and local governments, and instrumentalities thereof, can be found at https://www.gsa.gov/buying-selling/purchasing-programs/gsa-schedules/schedule-buyers/state-and-local-governments.

For tribes, local governments, and their instrumentalities that purchase off of a GSA schedule, this will satisfy the federal requirements for full and open competition provided that the recipient follows the GSA ordering procedures; however, tribes, local governments, and their instrumentalities will still need to follow the other rules under 2 C.F.R. §§ 200.317 – 200.327, such as solicitation of minority businesses, women's business enterprises, small businesses, or labor surplus area firms (§ 200.321), domestic preferences (§ 200.322), contract cost and price (§ 200.324), and required contract provisions (§ 200.327 and Appendix II).

II. **OTHER SUPPLY SCHEDULES AND PROGRAMS**
For non-federal entities other than states, such as tribes, local governments, and nonprofits, that want to procure goods or services from a state supply schedule, cooperative purchasing program, or other similar program, in order for such procurements to be permissible under federal requirements, the following must be true:

- The procurement of the original contract or purchasing schedule and its use by the non-federal entity complies with state and local law, regulations, and written procurement procedures;
- The state or other entity that originally procured the original contract or purchasing schedule entered into the contract or schedule with the express purpose of making it available to the non-federal entity and other similar types of entities;
- The contract or purchasing schedule specifically allows for such use, and the work to be performed for the non-federal entity falls within the scope of work under the contract as to type, amount, and geography;
- The procurement of the original contract or purchasing schedule complied with all the procurement standards applicable to a non-federal entity other than states under 2 C.F.R. §§ 200.317 – 200.327; and
- With respect to the use of a purchasing schedule, the non-federal entity must follow ordering procedures that adhere to applicable state, tribal, and local laws and regulations and the minimum requirements of full and open competition under 2 C.F.R. Part 200.

If a non-federal entity other than a state seeks to use a state supply schedule, cooperative purchasing program, or other similar type of arrangement, FEMA recommends the recipient discuss the procurement plans with its FEMA Regional Grants Management Specialist.

d. **Procurement Documentation**
Per 2 C.F.R. § 200.318(i), non-federal entities other than states and territories are required to maintain and retain records sufficient to detail the history of procurement covering at least the rationale for the procurement method, selection of contract type, contractor selection or rejection, and the basis for the contract price. States and territories are encouraged to maintain and retain this information as well and are reminded that in order for any cost to be allowable, it must be adequately documented per 2 C.F.R. § 200.403(g).

Examples of the types of documents that would cover this information include but are not limited to:

- Solicitation documentation, such as requests for quotes, invitations for bids, or requests for proposals;
- Responses to solicitations, such as quotes, bids, or proposals;
- Pre-solicitation independent cost estimates and post-solicitation cost/price analyses on file for review by federal personnel, if applicable;
- Contract documents and amendments, including required contract provisions; and

- Other documents required by federal regulations applicable at the time a grant is awarded to a recipient.
- Additional information on required procurement records can be found on pages 24-26 of the PDAT Field Manual.

**e. Prohibition on Use of Funds to Support or Oppose Union Organizing**
A recipient or subrecipient may not use federal grant funds or funds used to meet a cost share requirement to support or oppose union organizing. Using grant or cost share funds to hire unionized workers does not constitute a violation of this prohibition on use of funds to support or oppose union organizing.

## 7. Financial Assistance Programs for Infrastructure

**a. Build America, Buy America Act**
Recipients and subrecipients must comply with the Build America, Buy America Act (BABAA), which was enacted as part of the Infrastructure Investment and Jobs Act §§ 70901-70927, Pub. L. No. 117-58 (2021); and Executive Order 14005, Ensuring the Future is Made in All of America by All of America's Workers. See also 2 C.F.R. Part 184 and Office of Management and Budget (OMB) Memorandum M-24-02, Implementation Guidance on Application of Buy America Preference in Federal Financial Assistance Programs for Infrastructure.

