UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF WASHINGTON et al.,<br><br>                  Plaintiffs,<br><br>   v.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY; KAREN EVANS, in her official capacity as the Senior Official Performing the Duties of the Administrator of the Federal Emergency Management Agency; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as the Secretary of the Department of Homeland Security; and the UNITED STATES OF AMERICA,<br><br>                  Defendants. | Civil Action No. 1:25-cv-12006-RGS |

**DECLARATION OF KAREN EVANS**

I, Karen S. Evans, declare as follows:

1. I am the Senior Official Performing the Duties of the Administrator at the Federal Emergency Management Agency ("FEMA" or "agency"). FEMA is a component within the U.S. Department of Homeland Security ("DHS"). As the Senior Official Performing the Duties of the FEMA Administrator ("SOPDOA"), I am the official responsible for being the principal advisor to the President and Secretary of Homeland Security ("Secretary") for all matters related to emergency management in the United States. I am also vested with the authority to manage and administer the various grant programs assigned to FEMA directly by statute or by designation from the Secretary. In these capacities, I am familiar with the grant programs administered by FEMA and the policies and procedures governing these programs.

2. My statements in this Declaration are based on my personal knowledge; information provided to me in my official capacity; reasonable inquiry; information obtained from various records, systems, databases, or DHS or FEMA employees; information portals

maintained and relied upon by the DHS in the regular course of business; and my evaluation of this information.

3. I am aware that on December 11, 2025, the Court issued a Summary Judgment Order ("Order") vacating the termination of the Building Resilient Infrastructure and Communities ("BRIC") program, as described in the memorandum issued on April 2, 2025, by SOPDOA Cameron Hamilton ("Hamilton Memo") and the associated April 4 Press Release. It is my understanding that the Order requires FEMA to receive Congressional authorization and approval if the agency wants to take any action to terminate, shut down, cancel, freeze, suspend, or pause the BRIC program with respect to Plaintiffs. It is also my understanding that the Order requires FEMA to receive Congressional authorization and approval to use funds set aside or appropriated to FEMA's pre-disaster mitigation program for other purposes. In addition, FEMA is required to take all steps necessary to reverse the direction in the Hamilton Memo and the purported termination of the BRIC program.

4. I have been informed that Plaintiffs contend that FEMA had to re-issue the Fiscal Year 2024 BRIC Notice of Funding Opportunity ("NOFO"), communicate the reversal of the Hamilton Memo and the April 4 Press Release to all relevant stakeholders, and inform Plaintiff States as to the status of all BRIC projects, among other actions. ECF No. 132. However, it is my understanding that these actions are beyond the scope of what the Order required. FEMA has complied with the notification requirement in the Order as explained in Paragraph 6 below and taken the other actions described in this Declaration to comply with the Order.

5. FEMA has not terminated the BRIC program, is not planning to do so, and does not intend to terminate the BRIC program at this time. In compliance with the Order, FEMA has not obligated, used, expended, disbursed, transferred, or reprogrammed funds set aside for pre-disaster mitigation for other purposes and does not intend to do so at this time. The Infrastructure Investment and Jobs Act ("IIJA") funds appropriated to DHS/FEMA for the

BRIC program remain available, as do the funds that FEMA set aside from the Disaster Relief Fund for BRIC. Each BRIC NOFO is funded by "no year" funds, meaning that such funds remain available indefinitely until expended, regardless of the fiscal year. See GAO, Principles of Federal Appropriations Law, Ch. 5, 5-6 (4th ed. 2016 rev.). Funding is still available for future BRIC funding opportunities and there is nothing prohibiting FEMA from issuing another NOFO.

6. It is my understanding that the Order required FEMA to provide written notice of the Order to all federal departments and agencies to which the Hamilton Memo or its directives were communicated. FEMA has complied with this direction by providing written notice of the Order to all federal departments and agencies to which the Hamilton memo or its directives were communicated. FEMA issued these notices on December 23, 2025. These notices are attached as Exhibit A.

7. FEMA has also informed Plaintiffs that the agency intends to comply with the Order. The Plaintiffs' own papers in support of their motion illustrate examples of FEMA's staff informing Plaintiffs that FEMA intends to comply with the Order. (ECF No. 134-5 ¶¶ 7-8, 134-19 ¶ 5). FEMA has also made several public statements to media outlets stating that the agency will fully comply with all court orders regarding BRIC funding. These statements are attached as Exhibit B. I do not understand the Order to require FEMA to provide the sort of detailed information and timelines for action that Plaintiffs are seeking in their motion.

8. I have been informed that the Order does not preclude FEMA from analyzing the BRIC program in the ordinary exercise of the Secretary's discretion in the manner authorized by Congress. When the BRIC program was created in 2020 during the first Trump Administration, it was intended to fund cost-effective pre-disaster hazard mitigation measures that reduce injuries, loss of life, and damage and destruction of property.[1] FEMA

---

[1] 42 U.S.C. 5133(b).

is currently reviewing the BRIC program to ensure its operation aligns with the original purpose and goals of Congress and the Trump Administration. Nothing in the Order requires FEMA to conduct an analysis of the BRIC program within a specific time period, or subject to Plaintiffs' timelines. FEMA intends for this review to result in an improved BRIC program that succeeds in reducing the long-term risk of disaster damage as intended by Congress. Following completion of the review, FEMA intends to design a new NOFO that aligns the operation of the program with its purpose. This NOFO will provide an opportunity for eligible applicants to submit applications for the BRIC program. Once FEMA completes the redesign process, the agency will provide further information to eligible applicants about how to apply for BRIC program funding.