None of the funds provided under this program may be used for a project for infrastructure unless the iron and steel, manufactured products, and construction materials used in that infrastructure are produced in the United States.

The Buy America preference only applies to articles, materials, and supplies that are consumed in, incorporated into, or affixed to an infrastructure project. As such, it does not apply to tools, equipment, and supplies, such as temporary scaffolding, brought to the construction site and removed at or before the completion of the infrastructure project. Nor does a Buy America preference apply to equipment and furnishings, such as movable chairs, desks, and portable computer equipment, that are used at or within the finished infrastructure project but are not an integral part of the structure or permanently affixed to the infrastructure project.

For FEMA's official policy on BABAA, please see FEMA Policy 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: Buy American Preference in FEMA Financial Assistance Programs for Infrastructure. To see whether a particular FEMA federal financial assistance program is considered an infrastructure program and thus required to include a Buy America preference, please see Programs and Definitions: Build America, Buy America Act and https://www.fema.gov/sites/default/files/documents/fema_build-america-buy-america-act-policy.pdf.

**b. Waivers**
When necessary, recipients (and subrecipients through their pass-through entity) may apply for, and FEMA may grant, a waiver from these requirements.

*FY 2024 BRIC NOFO*

A waiver of the domestic content procurement preference may be granted by the agency awarding official if FEMA determines that:

- Applying the domestic content procurement preference would be inconsistent with the public interest.
- The types of iron, steel, manufactured products, or construction materials are not produced in the United States in sufficient and reasonably available quantities or of a satisfactory quality.
- The inclusion of iron, steel, manufactured products, or construction materials produced in the United States will increase the cost of the overall project by more than 25%.

For FEMA awards, the process for requesting a waiver from the Buy America preference requirements can be found on FEMA's website at: "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure.

**c. Definitions**

For BABAA specific definitions, please refer to the FEMA Buy America website at: Programs and Definitions: Build America, Buy America Act.

Please refer to the applicable DHS Standard Terms & Conditions for the BABAA specific term applicable to all FEMA financial assistance awards for infrastructure.

## 8. Record Retention

### a. Record Retention Period

Financial records, supporting documents, statistical records, and all other non-Federal entity records pertinent to a Federal award generally must be maintained for at least three years from the date the final FFR is submitted. *See* 2 C.F.R. § 200.334. Further, if the recipient does not submit a final FFR and the award is administratively closed, FEMA uses the date of administrative closeout as the start of the general record retention period.

The record retention period **may be longer than three years or have a different start date** in certain cases. These include:

- Records for real property and equipment acquired with Federal funds must be retained for **three years after final disposition of the property**. *See* 2 C.F.R. § 200.334(c).
- If any litigation, claim, or audit is started before the expiration of the three-year period, the records **must be retained until** all litigation, claims, or audit findings involving the records **have been resolved and final action taken**. *See* 2 C.F.R. § 200.334(a).
- The **record retention period will be extended if the non-federal entity is notified in writing** of the extension by FEMA, the cognizant or oversight agency for audit, or the cognizant agency for indirect costs, or pass-through entity. *See* 2 C.F.R. § 200.334(b).
- Where FEMA requires recipients to report program income after the period of performance ends, the **program income record retention period begins at the**

**end of the recipient's fiscal year in which program income is earned**. *See* 2 C.F.R. § 200.334(e).

- For indirect cost rate computations and proposals, cost allocation plans, or any similar accounting computations of the rate at which a particular group of costs is chargeable (such as computer usage chargeback rates or composite fringe benefit rates), the start of the record retention period depends on whether the indirect cost rate documents were submitted for negotiation. If the **indirect cost rate documents were submitted for negotiation, the record retention period begins from the date those documents were submitted** for negotiation. If indirect cost rate documents were **not submitted for negotiation, the record retention period begins at the end of the recipient's fiscal year or other accounting period covered by that indirect cost rate**. *See* 2 C.F.R. § 200.334(f).