9.  FEMA and DHS plan to engage with existing applicants and recipients regarding subapplications and awards from Fiscal Years 2020-2023 and are coordinating to finalize details for these engagements. The first portion of the external facing engagement will begin with FEMA headquarters providing written guidance to all FEMA Regional Offices. This guidance will ensure that Regional Offices are well equipped to effectively resume any communications with state, local, tribal and territorial partners that may have paused prior to the Court's Order. As this engagement begins, FEMA headquarters expects to provide ongoing technical support for Regional Offices to ensure they can provide timely, consistent, and clear information to applicants and recipients.

10. Based on my understanding, nothing in the Order precludes FEMA from reviewing subapplications for approval as part of the ordinary exercise of the Secretary's discretion in operating the program nor does it limit the time in which FEMA must complete its review. FEMA is required to review all subapplications, including recipient management costs requests, before releasing funds for grants. These reviews ensure that funding is obligated and disbursed in line with FEMA's statutory, regulatory, and programmatic requirements. These reviews include an analysis of the subapplication's alignment with current administrative priorities. I have also been informed that the Fourth Circuit recently

confirmed, "[t]he President may determine his policy priorities and instruct his agents to make funding decisions based on them."[2] Upon completion of the programmatic requirements and assurance that all programmatic requirements have been met, funding will be approved and processed through the appropriate grants system.

11. As part of the operation of all of FEMA's Hazard Mitigation Assistance ("HMA") grant programs, FEMA must prepare and circulate information collection instruments that are subject to the Paperwork Reduction Act of 1995. FEMA recently revised a currently approved information collection associated with HMA grant programs. As part of that revision, FEMA is required to publish a 60-Day Notice of Revision and Request for Comments in the Federal Register. On February 10, 2026, FEMA published the required Notice in the Federal Register at 91 F.R. 6238, Docket ID: FEMA-2026-0003. This collection of information is necessary in order for FEMA to make eligibility determinations, grants management, and compliance with other Federal laws and regulations for HMA's financial and technical assistance programs, including the BRIC program. The Notice remains open for public comment through April 13, 2026.

12. Under the terms of BRIC award agreements, recipients may request extensions of BRIC award periods of performance, but FEMA has discretion to grant or deny these requests. Since December 11, 2025, FEMA has processed three period of performance extension requests, resulting in one approval for Hawaii and two denials for Connecticut and Indiana. On March 2, 2026, FEMA Region IX provided verbal notification to Hawaii of FEMA's approval of their period of performance request. The denials have not yet been communicated to recipients or yet implemented given that these notifications are typically sent via FEMA Grants Outcomes ("FEMA GO"), which is currently offline due to the partial government shutdown impacting DHS. FEMA established a process to evaluate

---

[2] *National Association of Diversity Officers in Higher Education et. al. v. Trump et. Al.,* No. 25-1189, 2026 WL 321433 at *8 (4th Cir. Feb. 6, 2026).

period of performance extension requests and to submit them for my approval as the Senior Official Performing the Duties of the FEMA Administrator. FEMA continues to process adjudications of many other requests for period of performance extensions.

13. From December 11, 2025, until February 16, 2026, BRIC grant recipients continued to draw down on their awards until FEMA GO, BRIC's grants management system, went offline due to a partial government shutdown.[3] During that period, FEMA reimbursed BRIC grant recipients a total of $90,212,472.16, and processed a total of 354 individual payments.[4] On February 17, 2026, FEMA GO went offline because of the partial government shutdown impacting DHS only. BRIC grant recipients will be able to draw down on their awards once the shutdown ends and FEMA GO is back online.

14. Since December 11, 2025, FEMA has experienced two funding lapses as well as a national-level response to a winter storm that impacted seven of the ten FEMA regions. These events have delayed, and are delaying, FEMA's performance of the tasks described above because many supervisors with responsibility over the BRIC program are permanent full-time employees whose salaries are funded out of accounts where funding has lapsed. These employees, including the HMA Division Director, both HMA Deputy Division Directors, one of three BRIC Section Chiefs, and FEMA GO staff, have been furloughed during the current lapse or have been temporarily recalled to support emergency issues.[5] These agency-wide impacts on staffing have limited the number of employees available to operate the BRIC program. BRIC requires 35 staff to fully manage the program and currently has 16.

15. While staffing availability impacts the speed at which FEMA completes the activities described in this Declaration, FEMA remains fully committed to complying with the Order. While the lapses in appropriations are impacting the timing of FEMA's compliance

---

[3] FEMA GO was offline for short time due to the partial government shutdown that occurred from about January 31, 2026, until February 3, 2026.
[4] These figures do not include 6 payments totaling $349,094.24 that FEMA had issued but which were returned to the agency.
[5] Of these staff members, only the HMA Division Director and the Deputy Director have been recalled.

with the Order, FEMA is continuing, to the extent possible under the law, to take the actions required to comply with the Order.

I, Karen S. Evans, declare under penalty of perjury that the foregoing is true and correct.

Executed on March __, 2026

KAREN S EVANS
Digitally signed by KAREN S EVANS
Date: 2026.03.03 15:54:16 -05'00'

Karen S. Evans
Senior Official Performing the Duties of the Administrator
Federal Emergency Management Agency