b. **Types of Records to Retain**

FEMA requires that non-federal entities maintain the following documentation for federally funded purchases:

- Specifications
- Solicitations
- Competitive quotes or proposals
- Basis for selection decisions
- Purchase orders
- Contracts
- Invoices
- Cancelled checks

Non-federal entities should keep detailed records of all transactions involving the grant. FEMA may at any time request copies of any relevant documentation and records, including purchasing documentation along with copies of cancelled checks for verification. *See, e.g.*, 2 C.F.R. §§ 200.318(i), 200.334, 200.337.

In order for any cost to be allowable, it must be adequately documented per 2 C.F.R. § 200.403(g). Non-federal entities who fail to fully document all purchases may find their expenditures questioned and subsequently disallowed.

9. **Actions to Address Noncompliance**

Non-federal entities receiving financial assistance funding from FEMA are required to comply with requirements in the terms and conditions of their awards or subawards, including the terms set forth in applicable federal statutes, regulations, NOFOs, and policies. Throughout the award lifecycle or even after an award has been closed, FEMA or the pass-through entity may discover potential or actual noncompliance on the part of a recipient or subrecipient. This potential or actual noncompliance may be discovered through routine monitoring, audits, civil rights complaint investigations and compliance reviews, closeout, or reporting from various sources.

In the case of any potential or actual noncompliance, FEMA may place special conditions on an award per 2 C.F.R. §§ 200.208 and 200.339, FEMA may place a hold on funds until the matter is corrected, or additional information is provided per 2 C.F.R. § 200.339, or it may do both. Similar remedies for noncompliance with certain federal civil rights laws are authorized pursuant to 44 C.F.R. Parts 7 and 19 or other applicable regulations.

In the event the noncompliance is not able to be corrected by imposing additional conditions or the recipient or subrecipient refuses to correct the matter, FEMA may take other remedies allowed under 2 C.F.R. § 200.339. These remedies include actions to disallow costs, recover funds, wholly or partly suspend or terminate the award, initiate suspension and debarment proceedings, withhold further federal awards, or take other remedies that may be legally available. For further information on termination due to noncompliance, see the section on Termination Provisions in the NOFO.

FEMA may discover and take action on noncompliance even after an award has been closed. The closeout of an award does not affect FEMA's right to disallow costs and recover funds as long as the action to disallow costs takes place during the record retention period. *See* 2 C.F.R. §§ 200.334, 200.345(a). Closeout also does not affect the obligation of the non-federal entity to return any funds due as a result of later refunds, corrections, or other transactions. 2 C.F.R. § 200.345(a)(2).

The types of funds FEMA may attempt to recover include, but are not limited to, improper payments, cost share reimbursements, program income, interest earned on advance payments, or equipment disposition amounts.

FEMA may seek to recover disallowed costs through a Notice of Potential Debt Letter, a Remedy Notification, or other letter. The document will describe the potential amount owed, the reason why FEMA is recovering the funds, the recipient's appeal rights, how the amount can be paid, and the consequences for not appealing or paying the amount by the deadline.

If the recipient neither appeals nor pays the amount by the deadline, the amount owed will become final. Potential consequences if the debt is not paid in full or otherwise resolved by the deadline include the assessment of interest, administrative fees, and penalty charges; administratively offsetting the debt against other payable federal funds; and transferring the debt to the U.S. Department of the Treasury for collection.

FEMA notes the following common areas of noncompliance for FEMA's grant programs:
- Insufficient documentation and lack of record retention.
- Failure to follow the procurement under grants requirements.
- Failure to submit closeout documents in a timely manner.
- Failure to follow EHP requirements.
- Failure to comply with the POP deadline.

10. **Audits**

FEMA grant recipients are subject to audit oversight from multiple entities including the DHS OIG, the GAO, the pass-through entity, or independent auditing firms for single audits, and may cover activities and costs incurred under the award. Auditing agencies such as the DHS OIG, the GAO, and the pass-through entity (if applicable), and FEMA in its oversight capacity, must have access to records pertaining to the FEMA award. Recipients and subrecipients must retain award documents for at least three years from the date the final FFR is submitted, and even longer in many cases subject to the requirements of 2 C.F.R. § 200.334. In the case of administrative closeout, documents must be retained for at least three years from the date of closeout, or longer subject to the requirements of 2 C.F.R. § 200.334. If documents are retained longer than the required retention period, the DHS OIG, the GAO, and the pass-through entity, as well as FEMA in its oversight capacity, have the right to access these records as well. *See* 2 C.F.R. §§ 200.334, 200.337.

Additionally, non-federal entities must comply with the single audit requirements at 2 C.F.R. Part 200, Subpart F. Specifically, non-federal entities, other than for-profit subrecipients, that expend $750,000 or more in federal awards during their fiscal year must have a single or program-specific audit conducted for that year in accordance with Subpart F. 2 C.F.R. § 200.501. A single audit covers all federal funds expended during a fiscal year, not just FEMA funds. The cost of audit services may be allowable per 2 C.F.R. § 200.425, but non-federal entities must select auditors in accordance with 2 C.F.R. § 200.509, including following the proper procurement procedures. For additional information on single audit reporting requirements, see Section F of this NOFO under the header "Single Audit Report" within the subsection "Additional Reporting Requirements" or other applicable document.

The objectives of single audits are to:
- Determine if financial statements conform to generally accepted accounting principles (GAAP);
- Determine whether the schedule of expenditures of federal awards is presented fairly;
- Understand, assess, and test the adequacy of internal controls for compliance with major programs; and
- Determine if the entity complied with applicable laws, regulations, and contracts or grants.

For single audits, the auditee is required to prepare financial statements reflecting its financial position, a schedule of federal award expenditures, and a summary of the status of prior audit findings and questioned costs. The auditee also is required to follow up and take appropriate corrective actions on new and previously issued but not yet addressed audit findings. The auditee must prepare a corrective action plan to address the new audit findings. 2 C.F.R. §§ 200.508, 200.510, 200.511.

Non-federal entities must have an audit conducted, either single or program-specific, of their financial statements and federal expenditures annually or biennially pursuant to 2 C.F.R. § 200.504. Non-federal entities must also follow the information submission requirements of 2 C.F.R. § 200.512, including submitting the audit information to the Federal Audit

Clearinghouse within the earlier of 30 calendar days after receipt of the auditor's report(s) or nine months after the end of the audit period. The audit information to be submitted include the data collection form described at 2 C.F.R. § 200.512(c) and Appendix X to Part 200, Title 2 as well as the reporting package described at 2 C.F.R. § 200.512(b).

The non-federal entity must retain one copy of the data collection form and one copy of the reporting package for three years from the date of submission to the Federal Audit Clearinghouse. 2 C.F.R. § 200.512; *see also* 2 C.F.R. § 200.517 (setting requirements for retention of documents by the auditor and access to audit records in the auditor's possession).

FEMA, the DHS OIG, the GAO, and the pass-through entity (if applicable), as part of monitoring or as part of an audit, may review a non-federal entity's compliance with the single audit requirements. In cases of continued inability or unwillingness to have an audit conducted in compliance with 2 C.F.R. Part 200, Subpart F, FEMA, and the pass-through entity, if applicable, are required to take appropriate remedial action under 2 C.F.R. § 200.339 for noncompliance, pursuant to 2 C.F.R. § 200.505.

## 11. Payment Information
FEMA uses the Direct Deposit/Electronic Funds Transfer (DD/EFT) method of payment to recipients.

Payment requests are submitted through FEMA GO.

## 12. Whole Community Preparedness
Preparedness is a shared responsibility that calls for the involvement of everyone—not just the government—in preparedness efforts. By working together, everyone can help keep the nation safe from harm and help keep it resilient when struck by hazards, such as natural disasters, acts of terrorism, and pandemics.

Whole Community includes:
- Individuals and families, including those with access and functional needs
- Businesses
- Faith-based and community organizations
- Nonprofit groups
- Schools and academia
- Media outlets
- All levels of government, including state, local, tribal, territorial, and federal partners

The phrase "Whole Community" often appears in preparedness materials, as it is one of the guiding principles. It means two things:
1. Involving people in the development of national preparedness documents.
2. Ensuring their roles and responsibilities are reflected in the content of the materials.

13. **Report issues of fraud, waste, abuse**

Please note, when applying to this notice of funding opportunity and when administering the grant, applicants may report issues of fraud, waste, abuse, and mismanagement, or other criminal or noncriminal misconduct to the Office of Inspector General (OIG) Hotline. The toll-free numbers to call are 1 (800) 323-8603, and TTY 1 (844) 889-4357.

14. **Extraordinary Circumstances**

Applicants and subapplicants must have a current FEMA approved mitigation plan at the time of application deadline and at the time of the award to receive BRIC project subawards; hazard mitigation plans that are approvable pending adoption are not sufficient. The FEMA Regional Administrator may grant an exception to the plan requirement for subapplicants, including Tribal nations applying as subapplicants to a state or territory, in extraordinary circumstances when the appropriate justification is provided.

Extraordinary circumstances exist when FEMA or the applicant determine that the proposed project is consistent with the priorities and strategies identified in the state or tribal (standard or enhanced) hazard mitigation plan and that the jurisdiction meets at least one of the criteria below:

- The jurisdiction meets the Economically Disadvantaged Rural Communities criteria.
- The jurisdiction has been determined to have had insufficient capacity because of lack of available assistance, staffing or other necessary expertise to satisfy the hazard mitigation planning requirement prior to the current disaster or application deadline
- The jurisdiction experienced significant disruption from a declared disaster or another event that impacts its ability to complete the hazard mitigation planning process prior to award or final approval of a project award.
- The jurisdiction does not have a hazard mitigation plan for reasons beyond the control of the state, federally recognized Tribal government, or local community, such as Disaster Relief Fund restrictions, that delay FEMA from granting a subaward prior to the expiration of the local or tribal hazard mitigation plan.

Prior to award, the applicant must provide written justification, specific to each subapplication, that identifies the specific criteria from the above list and explains why the jurisdiction will be able to have a plan both approved by FEMA and adopted by the jurisdiction within 12 months. The justification must identify the specific actions or circumstances that have eliminated or will eliminate the deficiency that prevented the jurisdiction from previously having an approved plan. The justification must clearly demonstrate how the above circumstances impacted the community beyond just stating the above circumstances.

If FEMA grants an extraordinary circumstances exception, a local or tribal hazard mitigation plan must be approved by FEMA within 12 months of the award of the project subaward to that community. The recipient must acknowledge in writing to the Regional Administrator that the jurisdiction will complete a plan within 12 months of the subaward. The recipient must provide a Compliance Action Plan for completing the local or tribal hazard mitigation plan, including milestones and a timetable, to ensure the jurisdiction will complete the plan in the required time. This requirement must be incorporated into the award (both the planning

and project subaward agreements if a planning subaward is also awarded). If a plan is not provided within this time frame, the project subaward will be terminated, and any costs incurred after notice of subaward termination will not be reimbursed by FEMA. FEMA must notify the recipient of the subaward termination. For more information on award termination, refer to the HMA Guide, Part 8, L. Award Termination.

If the hazard mitigation plan is not approved by FEMA within 12 months of the award, and if the subaward also involved a hazard mitigation planning award, FEMA should notify the recipient of its failure to meet the additional specific award or subaward conditions and request that the issue be corrected following remedies for non-compliance procedures in the HMA Guide, Part 8, K. Remedies for Non-Compliance. If compliance cannot be achieved, FEMA will apply a remedy action to the planning subaward to address the non-compliance and may, as a result, withhold assistance, recoup assistance, suspend or terminate the planning subaward.

## 15. Good Jobs Initiative

FEMA encourages investment of these funds toward projects that are implemented and designed around The Good Jobs Principles, a description of the elements of a Good Job that has informed the investment of billions of dollars through the Biden-Harris Administration's Investing in America Agenda. To this end, FEMA encourages applicants to include in their scope of work a narrative addressing how they will ensure that jobs created as a result of FEMA awards create good jobs as defined by these Principles. Employers offering jobs like those described in the Principles can produce higher-quality work, complete projects ahead of time, and reduce costs due to decreased worker turnover. Because equity is a key element of the Good Jobs Principles, applicants should address what steps they will take to ensure good jobs reach underserved populations.

Other potential elements of these suggested good jobs plans could include:
- How applicants and partners will ensure timely payment of wages that meet the local cost of living and provide safe worksites.
- How applicants and partners will ensure access to childcare or other benefits that may be needed to attract and retain working parents.
- What steps applicants and partners will take to incorporate worker voice into worksites, such as existing collective bargaining agreements or plans for project labor agreements to ensure timely and efficient completion of work.

For additional guidance, visit goodjobs.gov.

## 16. Integrating Hazard Mitigation and Planning

In addition, FEMA encourages state, local, tribal, and territorial governments to pursue hazard mitigation planning and projects with co-benefits that advance shared outcomes for economic, environmental, and social resilience.

Alignment with SLTT planning mechanisms (economic development, housing, comprehensive plans, transportation plans, building codes, floodplain ordinances, etc.) is vital to building safer, more resilient, equitable communities. This two-way exchange of

hazard mitigation principles, risk and vulnerability assessments, and hazard mitigation strategies supports risk reduction, both before and after disasters occur. Not only will SLTT planning efforts be better integrated, but by going through this process there is a higher level of interagency coordination, which is just as important as the planning mechanisms themselves. Additional information on hazard mitigation planning policies, training, and Planning Integration can be found at the FEMA Implement, Integrate, and Maintain Mitigation Planning Activities and Guides to Expanding Mitigation webpages, and the American Planning Association Hazards Planning webpage.

**17. Hazard-Resistant Building Codes**

Hazard-resistant building codes are a foundational element of a more resilient nation, safeguarding communities and lives against natural disasters, with an estimated $11:1 return on investment. The adoption, enforcement, and application of modern building codes mitigates community vulnerabilities, reduces disaster recovery costs, and strengthens nationwide capability. FEMA is working to promote and support building codes in all areas of its work in support of the multi-agency National Initiative to Advance Building Codes. In the interest of building a stronger, more resilient nation, FEMA encourages all grant recipients and subrecipients to meet current published editions of relevant consensus-based building codes, specifications, and standards, and to exceed them where feasible.

**18. Requests for Information**

In order to ensure faster obligations after selection, if a subapplication does not meet the administrative or procedural information requirements, FEMA will request additional information in the form of a formal RFI. For BRIC, an RFI will not occur until after selection because of the competitive nature of the program. Applicants are responsible for coordinating with the subapplicant to get the required information. Failure to provide the requested information by the final deadline identified in the request may result in denial if eligibility cannot be determined. Further details on the RFI process and timelines may be found in the HMA Guide, Part 6, G. Requests for Information.

**19. Appendices**

   **a. Abbreviations**

- AOR: Authorized Organizational Representative
- BCA: Benefit Cost Analysis
- BCEGS: Building Code Effectiveness Grading Schedule
- BRIC: Building Resilient Infrastructure and Communities
- C&CB: Capability and Capacity Building
- CEJST: Climate and Economic Justice Screening Tool
- C.F.R.: Code of Federal Regulations
- DHS: Department of Homeland Security
- DTA: Direct Technical Assistance
- EDRC: Economically Disadvantaged Rural Community
- EHP: Environmental Planning and Historical Preservation
- EO: Executive Order
- FEMA: Federal Emergency Management Agency
- FEMA GO: FEMA Grants Outcomes

- HMA: Hazard Mitigation Assistance
- IBC: International Building Code
- ICC: International Code Council
- IRC: International Residential Code
- NEPA: National Environmental Policy Act
- NGO: Non-Governmental Organization
- POP: Period of Performance
- SLTT: State, Local, Tribal and Territorial

**b. Resources**

- 2020-2024 Department of Homeland Security Strategic Plan: https://www.dhs.gov/publication/department-homeland-securitys-strategic-plan-fiscal-years-2020-2024
- 2022-2026 FEMA Strategic Plan: https://www.fema.gov/about/strategic-plan
- Building Community Resilience with Nature-Based Solutions: A guide for local communities: https://www.fema.gov/sites/default/files/documents/fema_riskmap-nature-based-solutions-guide_2021.pdf
- Building Community Resilience with Nature-Based Solutions: Strategies for success: https://www.fema.gov/sites/default/files/documents/fema_nbs_community-resilience-strategies-success_102023.pdf
- Building Resilient Infrastructure and Communities (BRIC): https://www.fema.gov/grants/mitigation/building-resilient-infrastructure-communities
- BRIC Program Support Materials: https://www.fema.gov/grants/mitigation/building-resilient-infrastructure-communities/resources
- "Buy America" Preference in FEMA Financial Assistance Programs for Infrastructure: https://www.fema.gov/grants/policy-guidance/buy-america
- Climate and Economic Justice Screening Tool (CEJST): https://screeningtool.geoplatform.gov/
- Climate Risk and Resilience Portal (ClimRR): https://climrr.anl.gov
- Embodied Carbon in Construction Calculator (EC3): https://www.buildingtransparency.org/
- Environmental Planning and Historical Preservation (EHP): https://www.fema.gov/emergency-managers/practitioners/environmental-historic
- FEMA Benefit Cost Analysis (BCA): https://www.fema.gov/grants/guidance-tools/benefit-cost-analysis
- FEMA Create a Hazard Mitigation Plan: https://www.fema.gov/emergency-managers/risk-management/hazard-mitigation-planning/create-hazard-plan
- FEMA GO: https://go.fema.gov/

- FEMA Hazard Mitigation Assistance Cost Share Guide: https://www.fema.gov/sites/default/files/2020-08/fema_hma_cost-share-guide.pdf
- FEMA Hazard Mitigation Assistance Program and Policy Guide (HMA Guide): https://www.fema.gov/grants/mitigation/guide
- FEMA Mitigation Action Portfolio: https://www.fema.gov/sites/default/files/documents/fema_mit-FY2023_BRIC_Mitigation_Action_Portfolio.pdf
- FEMA Nationwide Building Code Adoption Tracking: https://www.fema.gov/emergency-managers/risk-management/building-science/bcat
- FEMA Resilience Analysis and Planning Tool (RAPT): https://www.fema.gov/rapt
- Improving Cybersecurity for Critical Infrastructure Control Systems: https://www.cisa.gov/control-systems-goals-and-objectives
- National Oceanic and Atmospheric Administration's Sea Level Rise Viewer: https://coast.noaa.gov/digitalcoast/tools/slr.html
- National Risk Index: https://hazards.fema.gov/nri/
- State Hazard Mitigation Officers: http://www.fema.gov/state-hazard-mitigation-officers
- System for Award Management (SAM.gov): https://sam.gov/
- Tools to Assist with FEMA Grants: https://www.fema.gov/grants/tools
- Unique Entity Identifier (UEI) Updates: https://www.grants.gov/forms/forms-development/planned-uei-updates